# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Robert M. Kowalski, | ) | Case No. 18-09130 |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |
| Defendants. | ) | |

## DEBTOR'S RESPONSE TO
## MOTION OF PARTY IN INTEREST, MARTHA PADILLA,
## FOR RELIEF FROM THE AUTOMATIC STAY

**NOW COMES** the Debtor, ROBERT KOWALSKI ("Robert"), for his Response to

the Motion of Party in Interest, Martha Padilla, for Relief from the Automatic Stay,

states as follows:

## Section 523 Domestic Support Obligations are
## not Subject to the Automatic Stay and are Exceptions from Discharge

Section 523 of the Bankruptcy Code excepts from discharge any debt "for a

domestic support obligation." 11 U.S.C. § 523(a)(5). The term "domestic support

obligation" is defined separately as a debt that is:

> **(A)** owed to or recoverable by—
> **(i)** ... child of the debtor or such child's parent ...; or
> **(B)** in the nature of .... support (including assistance provided by a governmental unit) of such ....child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> **(C)** established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
> **(ii)** an order of a court of record;
> **(D)** not assigned to a nongovernmental entity.

11 U.S.C. § 101(14A).

Domestic support obligations under 11 U.S.C. §523(a)(5) are *not* subject to the

bankruptcy automatic stay and are *exempt* from discharge. 11 U.S.C. §1141. The child

support obligation owed by Debtor to Martha is a domestic support obligation exempt from discharge under 11 U.S.C. § 523(a)(5).  Martha **need not** lift the stay to pursue collection of the domestic support obligation from Debtor's **post-petition** earnings and property.  The automatic stay stops collection efforts (as to both support proceedings and equitable distribution awards), *except* as to post-petition earnings of a debtor, or other non-estate property, which is being pursued to enforce a support-related award. Martha's petition failed to note that **Robert's monthly $2,051.50 support obligation is current** and paid in full through July 31, 2018.  Debtor's post-petition earnings and other assets acquired after the bankruptcy filing belong to the individual Debtor and do not become part of the bankruptcy estate and are subject to the domestic support obligation.  They belong to the individual and are fair targets for enforcement of awards of support.  The BAPCPA eliminated any hardship by allowing collection against exempt property.  Debtor's bankruptcy filing does not affect her rights to receive support via wage garnishment or other common collection means.  As BAPCPA provides the possibility of using **exempt** property to collect what Martha is owed as a nondischarged creditor.  Under 11 U.S.C. §362(b)(2)(B), the automatic bankruptcy stay does not prohibit collection of domestic support obligations from property that is **not** property of the estate.  The definition of a domestic support obligation under §362 is the same as under §523 as determined by analyzing §101(14A)(A).  Therefore, wife is free to collect on the obligation due to her without restriction of the automatic stay so long as such collection is from property that is **NOT** part of the estate available to creditors generally. *See Collier on Bankruptcy* P362.05.  Martha is entitled to collect from Robert's property or income that is not part of the estate without needing to lift the stay.  The automatic stay does not apply to property acquired after filing.

2

Federal courts generally abstain from deciding cases involving child support in order to avoid entangling the federal court in family law matters, which are best left to State courts. *See e.g, In re Anderson,* 463 B.R. 871 (Bankr.N.D.Ill.2011) (state court determined amount of nondischargeable domestic support obligation, not payment). Bankruptcy judge generally defer to state court judges on such matters and will permit the automatic stay to be lifted or modified to collect support obligations *unless* the debt is to be paid through a plan approved by the bankruptcy court. To the extent Martha seeks the support obligation to be paid through the estate (rather than the Debtor), she must wait for the approval of a plan by the court. In the interim, Martha's interest in payment of the domestic support obligation is protected under the bankruptcy code. Robert will not receive an order of discharge until he confirms that all domestic support obligations are current.

Further protection is provided in that pre-filing payments of domestic support obligations to a spouse (so-called "pre-petition transfers") are not "voidable" as preferential payments. In this case, but for this provision, Robert's payment to Martha of $22,866.31 on July 14, 2017 and **$40,408.06 on February 23, 2018** would otherwise be voidable preferential payments. As a DSO creditor in the age of BAPCPA, Martha will receive notice from the trustee of her rights to collect support through federal enforcement agencies. She will also receive the most recent address of the debtor, where he works and details about other affirmed creditors remaining after the bankruptcy action. The BAPCPA provides Martha, a domestic support obligee, with substantial protections.

3

**Martha Seeks to Lift Stay – Not to Terminate the Divorce Proceedings –
<u>Rather to Continue her Divorce Acrimony</u>**

Martha is not seeking merely to lift the stay to pursue to domestic support

obligation.  Nor is Martha seeking merely to terminate the marital status alone (which

also is not affected by the automatic stay).  Martha seeks to lift the stay to "continue

divorce proceedings."  This is expressly prohibited by §362(b)(2), which provides that

the filing of a petition for bankruptcy relief does *not* stay proceedings "for the

dissolution of a marriage, *except* to the extent that such proceeding seeks to determine

the division of property that is property of the estate." 11 U.S.C. § 362(b)(2)(A)(iv) ; *see*

11 U.S.C. § 541(a).  In these proceedings, the exception swallows the rule.  Martha seeks

to lift the stay to enforce financial orders not related to support.  Martha seeks to lift the

stay to create an improper preference and be awarded assets 'off the top' from the

Debtor's estate which will impair the estate's other creditors and impair the Debtor's

ability to reorganize.

The property of the "estate" is created when a bankruptcy case is filed.  Section

541 defines what assets and legal rights become property of the bankruptcy estate.

Bankruptcy defines "property" expansively as "all legal or equitable interests of the

debtor in property as of the commencement of the case."  §541(a)(1).  In addition, all

property that the trustee recovers by use of avoiding powers and the profits from any

assets that are property of the estate.  Pursuant to §541(a)(2), in bankruptcy, *all marital

property as of the commencement of the case becomes property of the estate, even

when only one spouse files bankruptcy*.  Robert's marital interest in property held by

Martha was property of the Debtor at the time the bankruptcy petition was filed and is

property of the bankruptcy estate and the automatic stay prevents Martha from state

4

court action. The automatic stay only serves to protect property in which the debtor and the estate has an interest from creditor collection efforts. *See* 11 U.S.C. §362(a); *see also In re Geris,* 973 F.2d 318 (4th Cir.1992). Martha is a creditor, having filed a claim. Martha, in pursuing her rights against the Debtor's property, is seeking to enforce a debt. By seeking to lift the stay, Martha is attempting to obtain an interest of the Debtor or of the bankruptcy estate. She is seeking to recover her equitable portion of the marital property held by Robert which is held by Robert in a constructive trust for Martha. Clearly, the stay cannot be lifted pursuant to 11 U.S.C. Section 362(d) where the property is necessary for an effective reorganization.

## RESPONSE

1.      On March 29, 2018, Debtor filed his Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code. On March 29, 2018, Debtor provided actual notice to his wife, MARTHA PADILLA ("Martha") and her attorneys, Geraldine Holt ("Holt") and Christopher Wehrman ("Wehrman"). Defendants, Martha, Holt and Wehrman had actual knowledge of the automatic bankruptcy stay. Debtor denies that the petition was filed on March 27, 2018.

2.      Debtor acknowledges Section 1334(a) provides for the district courts to have original and exclusive jurisdiction of all cases under title 11. Debtor admits his residence has been within the Northern District of Illinois Eastern Division for 180 days prior to March 29, 2018 for venue purposes of section 1408.

3.      Debtor admits this matter is a core proceeding.

4.      Debtor admits he and Martha were married on May 20, 1989 and have four children, three of whom are emancipated and only one of whom remains a minor, being age 14.

5.    Debtor admits he is an attorney licensed to practice law in Illinois and having his

licensure in good standing.  Robert admits that during the marriage he has been a

builder/developer.  Robert admits that during the marriage he has in the past managed

more than 35 properties.  Robert admits that during the marriage he owned the

beneficial interest in land trusts through various entities.

In further responding, Debtor affirmatively states that from and since July 26,

2018, when this Court entered an Order authorizing the appointment of a Chapter 11

Trustee which ousted him from management of his own Debtor's estate, he no longer

has the ability to pay domestic support obligations as he is without income, independent

from the estate, to support himself.  Of course, the automatic stay imposed by 11 USC

362 does not prohibit Martha from collecting the domestic support obligation from the

property or earnings acquired by Debtor after his March 29, 2018 bankruptcy filing.

However, there are presently none.  Debtor has filed motions in state court proceeding

seeking to abate his support obligations until such time as he locates suitable

employment and seeking an award of maintenance from Martha in the interim from the

property she holds – prior to its collapse into the estate.

In further responding, Debtor affirmatively states that Martha holds multi-

million dollar assets in her name - assets for which Debtor has an interest.  Debtor has a

marital interest in the properties, land trusts, entities and accounts standing in Martha's

name which must be brought in to the Debtor's estate to satisfy creditor claims,

including:

1.    847-53 E. 64th Street, Chicago, IL generating $115,807 annually

2.    1900-1904 E. 79th Street, Chicago, IL generating $71,196 annually

3.    7851-53 S. Bennett, Chicago, IL included with 79th Street income supra

4.    6806 S. LaFayette Avenue, Chicago, IL generating $34,440 annually

5.    847 E. 65th Street, Chicago, IL generating $10,416 annually.

Martha herself notes that "no matter which spouse holds legal title to the property, that vests when the divorce petition is filed." (page 10). Similarly, it doesn't matter that Martha holds title – and not Robert. Robert's marital interest vested in July 2014 when Martha filed her Petition for Dissolution of Marriage. The property in the Debtor's bankruptcy Estate vested as of March 29, 2018, when Robert filed his petition and his estate was set. Robert holds a vested interest in these five properties which must be included in the Debtor's estate to satisfy creditor claims.

Martha admits receiving $231,859 annually from these five properties (which must be collapsed into Debtor's estate). However, Martha's 2016 income tax return claims a total of $6,532 income from rental real estate. Prior to January 2016, when Debtor managed these properties, her annual income was net $286,000 from these properties. Martha claims she needs to lift the stay so she can "provide for her family". However, these properties are not currently in the Debtor's estate. Martha solely receives this income. Lifting the stay will have no effect upon this $286,000 annual income which she continues to receive. In light of this cash flow, Martha's cries of "poor" are puzzling?

Martha claims she is employed and manages multi-million dollar assets owned by Mountain Duck Properties, LLC, another single member limited liability company. The sole member is Angelica, adult daughter of Debtor and Martha. Martha has never disclosed the income or assets of Mountain Duck Properties, LLC which include nine properties not currently within Debtor's estate:

1.   7957-59 S. Harvard Avenue, Chicago, Illinois;

7

2. 1852-54 S. Central Park Avenue, Chicago, Illinois

3. 11752 S. Vincennes Avenue, Chicago, Illinois

4. 843 E. 65th Street, Chicago, Illinois

5. 2408 E. 97th Street, Chicago, Illinois

6. 6612 S. Drexel Avenue, Chicago, Illinois

7. 6426 S. Maryland Avenue, Chicago, Illinois

8. 5650 S. Bishop Street, Chicago, Illinois

9. 7426 S. Peoria Street, Chicago, Illinois

Further, Robert has an interest in a limited liability company known as Indulto, LLC. Robert has a marital interest in Martha's single member limited liability company, Indulto, LLC, which must be collapsed into Debtor's estate to satisfy creditor claims. Martha has never disclosed any assets or income from Indulto, LLC. However, from June through August 2013, Indulto received income in excess of $287,748, the whereabouts of which have never been disclosed by Martha. Martha also received a $200,000 loan from Parkway Bank & Trust Company, encumbering the LaFayette property. Whereabouts of these funds have also never been disclosed by Martha.

