IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>ROBERT M. KOWALSKI,<br><br>Debtors. | Case No. 18-09130<br>Chapter 11<br><br>Hon. Jacqueline P. Cox<br><br>Hearing Date: October 9, 2018<br>Hearing Time: 9:30 a.m. |

**FINAL ORDER (A) AUTHORIZING THE TRUSTEE ON BEHALF OF THE ESTATE TO: (I) INCUR POST-PETITION UNSECURED INDEBTEDNESS AS A PRIORITY ADMINISTRATIVE CLAIM PURSUANT TO 11 U.S.C. § 364(B); (II) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363(B) & (C)(2); (III) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. § 361(2); AND (B) SETTING FINAL HEARING**

Upon the motion ("Motion") Gus A. Paloian, not individually, but as the chapter 11 trustee (the "Trustee") for the bankruptcy estate ("Estate") of Robert M. Kowalski (the "Debtor"), pursuant to sections 105, 361(2), 363(b) & (c)(2), and 364(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, 9006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois (the "Local Rules"), that came before this Court at an initial interim hearing on October 2, 2018 and a continued interim hearing on October 9, 2018 (the "Interim Hearing") seeking this Court's authorization for the Trustee, on behalf of the Estate, to: (i) incur post-petition unsecured indebtedness of up to $95,000 ("Estate Financing") pursuant to 11 U.S.C. § 364(b) by entering into the Lender Loan And Fee Agreement ("Loan Agreement") (a copy of which is attached to the Motion as Exhibit 1) with the Federal Deposit Insurance Corporation ("FDIC" or "Lender"), as Receiver for Washington Federal Bank for Savings with such financing to be allowed as an administrative

50519669v.2

Case 18-09130 Doc 194 Filed 10/09/18 Entered 10/09/18 14:44:30 Desc Main
Document Page 2 of 13

expense pursuant to 11 U.S.C. § 503(b)(1), except that the administrative claim arising from the Estate Financing shall be subordinate to the fees and expenses of the Trustee and his professionals; (ii) use the FDIC's alleged cash collateral in the form of rents derived from the Lender Portfolio (as defined in the Motion) pursuant to 11 U.S.C. § 363(b) & (c)(2) and to grant the FDIC adequate protection pursuant to 11 U.S.C. § 361(2) in the form of replacement liens on post-petition rents received by the Estate with respect to same; (iii) shorten notice for the Interim Hearing to that already provided pursuant to Bankruptcy Rules 4001 and 9006; and (iv) set a final hearing on the Motion. Based on the representations of the counsel for the Trustee and FDIC and the representations of the Trustee made the Declaration attached to the Motion, the Debtor's failure to timely file any objection to the Motion on or before October 5, 2018, as orally ordered by the Court on October 2, 2018, good and sufficient cause appearing therefore, **THE COURT FINDS AND CONCLUDES AS FOLLOWS**:

    A.    <u>Petition</u>. On March 29, 2018 (the "<u>Petition Date</u>"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (Dkt. 1.)

    B.    <u>Appointment of Trustee and Authority to Operate Estate</u>. On August 7, 2018, the Court issued an Order Approving the Appointment of Gus A. Paloian as the Chapter 11 Trustee. (Dkt. 106.) The Trustee is authorized to operate and manage Debtor's Estate pursuant to Bankruptcy Code sections 1104, 1106, and 1108.

    C.    <u>Jurisdiction and Venue</u>. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) in which the Court may constitutionally enter a final order. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

50519669v.2

D.    Notice. Sufficient and adequate notice of the Motion and of the terms contained in this Final Order through, among other things, service of the Interim Order, has been provided based upon: (i) the notice sent to the parties as set forth in the Motion; and (ii) the FDIC's consent to the relief sought in the Motion; no other party herein has filed an objection ot the Motion pursuant to Bankruptcy Rules 2002(a)(2), 4001(b)(2), 4001(c)(2), 9006, or 9014 or Bankruptcy Code section 102(1). The Court hereby finds that no further notice of, or hearing on, this Final Order is necessary or required under the facts of this case.

