# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>ROBERT M. KOWALSKI,<br><br>　　　　　Debtor. | Case No. 18-09130<br>Chapter 11<br><br>Hon. Jacqueline P. Cox |
| **GUS A PALOIAN**, not individually, but solely in his capacity as the duly-appointed Trustee for the estate of Robert M. Kowalski,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**JAN KOWALSKI**,<br><br>　　　　　Defendant. | Adv. Pro. No. _____ |

## COMPLAINT

Plaintiff Gus A. Paloian, not individually, but solely as Chapter 7 Trustee ("Plaintiff") for the bankruptcy estate ("Estate") of Robert M. Kowalski ("Debtor"), states as follows:

## JURISDICTION AND VENUE

1.　　This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Northern District of Illinois Local Rule 40.3.1.

2.　　This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

3.　　Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

4.　　Plaintiff is the Trustee of the Estate. (Dkt. Nos. 275; 281).

5.　　Jan Kowalski ("Defendant") is a citizen and resident of the state of Illinois, residing in Cook County, Illinois.

54708060v.5

## FACTS COMMON TO ALL COUNTS

A.  **Debtor's Relationship with Defendant**

6.  On March 29, 2018 ("Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the United States Code ("Bankruptcy Code").

7.  On November 30, 2018, Debtor's case was converted to a chapter 7 case. (Dkt. No. 275).

8.  Defendant is Debtor's sister.

9.  On November 26, 2018, Defendant filed an appearance on behalf of Debtor. (Dkt. No. 268).

B.  **Trustee Discovers the Byline Bank Cashier's Checks.**

10. On August 22, 2018, the Trustee sent a letter to Byline Bank requesting Byline Bank to turnover certain bank records relating to the Debtor.

11. On or about September 6, 2018, the Trustee obtained records from Byline Bank disclosing the existence of some of the Byline Bank Cashier's Checks (as defined below).

C.  **Deposit of Byline Bank Cashier's Checks.**

12. After August 31, 2018, Defendant caused or permitted Byline Bank cashier's checks remitted by Debtor and payable to Debtor to be deposited in Defendant's Bank of America client trust fund account ("IOLTA Account").

13. Defendant negotiated the following cashier's checks through her IOLTA Account:

| Date of Deposit of Byline Bank Cashier's Checks into IOLTA Account | Amount | Date of Byline Bank Cashier's Check* | Cashier's Check No. |
|---|---|---|---|
| 8/31/2018 | $20,000.00 | 12/22/2017 | 10227031 |
| 9/6/2018 | $10,000.00 | 1/30/2018 | 10227076 |
| 9/7/2018 | $5,000.00 | 1/29/2018 | 10227075 |
| 9/7/2018 | $10,000.00 | 1/31/2018 | 10224264 |

54708060v.5

| Date of Deposit of Byline Bank Cashier's Checks into IOLTA Account | Amount | Date of Byline Bank Cashier's Check* | Cashier's Check No. |
|---|---|---|---|
| 9/7/2018 | $10,000.00 | 1/31/2018 | 10224265 |
| 9/10/2018 | $10,000.00 | 1/31/2018 | 10227079 |
| 9/10/2018 | $10,000.00 | 1/31/2018 | 10227077 |
| 9/10/2018 | $10,000.00 | 1/31/2018 | 10227078 |
| 9/11/2018 | $10,000.00 | 2/1/2018 | 10227082 |
| 9/11/2018 | $10,000.00 | 2/1/2018 | 10227083 |
| 9/11/2018 | $10,000.00 | 2/1/2018 | 10227084 |
| 9/12/2018 | $15,000.00 | 2/28/2018 | 10227137 |
| 9/12/2018 | $10,000.00 | 2/1/12018 | 10227085 |
| 9/12/2018 | $10,000.00 | 2/1/2018 | 10227104 |
| 9/12/2018 | $11,500.00 | 2/15/2018 | 10227086 |
| 9/14/2018 | $15,000.00 | 3/13/2018 | 10227154 |
| 9/14/2018 | $10,000.00 | 2/28/2018 | 10227136 |
| 9/17/2018 | $5,000.00 | 2/28/2018 | 10227139 |
| 9/17/2018 | $7,500.00 | 2/28/2018 | 10227138 |
| 9/17/2018 | $15,000.00 | 4/18/2018 | 10227216 |
| 9/20/2018 | $7,480.00 | 3/13/2018 | 10227156 |
| 9/20/2018 | $7,500.00 | 3/13/2018 | 10227153 |
| 9/20/2018 | $7,500.00 | 3/13/2018 | 10227155 |
| 9/21/2018 | $5,000.00 | 3/26/2018 | 10227171 |
| 9/21/2018 | $5,000.00 | 3/26/2018 | 10227172 |
| 9/21/2018 | $6,500.00 | 3/19/2018 | 10227160 |
| 9/21/2018 | $7,000.00 | 2/28/2018 | 10227135 |
| 9/27/2018 | $4,500.00 | 4/24/2018 | 10227224 |
| 9/27/2018 | $4,500.00 | 4/24/2018 | 10227223 |
| 9/27/2018 | $3,700.00 | 3/28/2018 | 10227181 |
| 9/27/2018 | $5,902.00 | 6/12/2018 | 10227289 |
| 9/28/2018 | $64,084.35 | 8/13/2018 | 10227384 |
| 10/5/2018 | $2,000.00 | 9/14/2017 | 10226873 |
| 10/5/2018 | $2,000.00 | 9/14/2017 | 10226874 |
| 10/5/2018 | $2,500.00 | 8/31/2017 | 10226853 |
| 10/25/2018 | $3,000.00 | 8/13/2018 | 10227385 |
| **Total** | **$352,166.35** | | **36** |