Robert has an interest in a limited liability company known as Cityscape Chicago, LLC. Robert has a marital interest in Martha's single member limited liability company, Cityscape Chicago, LLC, which must be collapsed into Debtor's estate to satisfy creditor claims. Martha has never disclosed any assets or income from Cityscape Chicago, LLC. However, Martha's Chase accounts reflecting an ending balance as of 2/19/16 of $117,032.

Finally, Martha has also never disclosed properties she owns which do not generate rental income, such as vacant lots. Martha has also never disclosed a single

land trust holding any properties. Robert's Verified Count I: Motion for Sanctions,

Count II: Petition for Rule 137 Sanctions; and Count II: Petition for Adjudication of

Indirect Criminal Contempt as to her fraudulent misstatements and failures to disclose

on her financial disclosures remains pending and undetermined in the State court.

6.    Robert admits that Martha filed her Petition for Dissolution of Marriage in July

2014 in 14 D 6997 which remains pending and undetermined. Robert denies the

remaining allegations contained in Paragraph 6.

7.    Robert admits that during the parties' marriage he has contributed substantial

efforts to generate the marital estate working twelve (12) plus hour days and seven days

weekly. But for the extraordinary and diligent efforts of Robert, his business acumen,

and his substantial non-marital estate contributed during the marriage, the marital

estate would not have been amassed. Robert denies the remaining allegations contained

in Paragraph 7. Robert has often tongue-in-cheek jokingly referred to himself as "Bob

the Builder" referring to his substantial experience as a builder/developer, having

engaged in construction and management throughout his entire life. Robert has never

attempted to conceal or dissipate the marital estate. Rather, Robert has filed four

notices of intent to claim dissipation relating to Martha's unilateral dissipation of the

multi-millions of dollars of the parties' marital estate.

1.    In June 2015, Robert filed his first Notice of Intent to Claim Dissipation as to

Martha's spending in excess of $20,000 dollars monthly well above the parties'

meager lifestyle during the marriage. During the coverture, the parties' had one

family vacation in six years and Martha drove a Chevy (not a brand new Lexus

purchased with cash) and Robert drove an old truck. This dissipation is

<$480,000> and counting.

2. In February 2016, Robert filed his Second Notice of Intent to Claim Dissipation as to Martha's unilateral upheaval in foisting Robert from management of the properties standing in her name which has decreased the marital estate by <$499,468> annually for the past two years and continuing.

3. In March 2016, Robert filed his third Notice of Intent to Claim Dissipation as to Martha's unilateral selection to file taxes as "married filing separately" and not declaring any income, the result of which accrued a <$500,000> tax debt to the IRS and Illinois Department of Revenue.

4. In July 2018, Robert filed his Fourth Notice of Intent to Claim Dissipation as to Martha's failure to pay the <$200,000> Lafayette mortgage resulting in foreclosure proceedings along with attorney's fees, late fees, court costs and potential loss of this property and lost marital income. In addition, Martha obtained a <$100,000> loan from Providence Sapient, LLC at 12.75% interest which was never disclosed.

It is Martha - not Robert - that has made inaccurate, misleading or false statements under oath.

8.    a.    Robert has never taken calculated steps to conceal and hide assets. Robert sat through three grueling initial creditor's meetings – answering all questions to the best of his ability. Martha is well-aware during the entire scope of their twenty-eight year marriage that Robert and his brother, William, were in business together – having various business entities and developing various properties through the years. Robert believes Martha suffers from narcissism, Tourette's syndrome and borderline personality disorders. It was Martha's extreme narcissistic jealousy of Robert's brother and his brother's wife that precipitated their dissolution proceedings. The entire first

year of Robert's dissolution proceedings was inundated with Martha's unceasing

acrimony to join Robert's brother and sister-in-law. Martha issued no less than ***seven***

subpoenas to Robert's brother and his sister-in-law, all of which had been quashed or

severely limited. As a result, William initiated litigation against Robert in the Circuit

Court of the Eighteenth Judicial Circuit in 2014 CH1777 which resulted in a

"Confidential Settlement Agreement and Release of all Claims" between Robert and his

brother in which the brothers severed their business relationship by allocating between

themselves certain properties, entities and liabilities. Robert's brother has filed a claim

(No. 17) in these proceedings relating to the indemnification provided for in that

agreement.

Martha's acrimony toward her brother-in-law continues. On May 18, 2018,

Martha again in flagrant disregard of the automatic stay, issued subpoena no. 8 to

Robert's brother. On August 8, 2018, Robert's brother again had to file yet another

Motion to Quash this eighth subpoena. See Motion to Quash attached hereto as

**Exhibit A**. Martha is not honoring the stay. She is again actively harassing Robert's

brother. Martha lives to continue the divorce with increased vehemence. Martha is not

seeking to conclude the divorce. Rather, Martha is well aware that Robert and his

girlfriend are expecting their first child. After Robert being forced by Martha's attorney,

under penalties of perjury, disclosing his girlfriend's pregnancy, he was met by Martha

seeking criminal contempt. Clearly, Martha is unable to cease her acrimony and her

attorneys are pandering to her by again issuing an eighth clearly sanctionable subpoena.

The only calculated steps are those taken by Martha to gain satisfaction through

punishment.

8.    b.    Robert admits transferring various assets including real properties. Robert is and has been a real estate developer/builder for his entire work life.  Robert earns income from buying and selling real properties.  This is his stock and trade. Robert admits that, generally speaking, title to each property is placed in its own separate land trust and/or held in its own limited liability company.  This is done to safeguard his work product.  Robert admits that at various times throughout the years that title may have been placed in the name of a nominee.  See *Kowalski v. Mountain Duck Properties*, discussed above.  Robert admits that recording a deed is not required to effect a transfer of title.

9.    Robert admits that he has sought to disqualify certain judges in the state domestic relations proceedings after Martha's acrimony sought to improperly bias them. The common law record of the state dissolution matter speaks for itself.  In further responding, Robert notes that Martha manipulated her BFF, Hon. Judge Shauna Boliker, to use her judicial auspices in a blatant attempt to prejudice the assigned judge. As noted more fully in *Kowalski v. Boliker*, 17-1952, (7th Cir. 2018), Judge Boliker's counsel "slipped [the assigned state divorce judge] a "Secret Letter" from Judge Boliker ...which ...described [Debtor] as a security threat [claiming he was] dangerous, accusing him of habitually staring at the judge in her courtroom, and noting that the judge had posted [Debtor's] picture as a warning notice."

10.    The common law record speaks for itself.  Given the rage exhibited by Martha with such enmity toward Robert that she enlisted her judge BFF to use her judicial office to bias the domestic relations court, a change of venue would certainly be appropriate.

11.    Robert admits that a two-year plenary Order of Protection was issued on December 8, 2017 finding Martha and the parties' minor son protected persons.  This

was Martha's second Order of Protection she had filed. On October 19, 2015, an Agreed Order was entered providing for Robert to have parenting time with the minor child on specified days and times. Although Martha was represented by two firms (as here), on October 26, 2015, immediately prior to Robert's very first alternating weekend parenting time, Martha, appeared pro se, not before the Domestic Relations Court, but rather before the Domestic Violence Court and presented her Emergency Petition for Order of Protection. Martha testified that at court on October 19, 2015, Robert "tried grabbing me as I was going in the courtroom" but she had not reported that to the Sheriff because "I just wanted get in, in the courtroom and sat down." Martha, herself a licensed attorney, failed to disclose to the Domestic Violence Court that Robert had court-ordered parenting time. As a result of Martha's false statements, on October 26, 2015, an Order of Protection was entered which Robert was deprived of his court-ordered agreed parenting time. On October 30, 2015, Robert presented his Verified Motion to Re-hear and Vacate the Emergency Ex Parte Petition for Order of Protection. The October 30, 2015 Order vacated the Emergency Ex Parte Order of Protection and granted Robert leave to file his Motion pursuant to Section 226 of the Illinois Domestic Violence Act for sanctions relating to Martha's untrue allegations. Judge Haracz noting Martha's "shockingly bad" judgment.

After her first unsuccessful attempt at an Order of Protection, on September 7, 2016 (after Martha denied Robert his parenting time for the entire prior month of August 2016), Martha again secured a pro se emergency ex parte Order of Protection. This Order was continued over twenty-one times until a plenary Order of Protection was entered on December 7, 2018, during which time Robert did not have any parenting time with his son. The trial court's failure to conduct a hearing during these eighteen

months was reversed by the Illinois Appellate Court remarking Judge Boyd's failure to conduct a hearing was "inexcusable." *See In re Marriage of Padilla*, 2017 IL App (1st) 170215.

Mere days following her securing an emergency *ex parte* order of protection and notwithstanding her claimed "fear" of Robert, on October 4, 2016, Martha appeared uninvited and unannounced under cover of darkness where Robert was residing to confront him. She then fled the scene - in the process striking him with a moving vehicle, leaving him injured at the side of the road - and phoning 911 claiming she was a domestic violence victim.

The December 8, 2017 Order of Protection was modified *sua sponte*, without any new or different allegations, on June 8, 2018 and is, one again, up on appeal.

12.   Robert incorporates his response to Paragraph 11 as though set forth fully herein.

13.   On March 16, 2018, Martha filed a Petition for an Award of Interim Attorneys' Fees and Costs to Defend against Interlocutory Appeal – while the appeal was pending in the Illinois Appellate Court (First District) and prior to the filing of these proceedings.

On March 29, 2018, Robert initiated these proceedings. Notwithstanding the automatic stay, on April 20, 2018, Martha presented her Petition and the Court awarded Martha $10,000 toward her fees finding the stay did not bar Martha seeking determination of fees. Robert filed an Amended Petition to Vacate the April 20, 2018 Order noting the filing violated the automatic stay and that Martha had not requested this court to lift the stay. Further, making a post-petition debt and giving it priority in payment, gives Martha's attorney an impermissible debt priority over other creditors. While debts in the nature of maintenance or support are nondischargeable, this debt is not maintenance and the child is represented by his own guardian ad litem and attorney

14

for the child and these are NOT their fees.  These are Martha's fees.  If fees were

requested by Martha, the proper vehicle is within the domestic violence proceedings and

as none were requested in the petition or at the hearing, none should be allowable.

Additionally, due to the pendency on appeal of the order of protection in the appellate

court, the trial court lacked jurisdiction to award any fees.  Finally, requiring Debtor to

pay Martha's attorney divests Robert of the ability to pay child support.

There is a difference between determining the liability and collecting.  While the

April 20, 2018 Order determined that a fee award was appropriate, it could not

determine, due to the pendency of these proceedings, the collection of that debt.