E.    Employment of Real Estate Professionals. On August 29, 2018, the Trustee filed an Application to Employ Pearson Realty Group as Real Estate Broker (the "Broker Application"). (Dkt. 144.) The Order approving the Broker Application was entered on September 6, 2018. (Dkt. 153.) On September 10, 2018, the Trustee filed an Application to Employ R. Baker Thompson and Two Blue Management Company as Real Estate Property Manager (the "Manager Application"). (Dkt. No. 159.) The Order approving the Manager Application was entered on September 19, 2018. (Dkt. No. 167.)

F.    Debtor and Estate. Debtor is an individual with direct and indirect ownership interests in at least twenty-six (26) real properties in an around the City of Chicago.

G.    FDIC Secured Claims. FDIC alleges that prior to the Petition Date, Washington Federal Bank for Savings Lender made loans, advances and extensions of credit (the "Prepetition Credit Facilities") available to Debtor with respect to approximately twenty-six (26) real properties ("Lender Portfolio") as set forth in the Motion. Thereafter, the FDIC was appointed as receiver for Washington Federal Bank for Savings. On July 5, 2018, the FDIC filed proof of claim No. 20 evidencing unsecured debt in the total amount of not less than $5,248,000.00 with respect to the Lender Portfolio. On September 5, 2018, the FDIC filed proof of claim No. 22

3

evidencing secured debt in the total amount of not less than $21,937,728.93 with respect to the Lender Portfolio. FDIC alleges that repayment of the loans and extensions of credit under the Prepetition Credit Facilities are secured by, *inter alia*, valid, properly perfected, first-priority security interests and liens in and to, as of the Petition Date, *inter alia*, all rents received by the Debtor and Estate (collectively, the "Prepetition Collateral").

H. Stipulated Terms of Use of Cash Collateral. The Trustee and the FDIC have agreed and stipulated that the Trustee, on behalf of the Estate, may use the FDIC's alleged cash collateral in the form of rents derived from the Lender Portfolio in exchange for replacement liens on post-petition rents derived from the Lender Portfolio with the same to the same validity, priority, and extent as the FDIC's pre-Petition liens, all subject to the conditions set forth in this Final Order assuring that any replacement liens and other protections granted pursuant to this Final Order will not be affected by any subsequent reversal or modification of this Final Order or any other order, as provided in Bankruptcy Code section 363(m), which is applicable to the cash collateral arrangement contemplated by this Final Order. The Trustee and the FDIC further agree and stipulate that the following fees, costs, and expenses shall be paid from the sale of collateral from the Lender Portfolio prior to any payments being made to the FDIC on account of its secured debt: (i) a fee payable to the Estate in the amount of $7,500 for the sale of each parcel of real property from Lender Portfolio; (ii) a brokerage fee payable to Broker and any cooperating broker in the amount of 6% of the gross sale price of each parcel of real property; and (iii) such other fees and expenses associated with the sale or disposition of real property from Lender Portfolio as contemplated by the sales contracts (collectively, the "Carve-Out").

I. Stipulated Terms of Estate Financing. The FDIC has indicated a willingness to enter into the financing arrangements contemplated by this Final Order and the Motion, all

4

50519669v.2

subject to the conditions set forth herein and the provisions of the Loan Agreement and this Final Order assuring that the administrative priority claims and other protections granted pursuant to this Final Order will not be affected by any subsequent reversal or modification of this Final Order or any other order, as provided in Bankruptcy Code section 364(e), which is applicable to the post-petition financing arrangement contemplated by this Final Order. Subject to certain conditions set forth in the Loan Agreement, the FDIC has committed to provide loans to the Estate in an aggregate principal amount of up to ninety-five thousand dollars ($95,000.00) on an unsecured basis in exchange for an allowed administrative expense pursuant to 11 U.S.C. § 503(b)(1), except that the administrative claim arising from the Estate Financing shall be subordinate to the fees and expenses of the Trustee and his professionals. The Estate Financing advances shall be made available to the Trustee, for the benefit of the Estate, after the use of rent collections from the properties owned by the Debtor (less $30,000 for reserves) and fund in the Estate's bank account (less $5,000 for reserves).