14. All Byline Bank cashier's checks identified above (collectively, "Byline Bank Cashier's Checks") indicated that the remitterer was "Robert Kowalski."

15. All Byline Bank Cashier's Checks indicated that they were payable to "Robert Kowalski."

3

16. All Byline Bank Cashier's Checks were negotiated through Defendant's IOLTA Account after the Petition Date.

17. All Byline Bank Cashier's Checks were accessible to the Debtor until the date deposited into the Defendant's IOLTA Account.

**D.   Issuance of Cashier's Checks from the IOLTA Account to the Debtor.**

18. Defendant is the sole signatory on the IOLTA Account.

19. Defendant is only individual authorized to make withdrawals from the IOLTA Account.

20. Defendant purchased cashier's checks that were payable to "Robert Kowalski" from her IOLTA Account as follows:

| Cashier's Checks / Withdrawals from Jan IOLTA Account ||||
| Purchase Date | Amount* | Cashier's Check No. | Date of Negotiation |
| --- | --- | --- | --- |
| 9/5/2018 | $10,000.00 | 1589302605 | 10/12/2018 |
| 9/10/2018 | $25,000.00 | 1508410150 | 11/9/2018 |
| 9/11/2018 | $30,000.00 | 1508803744 | 11/13/2018 |
| 9/12/2018 | $30,000.00 | 1630110971 | 11/14/2018 |
| 9/13/2018 | $25,000.00 | 1642010755 | 11/15/2018 |
| 9/14/2018 | $21,500.00 | 1593316913 | 11/23/2018 |
| 9/17/2018 | $25,000.00 | 1644621108 | 11/17/2018 |
| 9/19/2018 | $5,000.00 | 1589302625 | 10/12/2018 |
| 9/21/2018 | $25,000.00 | 1580410241 | 11/21/2018 |
| 9/25/2018 | $23,000.00 | 1580410255 | 11/29/2018 |
| 9/28/2018 | $18,603.00 | 1580410285 | 11/29/2018 |
| 10/1/2018 | $64,084.35 | 1589302641 | 10/12/2018 |
| 10/11/2018 | $5,100.00 | 1580410376 | 10/29/2018 |
| 10/15/2018 | $3,391.00 | 1580410399 | 10/25/2018 |
| 10/29/2018 | $3,740.00 | 1580410454 | 11/29/2018 |
| Total | $314,417.95 | | |

21. All IOLTA Account cashier's checks identified above (collectively, "IOLTA Cashier's Checks") were payable to Robert Kowalski individually.

22. The IOLTA Cashier's Checks were delivered to the Debtor during the bankruptcy case.

4

23.     The purchase and delivery of the IOLTA Cashier's Checks to the Debtor was never disclosed to the Court or the Trustee by the Debtor or the Defendant.