Nonetheless, with full knowledge of the pendency of these proceedings, Martha's

counsel, Ms. Holt, proceeded nonetheless and on June 1, 2018 filed a "4th Petition for

Rule to Show Cause and for Other Relief" seeking to jail Robert until the $10,000 debt

had been paid.  Prior to proceeding, neither Ms. Holt nor Martha had filed or sought this

Court to lift the stay.  Ms. Holt and Martha shoot first and only now have sought to lift

the stay to collect.  Martha and Ms. Holt overlook that in addition to actual in hand

notice on March 29, 2018 of the filing of these proceedings, the state domestic relations

court also entered an order on March 29, 2018 which expressly provided that:

> "This matter is stayed pending: the resolution of the bankruptcy matter; a
> determination by the bankruptcy court that the automatic stay does not
> apply to the matter(s) pending before this court; a determination by the
> bankruptcy court to lift the automatic stay and allow these proceedings
> to continue; or presentation of such other order from the bankruptcy
> court which would allow this Court to proceed with this matter."

See **Exhibit B** attached hereto.  Not coincidentally, Ms. Holt drafted this Order.

As of March 29, 2018, Ms. Holt was well aware of her obligation to seek this

Court lift the stay.  Nevertheless, Ms. Holt filed the 4th Petition for Rule to Show

Cause against Robert well aware that no stay had been lifted. Further, Ms. Holt

proceeded with the Petition notwithstanding the stay remains in full force and

effect – unaltered. Ms. Holt recognizes this Petition was set for hearing on July

27, 2018 – notwithstanding she just filed the instant Motion to Lift the Stay on

July 22, 2018. Ms. Holt has proceeded in complete derogation for this Court's

authority. Her after-the-fact filing on July 22, 2018 of a Motion to Lift Stay

cannot cure her prior filing on June 8, 2018 of a Petition - when she herself

drafted the March 29, 2018 Order. This form of self-help cannot be

countenanced. Further, these litigation tactics employed by Martha and Ms.

Holt are symptomatic of the "self-help" which has plagued the domestic

relations division resulting in the very "litigiousness" for which they complain.

Having repeatedly violated the stay, Martha and Ms. Holt's *unclean hands*

prevent them from seeking to lift the stay.

14.    Robert admits that an Order was entered on October 20, 2016 which order

speaks for itself. Robert denies that he refused and continues to refuse to comply with

the October 20, 2016 Order. Robert is in full compliance with the October 20, 2016

support order and the April 20, 2018 support order notwithstanding his pending and

unresolved motion to reconsider. In fact, Robert has overpaid his support! On April 20,

2018, the state domestic relations court entered an Order requiring Robert to pay

$2,051.50 per month to Martha for the support of the one minor child. This amount

was "based upon the needs of the child" of $578 for utilities; $300 for food; $673 for

expenses; and $500 for allowance – these amounts being 50% of the child's needs.

However, Martha's own disclosure statement reflected entire utilities for the entire

household of $339 monthly. Clearly, the portion attributable to the child, being one of 3

16

residing in the house, would be 1/3 of $339 and of that Robert would be responsible for half. Similarly, Martha's own disclosure statement reflects a $499 monthly allowance – Robert's ½ would be $250; not $499. Again, this is even assuming a 14 year old should be provided with a $500 monthly allowance, the Illinois statute does not mandate child support amount include an allowance. Providing this free money to the minor child – devoid of chores – deprives Robert of his parental right to teach his son the value of work and saving.

Robert's Motion to Reimburse Involuntary Overpayment filed May 18, 2018 also remains pending and undetermined. Pursuant to the October 20, 2016 Order, Robert involuntarily paid Martha $22,866.31 on July 14, 2017 and $40,408.06 on February 23, 2018 as purges. These amounts improperly included amounts which were not due such as housing, extra-curricular activities, and double counted amounts. As a result, Robert should be reimbursed approximately $33,000.

15.    Robert admits an Order was entered on March 16, 2018 which order speaks for itself. Robert was court-ordered to produce certain documents, although no discovery request, no 201(k) correspondence, no motion, nor hearing was presented. On March 16, 2018, Robert (only) was ordered to produce within 30 days a barrage of financial documents including:

> His 2016 and 2017 tax returns, bank statements for Robert and Robert's businesses from 1/1/16 to present, all outstanding tax liens, expenses for spring break 2018, if not in records under this paragraph, all credit card statements in his name or business names from 1/1/16 to present, profit and loss statements for all properties owned from 1/1/13 to present and earnings statements from 1/1/16 to present, and notes to support figures in Robert's financial affidavit."

Pursuant to the March 16, 2018 Order, all these documents were due on April 16, 2018. This was at the very same time that Robert was preparing his Chapter 11 Petition which

he filed on March 29, 2018.  Additionally, on or before April 21, 2018, Robert was

required to file his March periodic report and quarterly reports for his business

interests.  Notwithstanding this bankruptcy filing and automatic stay (and having actual

notice of the March 29, 2018 bankruptcy filing), a mere two days after their due date, on

April 18, 2018, Martha filed a Petition for Rule to Show Cause against Robert which she

presented on April 20, 2018 seeking financial sanctions and to jail Robert.  A rule to

show cause was issued against Robert on April 20, 2018 – again completely ignoring the

automatic the stay.  Without belaboring the point, Martha and her counsel are well

aware of the bankruptcy stay, having been hand delivered notice by Robert and Martha's

attorney herself drafting the bankruptcy stay order in the domestic relations court on

March 29, 2018.  On June 8, 2018, in full compliance with the Order, Robert produced a

boxload of documents, the inventory of which is attached hereto as **Exhibit C**.

Although Robert has fully complied with the March 16, 2018 Order, a protracted hearing

was held in the state domestic relations court on June 8, 2018 (again during the

automatic stay) in which Robert was examined at length as to the entries upon the

documents produced.  Even then the rule was not discharged – but rather continued for

Martha's attorney to "review the documents tendered in court and advise the Court of

said review" as to Robert's non-compliance.  See June 8, 2018 Order attached as

**Exhibit D** hereto.  Martha has ignored the automatic stay in her acrimony against

Robert.

16.     Following entry of the March 29, 2018 Order and *after entry of a child support*

*order* on April 20, 2018, Martha and her attorneys, Holt and Wehrman, nonetheless

filed, initiated and prosecuted a barrage of no less than twenty separate actions all

seeking monetary damages, all without seeking leave from the Bankruptcy Court to lift

the stay. At paragraph 19 Martha disingenuously only lists her motions that were set for

hearing on July 27, 2018. However, the automatic stay is not strictly as to pursuing

collection – it is enlarged to protect inception as well. Martha's twenty motions filed in

derogation of the automatic stay are as follows:

1.  Petition for Rule to Show Cause and Motion to Compel filed April 18, 2018
2.  Motion for Sanctions for Inaccurate or Misleading Affidavit, Rule 137 Petition for Sanctions filed May 11, 2018
3.  Petition for Attorneys Fees filed June 8, 2018
4.  Motion to Modify Contribution to Child Related Expenses filed May 18, 2018
5.  4th Petition for Rule to Show Cause and for Other Relief filed June 1, 2018 [for attorney's fees]
6.  Motion for Direct Criminal Contempt filed on June 8, 2018
7.  Rule 137 Petition for Sanctions filed on May 11, 2018
8.  2nd Petition for Adjudication of Direct Criminal Contempt of Court filed June 8, 2018
9.  Martha Padilla's Motion for Re-Allocation of Dr. Kraus Fees in the above captioned matter filed June 20, 2018
10. Subpoena to Veronica Alverez issued on May 31, 2018
11. Subpoena to SDC Properties issued on May 18, 2018
12. Subpoena to Haggerty Chevrolet issued on May 11, 2018
13. Subpoena to Webb Chevrolet issued on May 11, 2018
14. Subpoena to Royal Bank issued on May 15, 2018
15. Subpoena to Washington Federal Bank on May 15, 2018
16. Subpoena to Citibank, NA issued on June 11, 2018
17. Subpoena to Natalie Lira issued on June 15, 2018
18. Subpoena to Capital One Auto Finance issued on June 20, 2018
19. Subpoena to Allstate Insurance Company issued on June 20, 2018
20. Subpoena to Chicago Title Land Trust Company issued on July 26, 2018

None of these pleadings, motions and discovery is related to establishment or

modification of support or best interests of the child. The April 20, 2018 child support

order is *res judicata* as to then existing facts. The April 20, 2018 child support order is

modifiable only upon a showing of a substantial change in circumstances or a need to

provide for the health care needs of the child, none of which is present. The pleadings,

motions and discovery presented and prosecuted by Martha, Holt and Wehrman do not
relate to the best interests of the minor child and are properly stayed.

Recognizing the impropriety of proceeding with this property and debt issues in
light of Robert's bankruptcy filing, Martha, Holt and Wehrman have *after* taking all
these volatile actions filed a Motion to Lift Stay on July 22, 2018 in this Court.
However, the Motion to Lift the Stay was required to be granted PRIOR to initiation of
these actions, not cured subsequently.  Filing, issuing, and prosecuting a flurry of
actions in active denial of the pendency of the automatic stay violates the automatic
stay.  Martha and Holt's filed Motion to Lift Stay recognizes the impropriety of violating
the stay and seeks to retroactively authorize the continuation of Martha's divorce
acrimony.  The automatic stay provides a period of time in which all judgments,
collection activities, foreclosures, and repossessions of property are suspended and may
not be pursued by the creditors on any debt or claim that arose before the filing of the
bankruptcy petition.  The stay goes into effect automatically when the bankruptcy
petition is filed.  The stay is designed to provide a breathing spell for the debtor, during
which negotiations can take place to try to resolve the difficulties in the debtor's
financial situation.  Martha, Holt and Wehrman pounding upon the beleaguered debtor
in spite of the express stay have frustrated and denied Robert his chances to a fresh
start.

Martha, Holt and Wehrman intentionally proceeding with collection activities
notwithstanding their actual knowledge of the pendency of the automatic stay is
intentional and with deliberate disregard for the authority of this Court.  Robert has
initiated an adversary proceeding against these Defendants relating to their intentional
violation of the stay.

In addition to being a violation of the stay, on July 27, 2018, Robert was forced to

the emergency room due to chest pains as a result of Martha, Holt and Wehrman

intentionally proceeding in complete disregard of the pendency of the automatic stay.

On July 28, 2018, Martha intentionally stalked Robert at his home followed by a high-

speed highway chase, intentionally aggravating Robert's medical condition (after she

removed Robert from the family's medical insurance policy). The actions of Martha,

Holt and Wehrman have caused Debtor to experience worry, stress, panic-attacks and

concerns that are separate from the anxiety about the bankruptcy. Robert's reactions

and emotions are not fleeting nor inconsequential. Robert suffered significant

emotional harm as a result of Martha, Holt and Wehrman's conduct in repeatedly

willfully violating the automatic stay. The circumstances surrounding the violation

make it obvious that a reasonable person would suffer significant emotional harm.

Robert suffered actual damages in the forms of out-of-pocket expenses, attorney's fees,

and emotional distress.