J.  Findings Regarding Need for Post-Petition Financing and Use of Cash Collateral.

(i).  *Need for Post-Petition Financing and Use of Cash Collateral.* Using only the Estate's unencumbered cash, Trustee represents that he cannot adequately manage the Estate and the Lender Portfolio. Thus, without use of cash collateral and the Estate Financing, Trustee will be unable to efficiently and effectively preserve the Estate's assets, liquidate the nonessential assets, and meet its other direct operating expenses associated with the preservation of its assets. Since the Trustee's appointment in this case, the Trustee asserts that the Debtor has: (i) admitted to collecting rents post-trustee appointment, failed to identify the rents collected and failed to turn over the collected rents; and (ii) denied the Trustee access to the Debtor's office at 1918 W. Cermak, Chicago, Illinois to examine the volume of documents related to the Debtor's

controlled assets. The Trustee further represents that without the Estate Financing, the likelihood that the Estate will be able to realize the full liquidation value of its assets for the benefit of its creditors will be significantly reduced, if not altogether eliminated. The entry of this <u>Final Order</u> will, inter alia, enhance Trustee's ability to effectively manage the Estate and the Lender Portfolio for the benefit of all creditors.

(ii). *No Credit Available on more Favorable Terms*. The Trustee represents that he has not found any alternative financing sources. Therefore, the terms of the Estate Financing, taken as a whole, are the most favorable terms available to the Estate. Indeed, the Estate Financing is only available because of FDIC's status as Debtor's prepetition secured lender.

(iii). *Business Judgment and Good Faith Pursuant to Sections 363(m) and 364(e)*. The FDIC, on the terms and conditions contained in the Loan Agreement executed by the FDIC and the Trustee, has indicated a willingness to extend credit and make other financial accommodations to the Trustee, on behalf of the Estate, to permit the Trustee to effectively manage the Estate and to, as appropriate, manage, sell, or otherwise dispose of, the Lender Portfolio. It is the intent of the Trustee and the FDIC, through the Loan Agreement, to permit the Trustee, on behalf of the Estate, to use the cash collateral in the form of rents derived from the Lender Portfolio in a similar fashion to the manner in which the Debtor was permitted to use such rents prior to the Petition Date and, by doing so, to provide the Trustee with an uninterrupted flow of funds to manage the Lender Portfolio. Given the current obstacles the Trustee faces with collection of rents and the Estate's lack of unencumbered funds, it is the intention of the Trustee and the FDIC to make the Estate Financing available to ensure the uninterrupted flow of funds to Manage the Estate. The Trustee represents that the terms of the

50519669v.2

Loan Agreement, Estate Financing, the use of cash collateral, and adequate protection have been negotiated in good faith, as that term is used in Bankruptcy Code sections 363(m) and 364(e) and are in the best interests of the Estate and its creditors. The Trustee further represents that the FDIC is permitting the use of its alleged cash collateral and is extending credit to the Estate in good faith and that the FDIC is entitled to the benefits of the provisions of Bankruptcy Code sections 363(m) and 364(e).

(iv).    *Good Cause, Immediate Entry.*  Good cause has been shown for the entry of this Final Order. The Court's entry of the Final Order is in the best interests of the Estate and its creditors and is necessary for the efficient and effective preservation and ultimate liquidation of the Estate's assets and to prevent immediate and irreparable harm, pending a final hearing on this motion under Bankruptcy Rule 4001(b)(2) and (c)(2). Absent entry of this Final Order to provide funding to manage the Estate, the Estate will suffer immediate and irreparable harm. The Court further noting that the 14-day period proscribed by Bankruptcy Rule 4001(b)(2) & (c)(2) has been satisfied.

**BASED UPON THE FOREGOING FINDINGS AND STIPULATIONS, IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1.  The Motion is GRANTED on an Final basis on the terms and conditions set forth below .