E. **Trustee Discovers the Deposit of the Byline Bank Cashier's Checks Into the IOLTA Account.**

24.     On November 8, 2018, the Trustee filed a motion to conduct a Rule 2004 examination of Bank of America requesting copies of account statements where of one or more Byline Bank Cashier's Checks were negotiated.

25.     On December 13, 2018, Bank of America produced documents reflecting that Byline Bank Cashier's Checks were negotiated at the IOLTA Account.

F. **Defendant Deposits the IOLTA Cashier's Checks Back Into the IOLTA Account.**

26.     From October 12, 2018 to November 29, 2018, Defendant caused or permitted to be deposited IOLTA Cashier's Checks back into her IOLTA Account on the respective date-of-negotiation listed in paragraph 20.

G. **Cash Withdrawals from the IOLTA Account.**

27.     Between November 13, 2018 and November 30, 2018, Defendant made eighteen cash withdrawals totaling $201,500 (not cash equivalents) from the IOLTA Account. A redacted copy of the November 2018 IOLTA Account statement from Bank of America is attached here as **Exhibit 1**.

28.     Defendant withdrew cash from the IOLTA Account from eight different Bank of America branches between November 13, 2018 and November 30, 2018.

29.     Defendant withdrew cash from the IOLTA Account from multiple Bank of America branch locations on the same day on six different occasions between November 13, 2018 and November 30, 2018.

30.     These cash withdrawals were outside the Defendant's ordinary course of business.

31. A summary of the IOLTA Account activity from the Petition Date is as follows:

| | Jan Kowalski Bank of America IOLTA Account Summary of Activity | | | |
|---|---|---|---|---|
| | Beginning Balance | Deposits and Credits | Withdrawals and Debits | Ending Balance |
| Mar-18 | $ - | $ - | $ - | $ - |
| Apr-18 | $ - | $ - | $ - | $ - |
| May-18 | $ - | $ 26,175.00 | $ 15,000.00 | $11,175.00 |
| Jun-18 | $11,175.00 | $ - | $ 5,000.00 | $ 6,175.00 |
| Jul-18 | $ 6,175.00 | $ 4,500.00 | $ 6,175.00 | $ 4,500.00 |
| Aug-18 | $ 4,500.00 | $ 22,500.00 | $ 7,000.00 | $20,000.00 |
| Sep-18 | $20,000.00 | $329,892.92 | $285,052.57 | $64,840.35 |
| Oct-18 | $64,840.35 | $ 89,934.35 | $154,774.70 | $ - |
| Nov-18 | $ - | $226,842.57 | $201,500.00 | $25,342.57 |

32. All cash withdrawn by the Defendant from the IOLTA Account in November 2018 is traceable to the Byline Bank Cashier's Checks and to the IOLTA Cashier's Checks.

## H. Debtor's Incarceration and the Pause in Defendant's IOLTA Account Banking Activity.

33. Debtor was incarcerated by the Bankruptcy Court from November 1, 2018 to November 8, 2018.

34. From November 1, 2018 to November 8, 2018, there were no deposits of Byline Bank Cashier's Checks into Defendant's IOLTA Account.

35. From November 1, 2018 to November 8, 2018, there were no IOLTA Cashier's Checks issued from Defendant's IOLTA Account.

36. From November 1, 2018 to November 8, 2018, there were no deposits of IOLTA Cashier's Checks back into the IOLTA Account.

37. From November 1, 2018 to November 8, 2018, there were no cash withdrawals from the Defendant's IOLTA Account.

38. From November 1, 2018 to November 8, 2018, there were no withdrawals from the Defendant's IOLTA Account.

## I. Lease of 1918 W. Cermak Ave., Chicago, IL

39. On January 9, 2019, Trustee filed a *Motion for Turnover of Real Property* (Dkt. No. 338) with respect to real property commonly known as 1918 W. Cermak Ave., Chicago, IL ("Premises").

40. The Debtor listed the Premises in his Schedule A/B. (Dkt. No. 52).

41. The Debtor did not list any lease with respect to the Premises in his Schedule G. (Dkt. No. 1).

42. On September 6, 2018, the Trustee had sent an email to the Debtor requesting that any and all leases be turned over to the Trustee.

43. The Debtor failed to turnover any lease in connection with the Premises.

44. On October 17, 2018, the Trustee sent an email to Debtor's counsel requesting that all records relating to real property be turned over the to the Trustee.