17.    Robert denies that the inception of these proceedings was to prevent the divorce

court from proceeding. The FDIC as receiver for the failed bank, Washington Federal

Bank for Savings, has initially provided a list that $26,000,000 was due. Presently,

FDIC has filed a claim for $5,000,000. Martha's claim is $1,700,000. Clearly, Robert

had a bona fide basis for seeking Chapter 11 voluntary bankruptcy relief.

18.    Robert admits that two petitions for substitution of judge were filed by him

subsequent to the filing of his Chapter 11 Voluntary Petition on March 29, 2018. The

first one involved Judge William S. Boyd's statements on the record on June 8, 2018.

More specifically, on June 8, 2018, in a hearing before Judge William S. Boyd, the Court

stated that it believed certain of Robert's divorce motions were sanctionable.  The

following is reflected in the transcript:

> THE COURT:  Who is the bankruptcy judge?  What's the judge's name?

> MR. AVILA:  I've never been to the courtroom.

> MS. HOLT: Judge Cox.

> THE COURT: Oh, Jacqueline Cox?

> MS. HOLT: Yes.

> THE COURT: Because what I'm going to do, Counsels, just so you're
> aware, is I'm going to send this little packet over to Judge Cox.

> MR. AVILA: Sure.

> THE COURT: Along with the transcript, and the transcript will show me
> admonishing you that you're not to file certain motions because of this
> stay.  Now, I understand your thought process and you've talked to
> bankruptcy attorneys. Last time you were here, I said, well, have the
> bankruptcy judge say that you can do this. You still haven't done that. So
> I'm going to send this over to Judge Cox and have her deal with it as she
> wishes.

> MR. AVILA: Yes, Your Honor.

> THE COURT: Because, in the end, I believe that certain motions you have
> filed violate that stay. You cannot have a bankruptcy where nothing can be
> filed against you, but you can sit there and file against the other party. The
> stay goes -- is blanket, all parties.  That's my understanding. Perhaps
> Judge Cox will inform me otherwise; but if my understanding -- hers is as
> mine, these will be sanctionable.

(See June 8, 2018 Transcript at pages 5-8 attached hereto as **Exhibit E**).  Judge Boyd

expressed his intention to provide extra judicial communication with Robert's assigned

bankruptcy judge:

> THE COURT: And I want to go through this because, like I said, I'm going
> to send it over to Judge Cox.

> MR. AVILA: Yes, Your Honor.

THE COURT: And in my opinion, some of these are sanctionable, but I will let Judge Cox be the one who determines that.

(See June 8, 2018 Transcript at page 143 attached hereto as **Exhibit F**.)

Robert's attorney requested Judge Boyd to include those motions of Martha's which

Robert believed violated his bankruptcy stay:

> MR. AVILA: Your Honor, I would also request then that you also send to Judge Cox what we're saying violates the bankruptcy stay also.

> THE COURT: I'm not sending anything. I am sending exactly what I said to Judge Cox. Judge Cox is a bankruptcy judge. She's been there a number of

> MR. AVILA: Your Honor, I would also request then that you also send to Judge Cox what we're saying violates the bankruptcy stay also.

> THE COURT: I'm not sending anything. I am sending exactly what I said to Judge Cox. Judge Cox is a bankruptcy judge. She's been there a number of years. She will make her own determination.

> MR. AVILA: I understand; but I'm saying since you're sending our motions, I believe you should send their motions that I say are violative of the bankruptcy stay. ...

> MR. AVILA: I just find it unequitable that you send our motions to the bankruptcy judge and not their motions.

(See June 8, 2018 transcript at pages 148-49 attached hereto as **Exhibit G**).  Judge

William S. Boyd, an Associate Judge of the Domestic Relations Division of the Circuit

Court of Cook County, Illinois, by confirming his intent to provide extra judicial

communication to Judge Cox to direct her to sanction Robert is using his judicial

position to deprive Robert who is a divorce court respondent of his civil rights and

privileges secured by the Constitution and laws of the United States of America.  By

these intentional acts, Judge Boyd denied Robert his civil and constitutional rights to a

fair and impartial trier of fact in his federal bankruptcy court proceedings violating civil

rights Sections 1983, 1985, and the Fourteenth Amendment.

Judge Boyd's intentional meddling and intervention into these proceedings constitutes an exceptional circumstance. Robert sought to enjoin Judge Boyd from contacting and communicating Judge Cox, relative to these proceedings. Robert has a clear right to restrict Judge Boyd who is not the assigned bankruptcy judge, from persecuting him in Robert's bankruptcy proceedings. Conversely, Judge Boyd has no right to interfere and meddle in Robert's bankruptcy proceedings as he is not the assigned Federal bankruptcy judge. Judge William S. Boyd, an Associate Judge of the Domestic Relations Division of the Circuit Court of Cook County, Illinois, by stating his intent to provide extra judicial communication to Judge Cox is using his judicial position to deprive Robert who is a divorce court respondent of his civil rights and privileges secured by the Constitution and laws of the United States of America. Robert sought a substitution of Judge Boyd for cause. Judge Loza, hearing Robert's Petition, denied it noting that Judge Boyd was sending Robert's documents to Judge Cox "for direction ...to make sure he doesn't make a mistake."

19.    Robert denies the allegations contained in Paragraph 16. Robert incorporates his response to Paragraph 13 above as though contained herein.

20.    Robert denies the allegations contained in Paragraph 17. Martha has filed a claim in these proceedings asserting a marital interest in the entirety of property standing in Robert's name. She has omitted Robert's marital property standing in her name which must be collapsed into these proceedings as a source to pay creditors. Martha has also filed a claim in these proceedings claiming amounts which are not due. For instance, the October 2016 order requires Robert to pay 50% of tuition only – not housing, not supplies, not extracurricular expenses – etc. Presumably the $500 monthly allowance paid by Robert would cover these expenses.

## RELIEF REQUESTED

21.    Martha should not be allowed to lift the automatic stay to proceed with her misguided campaign of terror.  Modification of the stay is not only, not warranted, but prejudicial to the other creditors.

22.    Martha suggests that the state divorce court will determine the property rights. While this is true, it will however interfere with the development of a plan for the estate. Hence, the necessity for the stay.  Once dissolved, the state divorce court can determine the respective rights in the remaining property, if any.

23.    Martha suggests that statutory "cause" exists in the need to continue her divorce– for discovery; contempt; collection; dissipation; marital estate determination; and division of the estate.  This does not comport with the statutory definition of "cause." Further, prior to the state divorce court reaching property issues, the child custody must be determined first.  Martha has thumbed her nose at the divorce court's October 2016 Order mandating her $10,000 payment to start the court ordered custody evaluation. Martha has failed and refused to abide by this court order.  She is well aware that her personality disorders along with her active parental alienation would be revealed.

## ARGUMENT

24.    Robert is and has been ready, willing, and able to settle the divorce proceedings, having offered any number of settlement proposals.  These have also suffered failure as Martha demands more property than the marital estate contains – demanding Robert's future income and property and to be insulated from her <$600,000> (and counting) attorneys' fees bills generated from her eight sets of attorneys.  Martha's acrimony has enveloped the bulk of the state domestic relations bar.  Robert sought to bifurcate the dissolution proceedings – terminating the parties' marital status so he could wed his

25

expectant girlfriend – while reserving the property rights. Martha objected, wanting to continue to be married to Robert while continuing dissolution gamesmanship.

25.    Robert admits that this court cannot hear the domestic relations matter. Robert has not requested this court to do so. Given Martha's desire to continue to be married to Robert, she will suffer not prejudice should resolution of the domestic relations matter be deferred until termination of the stay.

26.    Robert admits the automatic stay protects the Debtor. Robert denies the remaining allegations in Paragraph 26. The four year pendency of Martha's divorce acrimony speaks for itself. Martha's eighth subpoena to Robert's brother speaks for itself. Martha's eighth set of divorce lawyers speaks for itself. Good cause exists for maintaining the stay. Robert filing a bankruptcy petition is hardly forum shopping. If, as Martha claims, she seeks to immediately proceed with the dissolution to conclusion, she should have paid the $10,000 to start custody evaluation – as opposed to running in for multiple orders of protection and issuing eight identical subpoenas to Robert's brother.

27.    Debtor agrees Martha has an equiatable interest in all property acquired during the marriage. Martha overlooks that Debtor also has equitable interest in all property acquired during the marriage which includes all properties, entities and account standing in her name. These properties are part of Debtor's estate to satisfy claims. Martha suggests this court "holds" her property. To the extent this means Robert's marital estate is part of Debtor's estate, Robert agrees. However, Martha suggests that she gets to retain the marital property in her name PLUS a portion of Debtor's estate. Martha clearly misapprehends bankruptcy law. It is true that the state domestic relations court will determine the equitable portion of marital estate to be allocated to

26

her. However, this will be from the remaining estate, if any, after debts paid. Even then the domestic relations court will need to set aside Robert's extensive nonmarital estate prior to allocating the remaining marital estate between the parties. Even then, Robert has been the breadwinner spouse in this matter and is entitled to a dispropriationate allocation in his favor. Finally, from Martha's equitable portion must be drawn the $2,000,000 (and counting) in dissipation and $600,000 (and counting) in attorneys' fees incurred feeding her insatiable rage.

28.     While the bankruptcy court looks to state law to define property, that does not translate into the state court making determinations of the property includable in the debtor's estate. This court has sole jurisdiction to entertain bankruptcy claims – not the state domestic relations court. Martha's claim that the state court "is in a better position" to determine property interests is nonsensical.

29.     Robert denies that the parties are embroiled. Martha decries the "embroiled" divorce – yet takes no responsibility for encouraging her BFF judge to bias the court, issuing 8 subpoenas to Robert's brother, seeking two orders of protection and dissipating $2,000,000. Martha cries poor while spending $44,000 monthly income from managing fourteen marital properties.

        Robert agrees that the domestic relations court will resolve the marital estate and that this court should abstain and is without authority to distribute the "marital" estate. Martha completely overlooks that once the plan has been approved and the stay is dissolved that the state court is free to adjudicate the remains of the estate after paying debts, if any.

30.     Martha gives lip-service to the <u>Curtis</u> factors. Martha is more than adequately protected in these proceedings. The pendency of these proceedings insures no

27

dissipation of assets from the estate. The estate is under the control and supervision of the bankruptcy court. The debtor-in-possession continues to have fiduciary duties including reporting, verification and insurance which are not available in the domestic relations court.

31.    a.    Martha's suggestion that the domestic relations court can give complete relief is completely false. The domestic relations court lacks jurisdiction over bankruptcy proceedings and rights of the debtor and his creditors.

b.    Allowing the domestic relations court to proceed would extensively interfere with the bankruptcy proceedings. Without belaboring it, Martha's unceasing domestic relations offensive – intentionally and willfully ignoring the stay – is proof of this extensive interference.

c.    Martha ignores *Curtis* factor 3 which is the fact that debtor is a fiduciary in these proceedings, but not in the domestic relations court. As to *Curtis* factor 4, while the domestic relations court is "specialized" being statutorily bound – however, that same statute limits the jurisdiction of the domestic relations court which does not extend to bankruptcy.

d.    As to factor 7, Martha claims there will be no prejudice. The converse is readily apparent. Removing the marital estate from the Debtor's estate is prejudicial to Debtor and creditors.

e.    Factor 10 warrants in favor of keeping the stay in force. It is not expeditious or economical to have two proceedings occurring contemporaneously.

f.    Factor 11 is non-existent. The custody evaluation has not even started in the domestic relations division – accordingly, no "fast-track" is available. Given Martha's extensive alienation of the minor child. The custody evaluation will likely be protracted.

g.    As to Factor 12, Martha suggests Debtor suffers no harm because his marital estate is "lost". This is nonsensical. Martha's marital interest in the property remaining after the debts are paid in the plan, does not outweigh Debtor's interest. Martha and Robert have to provide for their family – not "hers". Martha has no greater rights than Robert.