2.  Objections Overruled.  All objections to entry of this Final Order are resolved or overruled.

3.  Notice.  Notice of this Final Hearing is hereby shortened to that notice already provided.

7

50519669v.2

4. <u>Final Approval of Loan Agreement and Estate Financing</u>.

a. The Trustee is hereby authorized to enter into the Loan Agreement with the FDIC and to obtain the Estate Financing pursuant to the terms of this Final Order and the provisions of the Loan Agreement and perform its obligations hereunder and thereunder, solely in accordance with, and subject to, the terms of this Final Order.

b. Pursuant to Bankruptcy Code section 364(b), as security for the indebtedness constituting the Estate Financing, the FDIC is hereby granted an allowed administrative expense pursuant to 11 U.S.C. § 503(b)(1), provided, however, that such administrative claim shall be subordinate to the fees and expenses of the Trustee and his professionals.

c. The terms, conditions, and covenants of this Loan Agreement and this Final Order shall be sufficient and conclusive evidence of the borrowing and financing arrangements among the Trustee, on behalf of the Estate, and the FDIC for all purposes.

d. In making decisions to advance moneys or extend financial accommodations of any nature under this Final Order or any advances, loans, or financial accommodations of any sort under this Final Order, or in taking any other action related to or in connection with any of the foregoing, FDIC shall have no liability to any third party, and shall not be deemed to be in control of the operations of the Estate, an "employer" of any of Estate's employees, or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Estate.

e. Subject to Bankruptcy Code section 364(e), the provisions of this Final Order and any actions taken pursuant hereto shall: (i) be binding on all parties in interest, and their successors and assigns; (ii) inure to the benefit of the Trustee and the FDIC and their

8

50519669v.2

successors and assigns; and (iii) survive entry of any order which be entered converting this case to a case under Chapter 7, appointing a Chapter 7 trustee, or dismissing the case, and the terms and provisions of this Final Order as well as the priorities in payment granted pursuant to this Final Order and the Loan Agreement shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment shall maintain their priority as provided by this Final Order until all obligations under the Estate Financing are indefeasibly paid and satisfied in full; provided, however, that the FDIC shall have no obligation to extend any Estate Financing in the event that the Debtor is restored as a debtor-in-possession pursuant to Bankruptcy Code section 1107 or if the Debtor's bankruptcy case is dismissed. For avoidance of doubt, there being no default provisions in the Loan Agreement, the FDIC's obligations to provide the Estate Financing to the Trustee, on behalf of the Estate, shall remain valid and enforceable upon any conversion of this Chapter 11 case to a case under Chapter 7 to the extent that the Trustee is authorized to operate the Estate pursuant to Bankruptcy Code section 721.

5. <u>Final Approval of Use of Cash Collateral and Granting of Adequate Protection in the Form of Replacement Liens</u>.

a. Pursuant to the agreement and stipulation between the Trustee and the FDIC, the Trustee, on behalf of the Estate, is hereby authorized to use the FDIC's alleged cash collateral in the form of rents derived from the Lender Portfolio in exchange for replacement liens on post-petition rents derived from the Lender Portfolio with the same to the same validity, priority, and extent as the FDIC's pre-Petition liens on such rents. Pursuant to the terms of the Carve-Out, the Trustee is authorized to pay the following fees, costs, and expenses from the sale collateral from the Lender Portfolio prior to any payments being made to FDIC on account of its secured debt: (i) a fee payable to the Estate in the amount of $7,500 for the sale of each parcel of

9

real property from Lender Portfolio; (ii) a brokerage fee payable to Broker and any cooperating broker in the amount of 6% of the gross sale price of each parcel of real property; and (iii) such other fees and expenses associated with the sale or disposition of real property from Lender Portfolio as contemplated by the sales contracts.

    b. Trustee shall, in consultation with the FDIC, establish one or more accounts ("Cash Collateral Account") in which the Trustee shall deposit rents derived from the Lender Portfolio.