45. The Debtor failed to turnover any lease in connection with the Premises.

46. On November 1, 2018, the Court held the Debtor in contempt of court for failure to produce documents. (Dkt. No. 225).

47. The Debtor produced several boxes of documents in order to purge his civil contempt from November 1, 2018 through November 8, 2018.

48. A lease with respect to the Premises was not included in those documents.

49. Defendant has not paid rent to the Trustee for the use and occupancy of the Premises since the Petition Date.

50. On January 16, 2019, Defendant appeared in Court at the hearing on the *Motion for Turnover of Real Property* and asserted a leasehold interest in the Premises.

51. On January 16, 2019, the Court ordered Defendant to produce a written copy of the lease with respect to the Premises by January 18, 2019.

54708060v.5

52. On January 18, 2019, Defendant appeared in Court with an alleged lease ("Document").

53. A true written lease for the Premises does not exist.

54. The Document is a fabrication created in response to the *Motion for Turnover of Real Property*.

55. Any leasehold interest held by Defendant in the Premises has been automatically rejected by operation of law under the Bankruptcy Code.

56. Defendant has no right to use and occupancy of the Premises.

## COUNT I

## DECLARATORY JUDGMENT - CASHIER'S CHECKS AND CASH

57. Plaintiff restates and re-alleges paragraphs 1 through 56 of this Complaint as though fully set forth herein.

58. The Byline Bank Cashier's Checks are property of the Estate pursuant to 11 U.S.C. § 541.

59. Defendant had the Byline Bank Cashier's Checks in her possession during the pendency of the case but failed to turn them over to the Trustee.

60. Instead, the Defendant negotiated the Byline Bank cashier's checks in her IOLTA Account.

61. Defendant purposely negotiated the Byline Bank cashier's checks in her IOLTA Account to cloak the transaction in a veil of attorney-client privilege.

62. The Debtor and the Estate retained legal and/or equitable interests in the Byline Bank Cashier's Checks.

63. All proceeds from the Byline Bank Cashier's Checks negotiated into the IOLTA Account constituted property of the Estate.

8

64. The IOLTA Cashier's Checks purchased by Defendant from her IOLTA Account and made payable to the Debtor constituted property of the Estate.

65. The IOLTA Cashier's Checks are traceable to the funds derived from the Byline Bank Cashier's Checks

66. Defendant delivered the IOLTA Cashier's Checks to the Debtor during the pendency of this case.

67. The IOLTA Account cashier's checks comprised property of the Estate under Bankruptcy Code sections 541 and 1115.

68. All cash withdrawals in November amounting to $201,500 are traceable to the funds derived from the IOLTA Cashier's Checks.

69. All cash withdrawals in November amounting to $201,500 are traceable to the funds derived from the Byline Bank Cashier's Checks.

WHEREFORE, Plaintiff respectfully requests that the Court enter declaratory judgment that all funds derived from the negotiation of the Byline Bank cashier's checks identified above, for the total amount of $352,166.30, and from the IOLTA Account cashier's checks for a total amount of $314,417.95, and specifically including the November cash withdrawals in the amount of $201,500.00, constitute property of the Estate under Bankruptcy Code sections 541 and 1115.

## COUNT II

## DECLARATORY JUDGMENT -PREMISES AND LEASE

70. Plaintiff restates and re-alleges paragraphs 1 through 69 of this Complaint as though fully set forth herein.

71. Any and all leases have been automatically rejected by operation of law under § 365(d) of the Bankruptcy Code.

9

54708060v.5

72. Defendant has failed to pay rent to the Trustee during the duration of the case.

73. Defendant continues to occupy the Premises despite having no interest in the Premises.

74. The document produced by the Defendant is a fabrication produced in connection with the Trustee's Motion for a Turnover.

WHEREFORE, Plaintiff respectfully requests that the Court enter declaratory judgment that Defendant has no legally cognizant interest in the Premises and declaring the Document to be a fabrication and not a true and authentic lease for the Premises.

## COUNT III

## TURNOVER OF FUNDS

75. Plaintiff restates and re-alleges paragraphs 1 through 74 of this Complaint as though fully set forth herein.

76. Defendant had the Byline Bank Cashier's Checks in her custody, control and possession during the pendency of this case.

77. The Byline Bank Cashier's Checks were not property that the Debtor could have exempted under Section 522 of the Bankruptcy Code.