31 [sic] No "cause" to lift the stay exists. As reflected above, Martha's unrelenting domestic relations court action has stifled Debtor's ability to timely file monthly reports. Good cause exists to enforce the stay – not lift it. Martha's actions have clearly prejudiced Robert in that he no longer able to operate his own life-long business and is now unemployed and unable to support children.

32.    <u>The stay needs remain in place.</u>

Martha has clearly indicated that she wants to lift the stay to remove the Debtor's assets from the estate and leave creditors impaired – all in pursuit of her never ending mission to punish Robert. She wants to keep Robert's property in her name and, in addition, be allocated $1,700,000 from the Debtor's estate. Martha needs be disillusioned.

The multi-million dollar real properties, trusts, companies and accounts currently standing in her mere title are part of Debtor's marital estate and properly need be brought into the Debtor's estate to satisfy creditors claims.

In addition, as Martha brought to this court's attention, the multi-million dollar real properties, trusts, companies and accounts standing in the daughter's name as constructive trustee should properly also be part of the Debtor's estate to satisfy creditors claims.

To the extent the trustee can confirm a plan to satisfy the creditors and have funds remaining, if any, that is the marital estate that will be left for distribution by the state domestic relations court once the case is concluded and stay dissolved – not before.

Martha need not seek to lift the stay to pursue collection of the DSO. DSO are expressly exempted from the automatic stay. What Martha overlooks is that due to her actions Robert is now unemployed by virtue of the appointment of a chapter 11 trustee. Any DSO is satisfiable with post-petition earnings and property – of which there are none. Lifting the stay is clearly not warranted as to do so will prejudice the estate's creditors.

**WHEREFORE**, the Plaintiff, ROBERT KOWALSKI, respectfully requests:

A.      an Order denying the Motion for Relief from Automatic Stay;

B.      For such other relief as this Honorable Court deems equitable and just under the facts and circumstances of this cause.

_____
Robert M. Kowalski

Robert M. Kowalski
Debtor
1918 West Cermak Road
Chicago, Illinois  60608
312/218-3030

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 10, 2018, he cause dto be served a true and correct copy of the Debtor's Response to Motion of Party in Interest, Martha Padilla, for Relief from the Automatic Stay via (i) the Court's CM/ECF electronic noticing system, upon all registered participants in this proceeding, so identified on the attached Service List; and (ii) First Class, U.S. Mail, postage prepaid, upon each of the parties, as noted, on the attached Service List.
Dated: August 10, 2018

_____
Robert M. Kowalski

# ROBERT M. KOWALSKI
## SERVICE LIST

## SERVICE VIA CM/ECF

| | |
|---|---|
| Kevin M. Flynn | kevin@kmflynnlaw.com |
| Sheryl A. Fyock | sfyock@llflegal.com |
| Neil P. Gantz | neilgantz@yahoo.com, negrita0615@yahoo.com |
| Geraldine W Holt | gwholt@holtlawgroup.com |
| Ronald J. Kapustka | ndaily@ksnlaw.com, bankruptcy@ksnlaw.com |
| Patrick S. Layng | USTPRegion11.ES.ECF@usdoj.gov |
| Candice M. Manyak | candice.manyak@usdoj.gov |
| Kathleen R. Pasulka-Brown | kpasulka-brown@pjjq.com, kroh@pjjlaw.com; abhatti@pjjlaw.com; egibbons@pjjlaw.com; cgasiciel@pjjlaw.com; jwarren@pjjlaw.com; jgalindo@pjjlaw.com; jlewis@shinglerlewis.com; jtonkinson@FDIC.gov |
| Karen J. Porter | porterlawnetwork@gmail.com, laz0705@comcast.net |
| Eric S. Rein | rrein@hmblaw.com, dzic@hmblaw.com;ecfnotices@hmblaw.com |
| Todd J. Ruchman | amps@manleydeas.com |
| Jason M. Torf | jtorf@hmblaw.com, ecfnotices@hmblaw.com |

## VIA UNITED STATES MAIL

Parkway Bank & Trust Company
c/o Sheryl A. Fyock
Latimer LeVay Fyock LLC
55 West Monroe Street
Suite 1100
Chicago, IL 60603-5128

Cohen & Krol
105 West Madison Street
Suite 1100
Chicago, IL 60602-4600

5305-07 V. Leland Avenue Condominium
Association
c/o Kovitz Shifrin Nesbit
175 N. Archer Ave.
Mundelein, IL 60060-2301

ACAR Leasing LTD d/b/a GM Financial
Leasing
PO Box 183853
Arlington, TX 76096-3853

AT&T Corp
c/o AT&T Services, Inc.
Karen Cavagnaro, Esq.
One AT&T Way, Room 3A104
Bedminster, NJ 07921-2693

Ally Bank
PO Box 130424
Roseville MN 55113-0004

Ally Financial
Attn: Bankruptcy
PO Box 380901
Bloomington, MN 55438-0901

AmeriCredit/GM Financial
Attn: Bankruptcy
PO Box 183853
Arlington, TX 76096-3853

Bombardier/CBNA
P. O. Box 6000
Sioux Falls, SD 57117-6000

Capital One Auto Finance
Attn: General Correspondence/BR
PO Box 30285
Salt Lake City, UT 84130-0285

Capital One Auto Finance
AIS Portfolio Services, LP
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118-7901

Capital One Bank (USA), N.A.
PO Box 71083
Charlotte, NC 28272-1083

Cardworks/CW Nexus
Attn: Bankruptcy
PO Box 9201
Old Bethpage, NY 11804-9001

Chase Card Services
Attn: Correspondence Dept
PO Box 15298
Wilmington, DE 19850-5298

Chase Mortgage
PO Box 24696
Columbus, OH 43224-0696

Citibank/The Home Depot
Citicorp Credit Services/Centralized
Bankruptcy
PO Box 790040
St Louis, MO 63179-0040

Citicards CBNA
Citicorp Credit Svc/Centralized Bankruptcy
PO Box 790040
Saint Louis, MO 63179-0040

Costco Go Anywhere Citicard
Centralized Bk/Citicorp Credit Card Services
PO Box 790040
St Louis, MO 63179-0040

Credit One Bank NA
PO Box 98873
Las Vegas, NV 89193-8873

Discover Bank
Discover Products Inc
PO Box 3025
New Albany, OH 43054-3025

Discover Financial
PO Box 3025
New Albany, OH 43054-3025

FDIC as Receiver for Washington Federal
Bank of Savings Eric S. Rein
Horwood Marcus & Berk Chartered
500 W. Madison St. Suite 3700
Chicago, IL 60661-4591

Federal Deposit Insurance Corp
c/o Joyce Gist Lewis
1230 Peachtree Street NE Suite 1075
Atlanta, GA 30309-3626

First Premier Bank
601 S Minnesota Ave
Sioux Falls, SD 57104-4868

Geraldine V. Holt
Attorney at Law
180 N. LaSalle Street, 37th Floor
Chicago, IL 60601-2809

Huntington National Bank
Attn: Bankruptcy
PO Box 340996
Columbus, OH 43234-0996

IL Dept. of Revenue Bankruptcy Section
PO Box 19035
Springfield, IL 62794-9035

Illinois Department of Revenue
PO Box 64338
Chicago, IL 60664-0291

Illinois Bell Telephone Company
c/o AT&T Services, Inc.
Karen Cavagnaro, Esq.
One AT&T Way, Room 3A104
Bedminster, NJ 07921-2693

JPMorgan Chase Bank, N.A.
Chase Records Center
Attn: Correspondence Mail
Mail Code LA4-5555
700 Kansas Lane
Monroe, LA 71203-4774

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Joel Levin
c/o Neil Gantz
105 W Madison, Ste. 901
Chicago, IL 60602-4664

JPMorgan Chase Bank, NA
c/o Manley Deas Kochalski LLC
P.O. Box 165028
Columbus, OH 43216-5028

Martha Padilla
1512 W. Polk
Chicago, IL 60607-3119

Merrick Bank
Resurgent Capital Services
PO Box 10368
Greenville, SC 29603-0368

Midland Loan Services
c/o FDIC Portfolio Servicing
P. O. Box 25965
Shawnee Mission, KS 66225-5965

Piorun Properties LLC
1918 W. Cermak
Chicago, IL 60608-4237

Parkway Bank & Trust
4800 N. Harlem Avenue
Harwood Heights, IL 60706-3577

Syncb/PLCC
Attn: Bankruptcy
PO Box 965060
Orlando, FL 32896-5060

Premier Bankcard, LLC
Jefferson Capital Systems LLC Assignee
PO Box 7999
Saint Cloud Mn 56302-7999

Washington Federal Bank for Savings
c/o FDIC
1601 Bryan Street
Dallas, TX 75201-3401

The Huntington National Bank
P O Box 89424
Cleveland, OH 44101-6424

William Kowalski
c/o Kevin M. Flynn
Kevin M. Flynn & Associates
190 S. LaSalle, Suite 3850
Chicago, IL 60603-3431

Joel Levin
Levin & Associates
180 N LaSalle St
Ste 1822
Chicago, IL 60601-2604

Parkway Bank & Trust Company,
c/o Sheryl A. Fyock,
Latimer LeVay Fyock LLC
55 West Monroe Street, Suite 1100
Chicago, IL 60603-5129

Indomitable, LLC
1918 W. Cermak
Chicago, IL 60608-4237

4

48126202v.1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT—DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:                    )
                                          )
MARTHA PADILLA,                           )
                                          )
                    Petitioner,           )
                                          )    No.  14 D 06997
         and                              )
                                          )
ROBERT KOWALSKI,                          )
                                          )
                    Respondent.           )

## NOTICE OF FILING

To:    Frank Avila, Esq.                  Christopher D. Wehrman
       Frank Avila Law                    Swanson, Martin & Bell, LLP
       7132 N. Harlem, Suite 107          330 N. Wabash, Suite 3300
       Chicago, IL 60631                  Chicago, IL 60611
       frankavilalaw@gmail.com            cwehrman@smbtrials.com

       Geraldine W. Holt                  James Palmisano
       Birnbaum Haddon Gelman             Palmisano Law Group
       & Arnoux, LLC                      10760 West 143rd Street, Suite 63
       180 North LaSalle Street, 37th Floor   Orland Park, IL 60462
       Chicago, IL 60601                  jamespalmisano@palmisanolawgroup.com
       gholt@bhgafamlaw.com

        YOU ARE HEREBY NOTIFIED that on **August 8, 2018**, I caused to be filed with the
Office of the Clerk of the Circuit Court of Cook County, Illinois, a *Motion to Quash and
Objections to the Subpoena in a Civil Matter (for Testimony and/or Documents) Served Upon
SDC Properties Inc.*, copies of which are attached hereto and served upon you herewith.