    c. Except for the Carve-Out, no costs or administrative expenses that have been or may be incurred in this Chapter 11 Case, in any conversion of this case to a case under Chapter 7, or in any other proceeding related thereto, and no priority claims are or will be prior to or on a parity with the claims of FDIC against the Estate arising out of the replacement liens or any provision of this Final Order in any of the FDIC's post-Petition collateral.

    d. Subject to Bankruptcy Code section 363(m), the provisions of this Final Order and any actions taken pursuant hereto shall: (i) be binding on all parties in interest, and their successors and assigns; (ii) inure to the benefit of the Trustee and the FDIC and their successors and assigns; and (iii) survive entry of any order converting this case to a case under Chapter 7, appointing a Chapter 7 trustee, or dismissing the case, and the terms and provisions of this Final Order as well as the adequate protection in the form of replacement liens granted pursuant to this Final Order and the Loan Agreement shall continue in this or any superseding case under the Bankruptcy Code, and such replacement liens in payment shall maintain their security interests granted pursuant to this Final Order until all obligations under the Estate Financing are indefeasibly paid and satisfied in full; provided, however, that the FDIC shall have no obligation to consent to use of cash collateral in the event that the Debtor is restored as a

10

debtor-in-possession pursuant to Bankruptcy Code section 1107 or if the Debtor's bankruptcy case is dismissed. For avoidance of doubt, there being no default provisions, the agreement and stipulation between the Trustee and the FDIC permitting the Trustee, on behalf of the Estate, to use cash collateral and granting adequate protection in the form of replacement liens shall remain valid and enforceable upon any conversion of this Chapter 11 case to a case under Chapter 7 to the extent that the Trustee is authorized to operate the Estate pursuant to Bankruptcy Code section 721.

6. <u>Good Faith</u>. The terms of the Loan Agreement and Estate Financing, grant of adequate protection, and use of cash collateral provided for in this Final Order have been negotiated in good faith, as that term is used in Bankruptcy Code sections 363(m) and 364(e).

    a. Based on the findings set forth in this Final Order and in accordance with Bankruptcy Code section 364(e), which is applicable to the Estate Financing by this Final Order, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity and enforceability of any priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the FDIC hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Final Order, and the FDIC shall be entitled to all of the rights, remedies, privileges and benefits, including the priorities granted herein, with respect to any such claim.

    b. Based on the findings set forth in this Final Order and in accordance with Bankruptcy Code section 363(m), which is applicable to the agreement and stipulation by and between the Trustee, on behalf of the Estate, and the FDIC permitting the use of alleged cash

11

collateral in the form of rents derived from the Lender Portfolio and the granting of adequate protection in the form of replacement liens on post-Petition rents derived from the Lender Portfolio pursuant to the terms of this Final Order, in the event any or all of the provisions of this Final Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity and enforceability of any replacement lien authorized or created hereby to the extent that the FDIC possesses a valid and enforceable pre-Petition lien on such rents. Notwithstanding any such modification, amendment or vacation, any claim granted to the FDIC hereunder arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Final Order, and the FDIC shall be entitled to all of the rights, remedies, privileges and benefits, including the replacement liens granted herein.

7. <u>Miscellaneous</u>.

a. The provisions of this Final Order shall be binding upon and inure to the benefit of the Trustee and the FDIC and their respective successors and assigns (including any trustee or other fiduciary hereafter appointed as a legal representative of the Estate) to the extent set forth in this Final Order.

b. The Trustee is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of additional security agreements) and to pay any costs, fees, or expenses that may be required or necessary for Trustee's performance hereunder.

c. There is no just reason to delay enforcement or appeal of this Final Order. This Court shall retain jurisdiction to hear any and all issues or disputes relating to or arising under the Motion or this Final Order.

12

50519669v.2

Dated: *October 9, 2018*

Enter: *Jacqueline P. Cox*
Honorable Jacqueline P. Cox
United States Bankruptcy Judge

**Prepared by:**

Gus A. Paloian (06188186)
James B. Sowka (6291998)
SEYFARTH SHAW LLP
233 South Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
gpaloian@seyfarth.com
jsowka@seyfarth.com

Counsel for the Chapter 11 Trustee

50519669v.2