78. The Byline Bank Cashier's Checks were of consequential value or benefit to the Estate.

79. The Defendant had actual notice of the bankruptcy case.

80. The Defendant did not act in good faith in negotiating the Byline Bank Cashier's Checks at her IOLTA Account.

81. Defendant had the IOLTA Cashier's Checks in her custody, control and possession during the pendency of this case.

82. The IOLTA Cashier's Checks were not property that the Debtor could have exempted under Section 522 of the Bankruptcy Code.

83. The IOLTA Cashier's Checks were of consequential value or benefit to the Estate.

84. The Defendant did not act in good faith in negotiating the IOLTA Cashier's Checks at her IOLTA Account.

85. Defendant had the November 2018 cash-withdrawals in her custody, control and possession during the pendency of this case.

86. The November 2018 cash-withdrawals were not property that the Debtor could have exempted under Section 522 of the Bankruptcy Code.

87. The November 2018 cash-withdrawals were of consequential value or benefit to the Estate.

88. The Defendant did not act in good faith in withdrawing and disposing the $201,500 in funds from her IOLTA Account in November 2018.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order (i) directing the Defendant to turnover any and all cash withdrawn from her IOLTA Account from November 2018 onwards, (ii) directing the Defendant to turn over the value of the Byline Bank cashier's checks in her custody, control or possession ($352,166.35) during the pendency of this case and thereby transferred with knowledge of the bankruptcy case and without good faith, (iii) directing the Defendant to turn over the value of the IOLTA Account cashier's checks in her custody, control or possession ($314,417.95) during the pendency of this case and thereby transferred with knowledge of the bankruptcy case and without good faith and enter judgment in favor of the Trustee and against the Defendant in the amount of $666,584.30.

54708060v.5

## COUNT IV

## TURNOVER OF PREMISES

89. Plaintiff restates and re-alleges paragraphs 1 through 88 of this Complaint as though fully set forth herein.

90. Defendant fabricated the document purporting to be a lease for the Premises.

91. Defendant did not have a written lease for the Premises.

92. Defendant has never paid rent to the Trustee for the Premises.

93. All leases have been automatically rejected under Section 365(d).

94. Defendant has custody, control or possession of the Premises.

95. The Premises are not property that the Debtor could have exempted under Section 522 of the Bankruptcy Code.

96. The Premises are an asset of the Estate.

97. The Premises are of consequential value or benefit to the Estate.

98. The Defendant has refused the Trustee's demand to turnover the Premises.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order directing the Defendant to turn over the Premises to the Trustee. .

## COUNT V

## CONTEMPT OF COURT FOR VIOLATION OF THE AUTOMATIC STAY

99. Plaintiff restates and re-alleges paragraphs 1 through 98 of this Complaint as though fully set forth herein.

100. The Defendant's continued exercise and control and dominion over the Premises is in violation of the automatic stay under Bankruptcy Code section 362(a).

101. The Defendant's continued exercise and control and dominion over the November cash-withdrawals is in violation of the automatic stay under Bankruptcy Code section 362(a).

102. The Defendant's exercise, control and disposition of the Byline Bank Cashier's Checks constituted a violation of the automatic stay under Bankruptcy Code section 362(a).

103. The Defendant's exercise, control and disposition of the IOLTA Cashier's Checks constituted a violation of the automatic stay under Bankruptcy Code section 362(a).

104. The Defendant is the Debtor's attorney and has no good cause for violating the automatic stay.

WHEREFORE, Plaintiff requests that the Court enter an Order finding the Defendant in contempt of court and assess all costs and expenses incurred by the Trustee to recover property of the Estate against the Defendant for her past and ongoing actions in clear violation of the automatic stay under Bankruptcy Code section 362(a).

Dated: February 4, 2019

Respectfully submitted,

GUS A. PALOIAN, not individually, but solely in his capacity as the Chapter 7 Trustee of the Debtor's Estate,

By: /s/ Devvrat Sinha

Gus A. Paloian (06188186)
James B. Sowka (6291998)
Devvrat Sinha (6314007)
SEYFARTH SHAW LLP
233 South Wacker Drive
Suite 8000
Chicago, Illinois  60606
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000
gpaloian@seyfarth.com
jsowka@seyfarth.com
dsinha@seyfarth.com

*Counsel to Chapter 7 Trustee, Gus A. Paloian*

54708060v.5