                                        Dussias Wittenberg Koenigsberger LLP
                                        Attorneys for William Kowalski
                                        250 South Wacker Dr., Suite 600
                                        Chicago, Illinois 60606
                                        (312) 226-8840
                                        Atty. No. 62113
                                        service@dwkllp.com



## CERTIFICATE OF DELIVERY

The undersigned hereby certifies under penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure 735 ILCS 5/1-109 that the above notice and any attached pleadings were (X) delivered via electronic mail, ( ) facsimile transmittal and ( ) placed in the U.S. Mail properly addressed, with first class postage prepaid, to the addressee at the address set forth above on August 8, 2018.

Alejandra Ramirez

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT—DOMESTIC RELATIONS DIVISION

IN RE THE MARRIAGE OF:                    )
                                          )
MARTHA PADILLA,                           )
                                          )
                    Petitioner,           )
                                          )        No.  14 D 06997
        and                               )
                                          )
ROBERT KOWALSKI,                          )
                                          )
                    Respondent.           )

**MOTION TO QUASH AND OBJECTIONS TO THE SUBPOENA IN A CIVIL MATTER
(FOR TESTIMONY AND/OR DOCUMENTS) SERVED UPON SDC PROPERTIES INC.**

Now Comes, non-party William Kowalski ("William") by and through his attorneys,

Dussias Wittenberg Koenigsberger, LLP, and pursuant to Section 2-1101 of the Code of Civil

Procedure (735 ILCS 5/2-1101) and Supreme Court Rules 201 and 214 hereby objects and moves

this Honorable Court to quash the Subpoena in a Civil Matter (for testimony and/or documents)

served on SDC Properties Inc on or about May 18, 2018.  In support thereof, William states as

follows:

**Background:**

1.      William is married to Sandra Kowalski ("Sandra") and is the brother of the

**Respondent, Robert Kowalski ("Robert").**

2.      Beginning in 1989, William and Robert began engaging in real-estate

development including buying, selling, building, renovating, and managing rental properties.  The

brothers formed limited liability companies for their various real-estate projects.  William worked

on the job sites for their building and rehabbing projects, which would ultimately be sold or

rented.  Robert handled the legal and business end of the real-estate business including, scouting

and purchasing properties, obtaining financing, collecting rents, managing the bank accounts,

representing the various limited liability companies at real-estate closings, and responding to

legal issues.

3.      Among the LLCs formed for the Kowalski brothers' real-estate business are: **Piorun Properties LLC, Indomitable LLC, Invincible LLC, Inflexible LLC,** and **Grom Development LLC** (collectively "**LLCs**").

4.      On July 29, 2014, the Petitioner, **Martha Padilla ("Martha")**, filed her "Petition for Dissolution of Marriage" against Robert.

5.      On September 8, 2014, Martha filed her Motion for Leave to Join Necessary Party Respondents and Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for Leave to Join") in the Circuit Court of Cook County – Domestic Relations Division seeking, *inter alia*, to join William as a third-party respondent in the dissolution proceeding. (A true and correct copy of Martha's Motion for Leave to Join is attached hereto and incorporated herein by reference as **Exhibit "1"**).

6.      On September 29, 2014, William, individually and derivatively on behalf of the LLCs, filed a five-count lawsuit in the Circuit Court of the Eighteenth Judicial Circuit, DuPage County Illinois, against Robert seeking: an accounting (Count I), dissolution of the LLCs (Count II), winding up of joint affairs (Count III), damages for breach of fiduciary duty (Count IV), and damages for conversion (Count V).

7.      On October 10, 2014, William filed his Response to Martha's Motion for Leave to Join seeking the denial *in toto* of Martha's Motion for Leave to Join. (A true and correct copy of William's Response is attached hereto and incorporated herein by reference as **Exhibit "2"**).

8.      Despite the fact that the instant litigation concerns pre-decree proceedings between Martha and Robert, on or about October 8, 2014, Martha served a Subpoena in a Civil Matter (for records only) ("subpoena for records") upon William. (A true and correct copy of the subpoena for records served is incorporated herein by reference only as **Exhibit 3**, and shall be tendered to the Court at the hearing of this matter).

9.      On October 23, 2014, William filed his Motion to Quash and Objections to the Subpoena in a Civil Matter (Records Only) Served Upon *sic* William Kowalski. Therein William

2

requested an order quashing the subpoena due in part because the request was unduly burdensome and not calculated to lead to discoverable or useful information and instead designed as a means to harass and cause unreasonable annoyance to William. [1]

10.    On November 12, 2014, this Court entered an order that provides, in pertinent part, as follows:

> "1. The Motions to Quash filed by non-parties Sandra and William Kowalski are granted in part and denied in part.
>
> 2. Martha shall reissue a subpoena(s) to William Kowalski and Sandra Kowalski for the following exclusive documents:  documents relating to any real estate once held by an entity in which Martha or Robert Kowalski had an interest that was also transferred to William or Sandra Kowalski or an entity they own or control.
>
> 3. Status on joinder and discovery set for 1/21/15 at 9:30 a.m." (A true and correct copy of the November 12, 2014 order is attached hereto and incorporated herein as **Exhibit "4"**).

11.    On or about December 10, 2014, Martha served a Subpoena in a Civil Matter (for records only) ("subpoena for records") upon William. (A true and correct copy of the subpoena for records served is incorporated herein by reference only as **Exhibit 5**, and shall be tendered to the Court at the hearing of this matter).

12.    On January 20, 2015, William filed a Motion to Quash and Objections to the Subpoena. (A true and correct copy of the motion is incorporated by reference only as **Exhibit 6**, and will be tendered to the Court at the hearing of this matter.).

13.    On March 13. 2015, the Court entered an order as follows:

> **Order entered that Sandra's Motion to Quash is granted in part. Martha's rider shall be limited in time to September, 2011 and limited to redacted documents relating to the transfer of real estate once owned by Martha Padilla and/or Robert Kowalski and/or once owned by any entity for which either Martha or Robert had an interest that was transferred to Sandra Kowalski and/or an entity she controls or has an interest; Martha shall receive the redacted documents within 7 days and the Court shall receive sealed unreacted documents within 7**

---

[1] Martha also served Sandra with a subpoena.  Sandra filed a subsequent Motion to Quash and Objections to the Subpoena in a Civil Matter (Records Only) Served Upon Sandra Kowalski on October 23, 2014.

**days.  Counsel for Sandra shall receive notice and opportunity to be heard prior to unredacted documents being released; Martha's Petition for Indirect Civil Contempt filed against Sandra Kowalski is withdrawn**

14.    On March 20, 2015, Sandra complied with the order.

15.    On March 25, 2015, Martha filed an Emergency Motion for Hearing *instanter* on Joinder of Necessary Party Respondent and Issuance of TRO and for Other Relief.  Martha's Motion sought joinder of William, and other LLC's.  On March 27, 2015, Martha's Motion/Petition was found not to be an emergency as to William, Sandra, and any business entities.

16.    On April 24, 2015, Martha issued her third Subpoena in a Civil Matter (records only) upon William, this time seeking documents dating back to 2011.

17.    On May 1, 2015, William Kowalski signed an affidavit that provides, in pertinent part, as follows:

> "1. That I am a subpoenaed witness in this matter and I am represented by Steven Wittenberg of LeVine, Wittenberg, Shugan & Schatz.
>
> 2. That I was served with a subpoena requesting certain documents in regards to any real estate once owned by Martha Padilla and/or Robert Kowalski or any entity.
>
> 3. That Sandra Kowalski, my Wife, already provided certain documents in response to the subpoena served upon her through her attorney, Michael Koenigsberger.
>
> 4. That the documents previously provided are the only documents I would have to respond to said subpoena."

18.    On May 19, 2015, Martha's Joinder Motion was denied. (A copy of this order is attached hereto and incorporated herein as **Exhibit "7"**).

19.    On July 20, 2015, Martha served eight new subpoenas, notwithstanding the prior court orders, on: Chicago Title and Trust, Founders Bank, Hazen Insurance, Lakeside Bank, Metropolitan Bank, North Star Bank, Parkway Bank and Washington Federal Bank.  On July 28, 2015, Martha also issued a ninth Subpoena to Washington Federal Bank.  Said subpoenas sought

documents regarding William.

19. On March 14, 2016 Martha served the following subpoenas

    a.  Javier Espana
    b.  John F. Gembara
    c.  Cesar Sanchez
    d.  Albany Bank and Trust
    e.  Alta Vista Properties
    f.  Byline Bank
    g.  Chicago Title and Trust
    h.  Lakeside Capital Assets, LLC/David Gray
    i.  Lakeside Capital Assets, LLC/Timothy Gray
    j.  MIL Property Group/Erik Sachs
    k.  MIL Property Group/Mark Masino
    l.  Parkway Bank and Trust
    m.  PB and J XXIV, LLC
    n.  Jorge O. Sanchez
    o.  Valamana, LLC
    p.  Washington Federal Bank for Saving
    q.  Marquette Banks
    r.  William Kowalski

20. On May 4, 2016, William filed his Motion to Quash Subpoenas in a Civil Matter Issued By Petitioner on 3/14/16, For Supervision of Discovery, and For Other Relief. Said Motion remains pending and undetermined.

**Argument:**

21. On or about May 18, 2018, Martha issued a subpoena to SDC Properties Inc. (A true and correct copy of the subpoena is incorporated herein by reference only as **Exhibit 8**, and shall be tendered to the Court at the hearing of this matter).

22. SDC Properties Inc. did not hold properties. The company was formed to hold William's broker's license and William was the only shareholder. William was the registered agent. The company is dissolved.

23. Martha's subpoena relates to Invincible, LLC; Indomitable, LLC; Piorun, LLC; Inflexible, LLC; Grom Development, LLC; Market Street, LLC; or any other business entity owned, managed, or otherwise involved with Robert Kowalski.

24. The time frame requested in the subpoena is unduly burdensome. For many of

5

the requests, Martha is seeking documents from January 1, 2013 – over five years of documents.

For other requests, there is no time frame indicated.

25.    Moreover, the subpoena requests the following documents:

5.    All documents evidencing promotional materials related to the sale of any real property owned or managed by ROBERT KOWALSKI or one of the related entities from January 1, 2013 to present;

6.    All documents evidencing promotional materials related to the listing for sale of any real property owned or managed by ROBERT KOWALSKI or one of the related entities from January 1, 2013 to present;

7.    All documents evidencing promotional materials related to the rent of any real property owned or managed by ROBERT KOWALSKI or one of the related entities from January 1, 2013 to present;

8.    All documents evidencing promotional materials related to the listing for rent of any real property owned or managed by ROBERT KOWALSKI or one of the related entities from January 1, 2013 to present;

26.    To request promotional materials related to the sale of *any* real property; the listing for sale of *any* real property; the rent of *any* real property; or the listing for rent of *any* real property is unduly burdensome and not likely to lead to admissible evidence. Not to mention the request dates back over five years and SDC is dissolved.

27.    Martha's subpoena should be quashed not only because it is overly broad, but because this Court already ruled on Martha's attempts to join William and the entities in which he had an interest including Piorun Properties, Indomitable, Invincible, Inflexible, and Grom Development, and Market Street Properties. Moreover, this Court already ruled on documents William was required to turnover.

28.    Finally, William has a pending Motion to Quash that has yet to be adjudicated.

29.    Supreme Court Rule 214 provides for the production of discovery and states in pertinent part as follows:

"Any party may by written request direct any other party to produce for inspection, copying, reproduction photographing, testing or sampling specified documents, including electronically stored information as defined under Rule 201(b)(4), objects or tangible things, or to permit access to real estate for the purpose of making surface or subsurface inspections or

(8/22/11) CCDR 0719

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, DOMESTIC RELATIONS DIVISION**

RE THE MARRIAGE /CIVIL UNION OF:

_Martha Padilla_
PETITIONER

NO. _14 D 6997_

AND

_Robert M. Kowalski_
RESPONDENT

CALENDAR: _____

**ORDER REGARDING BANKRUPTCY MATTER**

This matter coming on to be heard on this Court's call for _hearing_
(hearing/status/pretrial), counsel for both parties being present, or the parties proceeding pro se or _____
and counsel for _Robert M. Kowalski_ being present, _____
representing that Petitioner/Respondent filed a petition for bankruptcy, Docket No. _18-09130_ filed
on _3/29_, _2018_ _at 10:30 a.m._ (date), in _Northern_ (district), which is presently pending,
and contending that the bankruptcy action stays this proceeding with respect to matters relating to the property and debts
of the parties, IT IS HEREBY ORDERED:

1. ☐ This matter is stayed pending: the resolution of the bankruptcy matter; a determination by the bankruptcy court
that the automatic stay does not apply to the matter(s) pending before this Court; a determination by the bankruptcy court
if the automatic stay and allow these proceedings to continue; or presentation of such other order from the bankruptcy
court which would allow this Court to proceed with this matter.

OR

☑ Matters concerning the division or allocation of property and debts of the parties are hereby stayed pending the
resolution of the bankruptcy matter.  Matters concerning:

☑ custody
☑ visitation
☐ establishment of paternity
☑ establishment or modification of child support
☑ establishment or modification of maintenance
☑ _all matters concerning the minor child, support and maintenance_ (Specify the matter)

_Child Representative and Guardian ad litem_

shall continue to pend before this Court, as the automatic stay does not apply, pursuant to Section 362 of the Bankruptcy Code.

2. Nothing in this Order shall be deemed to prohibit either party from filing a motion seeking a determination from this
Court or the bankruptcy court that the automatic stay does or does not apply to these proceedings.

3. Matter stayed pursuant to this order shall be exempt from Local Rule 2.3 of the Circuit Court of Cook County, which
requires a motion to be called for hearing within 90 days from the date it is filed.

Atty. No.: _32927_
Name: _Geraldine W. Holt_
for: _Petitioner_
Address: _180 N. LaSalle #3700_
City/State/Zip: _Chicago, IL 60601_
Telephone: _(312) 863-2800_

ENTERED:

Dated: _____

Associate Judge
William Stewart Boyd
MAR 29 2018
Circuit Court—1760

Judge _____  Judge's No. _B_

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**Robert Kowalski Document Production pursuant to 3/16/18 Order**

Robert's 2016 and 2017 income tax returns

2016 Form 1040 U.S. Individual Income Tax Return for Robert Kowalski
2017 Form 1040 U.S. Individual Income Tax Return for Robert Kowalski

Bank statements for Robert and Robert's businesses from 1/1/16 to present

Byline Bank, Indomitable LLC, account no. 4304806, statements dated 1/31/16, 5/31/16, 6/30/16,
7/31/16, 8/31/16, 9/30/16, 10/31/16, 11/30/16, 12/31/16, 1/31/17, 2/28/17, 3/31/17, 4/30/17,
5/31/17, 6/30/17, 7/31/17, 8/31/17, 9/30/17, 10/31/17, 11/30/17, 12/31/17, 1/31/18, 2/28/18,
3/31/18
Washington Federal Bank for Savings, Piorun Properties LLC, account no. 0-01-60-311548, statements
dated 1/31/16, 2/29/16, 3/31/16, 4/30/16, 5/31/16, 6/30/16, 7/31/16, 8/31/16, 9/30/16, 10/31/16,
11/30/16, 12/31/16
Byline Bank, Burros Blancos LLC, account no. 1525, statements dated 1/31/17, 2/28/17, 3/31/17,
4/30/17, 5/31/17, 6/30/17, 7/31/17, 8/31/17, 9/30/17, 10/31/17, 11/30/17, 12/31/17

Outstanding tax liens
Cook County Clerk Estimate of Redemption PIN #20-25-330-027-0000
Cook County Clerk Estimate of Redemption PIN #20-23-103-009-0000
Cook County Clerk Estimate of Redemption PIN #16-13-403-023-0000

Expenses for spring break in 2018 if not in records under this paragraph

All credit card statements in his name or business names from 1/1/16 to present

GM Financial Leasing Account #112003490415, statements dated 10/16/17, 11/15/17, 12/16/17,
2/13/18, 3/16/18
2018 Illinois Registration Identification Card
ST-556 5/16/15
GMC Financial Leasing 10/12/17
Mike Haggerty Buick GMC, Inc. Purchase Order dated 10/5/17
Odometer Disclosure Statement 10/5/17
Warranty of Title dated 10/5/17
Motor Vehicle Lease Agreement dated 10/5/17
ST-556-LSE 10/5/17
Menards Account #6004-3009-8719-6018 statements dated 5/23/17, 6/22/17, 7/23/17
Citi Account #5035431321020631 statements dated 6/12/17, 7/13/17, 8/13/17, 9/12/17, 12/13/17,
11/12/17, 10/13/17, 2/9/18, 1/12/18, 3/13/18
Citi/Aadvantage Account #5833 statements dated 10/9/17, 11/8/17, 12/8/17, 1/8/18, 2/8/18, 3/8/18
BP Account #7006002005873240 statements dated 12/21/15, 1/21/16, 4/20/16, 5/20/16, 6/20/16,
7/21/16, 8/21/16, 9/20/16, 10/21/16, 11/20/16, 12/21/16, 1/20/17, 2/17/17, 3/21/17, 4/20/17,
5/21/17, 6/20/17, 7/21/17, 8/21/17, 9/20/17, 10/20/17, 11/20/17, 12/21/17, 1/21/18, 2/18/18,
3/21/18
Discover Account #6258 statements dated 2/18/16, 3/18/16, 4/18/16, 6/18/16

Capital One #0037 statements dated 1/9/16, 2/9/16, 3/9/16, 4/9/16, 5/9/16, 6/9/16, 7/9/16, 8/9/16, 9/9/16, 10/9/16, 11/9/16, 12/9/16, 1/9/17, 2/9/17, 3/9/17, 4/9/17, 5/9/17, 6/9/17, 7/9/17, 8/9/17, 9/9/17, 10/9/17, 11/9/17, 12/9/17, 1/9/18, 2/9/18, 3/9/18

Ally, account #611921576698 statements dated 1/29/16, 10/28/16, 12/30/16, 2/27/17, 4/28/17, 5/30/17, 6/29/17, 7/28/17, 8/30/17, 11/2/17, 1/2/18, 3/2/18

Grossinger Purchase Contract 7/7/14

Ally account #154922596216 statements dated 1/4/16, 11/4/16, 12/2/16, 1/4/17, 2/3/17, 4/4/17, 7/4/17, 8/4/17

Costco Anywhere Visa Card by Citi ending #3355 statements dated 11/16/17, 12/18/17, 1/6/18, 2/16/18, 3/16/18,

Chase Slate account #4266841543588170 statements dated 10/22/17, 11/22/17, 12/22/17, 1/22/18, 3/22/18, 2/22/18

Chase Slate account #4121383115158590 statements dated 10/4/17, 11/4/17, 12/4/17, 1/4/18, 2/4/18, 3/4/18

Capital One account #2350 statements dated 1/9/16, 2/9/16, 3/9/16, 4/9/16, 5/9/16, 6/9/16, 7/9/16, 8/9/16, 9/9/16, 10/9/16, 11/9/16, 12/9/16, 1/9/17, 2/9/17, 3/9/17, 4/9/17, 5/9/17, 6/9/17, 7/9/17, 8/9/17, 9/9/17, 10/9/17, 11/9/17, 12/9/17, 1/9/18, 2/9/18, 3/9/18

HSBC Gold Mastercard account #6186 statements dated 12/26/17, 1/26/18, 2/23/18, 3/26/18, 1/22/18 dispute, 2/12/18 dispute

Merrick account #4120614092296164 statements dated 1/1/16, 2/2/16, 3/2/16, 4/1/16, 5/2/16, 6/2/16, 7/1/16, 8/2/16, 9/2/16, 10/2/16, 11/2/16, 12/2/16, 1/2/17, 2/2/17, 3/2/17, 4/2/17, 5/27/17, 6/2/17, 7/2/17, 8/2/17

Merrick account #4120614092900450 statements dated 9/1/17, 10/2/17, 11/2/17, 12/1/17, 2/2/18, 3/2/18

Chase Slate account #4121383100391834 statements dated 12/4/15, 1/4/16, 2/4/16, 3/4/16, 4/4/16, 5/4/16, 6/4/16, 7/4/16

Chase Slate account #4147400202102115 statements dated 10/2/17, 11/2/17, 12/2/17, 1/2/18, 2/2/18, 3/2/18

Chase Slate account #4121383114010214 statements dated 9/4/16, 10/4/16, 11/4/16, 12/4/16, 1/4/17, 2/4/17, 3/4/17, 4/4/17, 5/4/17, 6/4/17, 7/4/17, 8/4/17, 9/4/17

Chase Slate account #4266841242384954 statements dated 12/22/15, 1/22/16, 2/22/16, 3/22/16, 4/22/16, 5/22/16, 6/22/16, 7/22/16, 8/22/16, 9/22/16, 10/22/16, 11/22/16, 12/21/16, 1/22/17, 2/22/17, 3/22/17, 4/22/17, 5/22/17, 6/22/17, 7/22/17, 8/22/17, 9/22/17

Credit One Bank, account #5466451122576367, statements dated 11/10/15, 12/10/15, 5/10/16, 6/10/16, 7/10/16, 8/10/16, 9/10/16, 10/10/16, 11/10/16, 12/10/16, 1/10/17, 2/10/17, 3/10/17, 4/10/17, 5/10/17, 6/10/17, 7/10/17, 8/10/17, 9/10/17

Credit One Bank account #5466451140202822, statements dated 10/10/17, 11/10/17, 12/10/17, 1/1/18, 2/10/18, 3/10/18

Credit One Bank account #4447962261634327, statements dated 5/17/16, 6/17/16, 7/17/16, 8/17/16, 9/17/16, 10/17/16, 11/17/16, 12/17/16, 1/17/17, 2/17/17, 3/17/17, 4/17/17, 5/17/17, 6/17/17, 7/17/17, 8/17/17, 9/17/17

Credit One Bank account #4447962411783917, statements dated 10/17/1711/17/17, 12/17/17, 1/17/18, 2/17/18, 3/17/18

Lowe's account #9250 statements dated 8/16/17, 7/16/17, 6/15/17

Home Depot account #9124, statements dated 6/11/17, 7/12/17, 8/11/17, 9/11/17, 10/12/17, 11/10/17, 12/12/17, 1/12/18, 2/9/18, 3/12/18

Discover account #6258, statements dated 1/18/16, 5/18/16, 8/18/16, 7/18/16, 9/18/16, 10/18/16, 11/18/16, 12/18/16, 1/18/17, 2/18/17, 3/18/17, 4/18/17, 5/18/17, 6/18/17, 7/18/17, 8/18/17, 9/18/17, 10/18/17, 11/18/17, 12/18/17, 1/18/18
Capital One account no. 6207525293896 statements dated 10/12/15, 11/12/15, 12/12/15, 1/12/16, 2/11/16, 3/9/16, 4/9/16, 5/9/16, 6/9/16, 7/9/16, 8/9/16, 9/9/16, 10/10/16, 11/9/16, 12/9/16, 1/9/17, 2/7/17, 3/9/17, 4/10/17, 5/9/17, 6/9/17, 8/9/17, 9/9/17, 10/19/17, 11/9/17, 1/9/18, 2/7/18

Profit and loss statements for all properties owned from 1/1/13 to present

2013 Indomitable LLC profit and loss statement
2013 Piorun Properties LLC profit and loss statement
2014 Indomitable LLC profit and loss statement
2014 Piorun Properties LLC profit and loss statement
2015 Indomitable LLC profit and loss statement
2015 Piorun Properties LLC profit and loss statement
2016 Indomitable LLC profit and loss statement
2016 Piorun Properties LLC profit and loss statement
2017 Indomitable LLC profit and loss statement
2017 Piorun Properties LLC profit and loss statement
2015 Schedule E (Form 1040) Robert M. Kowalski
2016 Schedule E (Form 1040) Robert M. Kowalski
2017 Schedule E (Form 1040) Robert M. Kowalski

Earnings statements from 1/1/16 to present

2016 Indomitable LLC earnings statement
2017 Indomitable LLC earnings statement
2016 Piorun Properties LLC earnings statement
2017 Piorun Properties LLC earnings statement
2016 Burros Blancos LLC earnings statement
2017 Burros Blancos LLC earnings statement
B26 Amended Periodic Report for Debtor Robert M. Kowalski, case no. 18-09130 as of 3/31/18

Notes to support figures in Robert's 2/21/18 financial affidavit
2018 ARDC Notice of Registration
BlueCross BlueShield of Illinois ID number XOF890204866 dated 9/19/17
Physicians Immediate Care 12/7/17
Mike Haggerty Invoice dated 7/18/17
City of Chicago Violation Notice 10/19/16
City of Chicago collection Notice 12/6/16
City of Chicago account #516643-516643 statement dated 11/2/16
AT&T account #232058684463 statement dated 9/8/16
Illinois Tollway Final Order of Liability dated 5/23/17
Chase Mortgage Statements, account # 0680762127, statements dated 3/3/15-11/8/17
Relationship Management Summary dated 1/8/18
Affidavit of Compliance

Order                                                          (Rev. 02/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Martha Padilla

v.                                          No. ___14 D 6997___

Robert Kowalski                                   Cal. C

### ORDER

This matter coming to be heard on Martha's petition for rule to show cause for Robert's failure to comply with the Court's March 16, 2018 court order, the parties being present with counsel and the court hearing oral argument and testimony, Robert Kowalski tendering a substantial number of documents on this date, this hearing date having been continued previously due to Petitioner's tendering of documents and failure to appear, and the Court being advised,

IT IS HEREBY ORDERED:

① Ruling on the petition for rule is reserved until July 29, 2018 12:00 p.m.

② Martha has 21 days to review the documents tendered in Court and advise the Court of said review on July 29, 2018 at 1:00 p.m.

③ The transcript of this date's hearing shall be tendered to the Court by 6/29/18 and the Court's ruling on direct criminal contempt is set for ~~hearing~~ status at 12 noon on 6-22-18.

④ Robert shall tender hard copies of the electronically produced documents to his attorney, arguing by July 6/15/18.

Attorney No.: _____0258_____

Name: C. Welner for MEC 940

Atty. for: _____Plt.____

Address: 332 N. Michigan #3300

City/State/Zip: Ch. IL 60611

Telephone: 312/372-9100

ENTERED:

Dated: _____, _____

Judge                          Judge's No.

JUN ___ 

Circuit Court ___ 1760

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

1    it's in a divorce situation, then can you file a motion

2    regarding assets of a party who's not in a bankruptcy?

3    They said we don't see any reason why not, because if

4    Miss Kowalski-Padilla was in bankruptcy, then she would

5    indeed be exempt from some of these motions.

6            However, since she's not in bankruptcy, we

7    believe we're properly filing them.  If you deny them,

8    then, you know, that's part of the record and I

9    understand that and that's to be defined in the order.

10           However, we are not filing any motions that

11   violate my client's bankruptcy.  We believe the other

12   side are, or may be, but that's left up to the

13   bankruptcy attorney and the Bankruptcy Court, not I.

14      THE COURT:  Well, no.  It's not left up the

15   bankruptcy attorney.  It's left up to the bankruptcy

16   judge.

17      MR. AVILA:  Well, for the Bankruptcy Court to

18   bring a motion, for the Bankruptcy Court to enforce.

19      THE COURT:  Can I finish?

20      MR. AVILA:  Yes, Your Honor.

21      THE COURT:  Who is the bankruptcy judge?  What's

22   the judge's name?

23      MR. AVILA:  I've never been to the courtroom.

24      MS. HOLT:  Judge Cox.

6

6/8/18 Transcript    E

1      THE COURT:  Oh, Jacqueline Cox?

2      MS. HOLT:  Yes.

3      THE COURT:  Because what I'm going to do,

4  Counsels, just so you're aware, is I'm going to send

5  this little packet over to Judge Cox.

6      MR. AVILA:  Sure.

7      THE COURT:  Along with the transcript, and the

8  transcript will show me admonishing you that you're not

9  to file certain motions because of this stay.

10     Now, I understand your thought process and

11  you've talked to bankruptcy attorneys.  Last time you

12  were here, I said, well, have the bankruptcy judge say

13  that you can do this.  You still haven't done that.  So

14  I'm going to send this over to Judge Cox and have her

15  deal with it as she wishes.

16     MR. AVILA:  Yes, Your Honor.

17     THE COURT:  Because, in the end, I believe that

18  certain motions you have filed violate that stay.  You

19  cannot have a bankruptcy where nothing can be filed

20  against you, but you can sit there and file against the

21  other party.  The stay goes -- is blanket, all parties.

22  That's my understanding.  Perhaps Judge Cox will inform

23  me otherwise; but if my understanding -- hers is as

24  mine, these will be sanctionable.  That being the case,

7

6/8/18 Transcript

1  what are we doing today?

2       MR. WEHRMAN:  In addition, Judge, just to round

3  out what is set for today, in addition to our petition

4  for rule, you had granted each of the attorneys, the

5  child rep, the GAL, and Miss Padilla's attorneys, leave

6  to file fee petitions for Mr. Kowalski's failure to

7  appear on one court date, the last court date, as well

8  as his counsel's failure to appear on the date

9  preceding that.

10      THE COURT:  His failure to appear was as a result

11  of what motion?

12      MR. WEHRMAN:  Well, the petition for rule.

13      THE COURT:  The petition for rule was based upon?

14  What was the basis of the petition for rule?

15      MR. WEHRMAN:  Failure to comply with your court

16  order tendering documentation related to his income and

17  finances.

18      THE COURT:  And how does that relate to

19  child-related issues?

20      MR. WEHRMAN:  They relate to child-related

21  financial issues insofar, Judge, as you have -- we have

22  been trying to determine Mr. Kowalski's income.  As you

23  know, he has a number of properties.  He has submitted

24  disclosure statements and we're trying to get the

8

1    what the testimony was, I don't know yet.  I have to

2    review those.  So I will let you know, with regard to

3    this petition for direct criminal contempt, whether I

4    need a response or anything else.

5        MR. WEHRMAN:  Okay.

6        THE COURT:  But there will be a ruling on the one

7    here on the next date I see you guys.

8            Now, you filed several -- or you sent to me

9    several courtesy copies of several motions.

10       MR. AVILA:  Including responses to their

11   previously filed motions, Your Honor.

12       THE COURT:  And I want to go through this because,

13   like I said, I'm going to send it over to Judge Cox.

14       MR. AVILA:  Yes, Your Honor.

15       THE COURT:  And in my opinion, some of these are

16   sanctionable, but I will let Judge Cox be the one who

17   determines that.

18           So we have No. 3, petition to vacate the

19   support order, okay.  Have you responded to that,

20   Mr. Wehrman?

21       MR. WEHRMAN:  Judge, actually, none of the -- all

22   of these motions are being presented for the first

23   time.

24       THE COURT:  I see.

**143**

1   responded to.

2          And I will speak for my client, Judge, and we

3   would say to the extent that you have any interest in

4   receiving responses and then making summary rulings

5   instead of having oral argument to try to move forward,

6   especially since you're being presented with an

7   additional 15 motions today by Mr. Kowalski, we would

8   not have an objection to streamlining the process in

9   that regard.

10         THE COURT:  Okay.  I was going to say we will just

11  hear those later, after Judge Cox gets through with

12  whatever she's going to do, okay.

13         Motion to reconsider.

14     MR. WEHRMAN:  I'm sorry.  Do we respond to those

15  motions to dismiss?

16     THE COURT:  No.  Don't do anything.

17     MR. WEHRMAN:  Hold off?

18     THE COURT:  Yes.

19     MR. AVILA:  Your Honor, I would also request then

20  that you also send to Judge Cox what we're saying

21  violates the bankruptcy stay also.

22     THE COURT:  I'm not sending anything.  I am

23  sending exactly what I said to Judge Cox.  Judge Cox is

24  a bankruptcy judge.  She's been there a number of

148

1  years.  She will make her own determination.

2      MR. AVILA:  I understand; but I'm saying since

3  you're sending our motions, I believe you should send

4  their motions that I say are violative of the

5  bankruptcy stay.

6      THE COURT:  What motions are those?

7      MR. AVILA:  Well, today's hearing, for example.

8  The motion to -- without any discussion --

9      THE COURT:  Mr. Avila, --

10     MR. AVILA:  Everything related to finances is a

11 violation of the bankruptcy stay.

12     THE COURT:  It is not.  If those finances are

13 related to child issues, it is not violative of the

14 statute.

15     MR. AVILA:  But it doesn't say that in their

16 motions, nor the order.

17     THE COURT:  Mr. Avila, I explained that earlier.

18     MR. AVILA:  Yes, Your Honor.

19     THE COURT:  I only explained it one time.  Maybe

20 that's the problem, okay.  Do I need to explain it

21 twice to you?

22     MR. AVILA:  I just find it unequitable that you

23 send our motions to the bankruptcy judge and not their

24 motions.

149