IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


Robert M. Kowalski,                ) No. 18 B 09130
                                   ) Chicago, Illinois
                                   ) 10:30 a.m.
                                   )  1:30 p.m.
                    Debtor.        ) November 8, 2018


TRANSCRIPT OF PROCEEDINGS BEFORE THE
HONORABLE JACQUELINE P. COX


APPEARANCES:

Trustee:                    Mr. Gus Paloian;

For the Trustee:            Mr. James Sowka;
                            Mr. Devvrat Sinha;

For the Debtor:             Mr. Ernesto Borges;

For Martha Padilla:         Ms. Karen Porter;

For the FDIC as Receiver:   Mr. Eric Rein;

For the U.S. Trustee:       Mr. Ha Nguyen;


Court Reporter:             Amy Doolin, CSR, RPR
                            U.S. Courthouse
                            219 South Dearborn
                            Room 661
                            Chicago, IL  60604.

# **I N D E X**

| Witness: | DX | CX | REDX | RECX |
|----------|----|----|------|------|
| Robert Kowalski | 27 | | | |

3

1             THE CLERK:  Robert Kowalski.

2             THE COURT:  From left to right,

3    please.

4             MS. PORTER:  Karen Porter on behalf of

5    Martha Padilla.

6             MR. REIN:  Rick Rein on behalf of the

7    FDIC as receiver.

8             MR. BORGES:  Ernesto Borges on behalf

9    of the debtor.

10            MR. SOWKA:  Good morning, Your Honor.

11   James Sowka, counsel for Chapter 11 trustee Gus

12   Paloian.

13            MR. PALOIAN:  Your Honor, Gus Paloian,

14   case trustee.

15            THE COURT:  And the debtor is here

16   also.

17            MR. BORGES:  Yes, he is, Judge.

18            THE COURT:  I have to thank you all

19   for cooperating with changing Friday's date.  It was

20   just circumstances that I just could not get around.

21            Let's proceed.

22            MR. SOWKA:  Judge, we're here on two

23   matters, the status on the contempt order and the

24   motion to convert.

25            With respect to the motion to convert,

1   I believe that the debtor intended to call some

2   witnesses in this case.  So I just --

3                   THE COURT:  Today, some more

4   witnesses?

5                   MR. SOWKA:  Today.  I'd like

6   instructions from the court on how you'd like to

7   proceed, in what order, and then hear from the debtor

8   on how many witnesses they intend to call.

9                   THE COURT:  Mr. Borges.

10                   MR. BORGES:  Yes, Your Honor.  With

11  short notice, some of the witnesses are not available

12  today.

13                   Additionally, Judge, I'd like to just

14  continue with the motion to convert without the

15  witnesses.  I have some, as Your Honor does -- my

16  wife has been incarcerated -- my wife has been

17  hospitalized for the last month --

18                   THE COURT:  I'm sorry to hear that.

19                   MR. BORGES:  -- she was taken to the

20  hospital this morning, to the University of Chicago.

21  I, obviously, can't be there.  I can't be at two

22  places at the same time.  I would like to -- Your

23  Honor to consider the motion on -- allow Mr.

24  Kowalski's civil contempt matter.

25                   To me it makes more sense to try to

5

1  deal with that matter so that I can have an

2  opportunity to represent him adequately.  I have

3  visited him in the hospital -- in the hospital -- I

4  have visited him at MCC.  It is very difficult to

5  have a conversation over there.  You are limited as

6  to what you can bring in there.  There are cameras on

7  you.  They're listening to conversations.  I was

8  ready to leave, and they knew exactly what time I was

9  ready to walk out.

10              I would ask that Your Honor allow us

11 to proceed with -- the reasons why, Mr. Kowalski has

12 substantially complied.  We delivered -- we have only

13 this additional five boxes here.  We delivered

14 30-some boxes to his office since he was held in

15 contempt.  We've delivered -- he's testified to other

16 matters since then.

17              He's substantially complied to the

18 best of his ability while he's incarcerated.  And I'd

19 like the opportunity to be able to meet with him.  I

20 don't know what's in these boxes.  I don't know if

21 there's something going on and I'm the only one in

22 the courtroom that doesn't know what's happening.  I

23 have not seen the contents of these boxes.  I've not

24 really had an opportunity --

25              THE COURT:  I'm not clear.  What are

1   you asking me to do?

2                  MR. BORGES:  I'm asking you to allow

3   -- to grant our motion to release him so that I might

4   be able to meet with him, Judge, and have -- to deal

5   with an adequate defense for him and to respond

6   properly to all the things that this court is asking

7   for.  Monday is a holiday.  I don't have any other

8   court matters.  I have matters in state court,

9   chancery court, law division, divorces.  We're down

10  two attorneys.  It's just physically impossible.  I

11  have a wife who needs two or three hours of attention

12  every night.  I need a little time, Judge, to be able

13  to talk to my client and not just in lock-up.

14                  THE COURT:  All right.  These boxes

15  that are sitting over here, how long have they been

16  there?

17                  MR. BORGES:  Since the --

18                  THE COURT:  Have they been given to

19  Mr. Rein or anybody?

20                  MR. BORGES:  We've tried to, Judge.

21  Even when we were here last, Your Honor had left the

22  bench, and I spoke to your clerk to ask if -- to go

23  and ask you if we could remove the boxes.  The

24  sheriff would not let me remove the boxes on Friday

25  of last week.

1              He said that he called you, and that

2     you said to have everything -- keep everything in the

3     courtroom, including my brief case.  So, everything

4     was left here over the weekend.  These are the only

5     boxes remaining.  I have an affidavit of compliance

6     with him that we will file in the next five minutes.

7              THE COURT:  By the time I heard that

8     something was going on with the boxes, they were out

9     of the courtroom.

10             MR. BORGES:  What happened --

11             THE COURT:  And I never told anybody

12    to leave anything in the courtroom because by the

13    time I heard that something had happened, what, I

14    don't know --

15             MR. BORGES:  They were taken --

16             THE COURT:  -- they were somewhere

17    else.

18             Now, I just want to know, Mr. Rein,

19    are you aware of these boxes?  They're trying to give

20    them to you or what?

21             MR. REIN:  Well, we've been aware of

22    these boxes since October 30th when we started the

23    motion for contempt.

24             THE COURT:  Were they taken to you the

25    other day?  I'm not clear.

8

1          MR. REIN:  Never have been delivered

2     to me.

3          MR. BORGES:  Judge, we've asked --

4          MR. REIN:  That's one thing.  The

5     second --

6          THE COURT:  Will you take possession

7     of them now?

8          MR. REIN:  No, I need them delivered

9     to me.  I have no way of -- they need to deliver the

10    boxes to me --

11         MR. BORGES:  We tried to deliver --

12         MR. REIN:  -- just like they delivered

13    the other 36 to me.

14         MR. BORGES:  I tried to deliver the --

15         THE COURT:  You don't have someone who

16    could come and retrieve these items and take them to

17    your office?

18         MR. REIN:  I don't think I'm compelled

19    to do that.  I think they should retrieve the items

20    and deliver them to my office.

21         THE COURT:  All right.  Mr. Borges.

22         MR. BORGES:  Your Honor, we have tried

23    to get boxes when we were in court last.

24         THE COURT:  Mr. Rein, the boxes are

25    now in your possession.  Please make arrangements to

1 | take them to your office.

2 | Anything further, Mr. Borges?

3 | MR. BORGES:  Yes, Your Honor.  You

4 | know, this is -- this Monday is a holiday.  It would

5 | be a great time for me to be able to meet with my

6 | client and take care of these -- at least be able --

7 | THE COURT:  But do you have witnesses

8 | today?  I'm not clear.

9 | MR. BORGES:  I do not.  Have some

10 | witnesses, one which refused to appear.  We had some

11 | that we had asked to come on Friday that, you know,

12 | now say they have a conflict for today.  And I just

13 | think that it's difficult for us to proceed at this

14 | time with that because of the short notice and

15 | inability to provide some of the witnesses that we

16 | had planned on having on Friday.

17 | THE COURT:  Any response?

18 | MR. REIN:  To which, the motion -- the

19 | contempt or the -- I'll respond to --

20 | THE COURT:  To both.

21 | MR. REIN:  I'll respond to the

22 | contempt.

23 | So, I don't have all the boxes.

24 | Nothing has really changed since Monday when I was

25 | here, because as I explained to the court, I was out

1  of town Tuesday and Wednesday.

2          THE COURT:  I understand that.  I

3  remember vaguely, yes.

4          MR. REIN:  I have not reviewed any of

5  the boxes.  I do know based upon the two boxes that

6  were produced to me on October 22nd, on the first

7  day, that there were no electronic communications

8  produced, at least in those two boxes.  And as far as

9  I know, there's been no electronic communications

10  produced.  And we do know that he has a computer

11  because he listed it as an asset of the estate.

12          So there must be communications

13  because I have seen some communications from -- from

14  the bank's standpoint between the two parties.  So

15  there must be communications on his system, whether

16  it's in the cloud or in the system itself, that he

17  can produce.  It hasn't been produced yet.

18          So, this certification of completeness

19  I question completely.  And the contempt was not

20  just -- it wasn't a motion to compel production of

21  documents.  It was you were supposed to produce

22  documents and appear for your examination.

23          As we discussed way back October 30th,

24  the documents need to be reviewed so that the

25  examination can be better developed, more focused,

1  and can be completed.  So we need to look at the

2  documents before we take the exam so we can cover all

3  of the topics.

4              And the contempt order was also he had

5  to appear for his examination.  So, both aspects

6  haven't been complied with yet, production of all the

7  records, all the documents, and his 2004 exam, which

8  is going to take a number of days.

9              THE COURT:  Mr. Sowka, any suggestion,

10  response?

11             MR. SOWKA:  Well, Your Honor, it does

12  appear there's been no production of electronic

13  communications, including email.  You may recall that

14  he -- the debtor did provide the court with an email

15  address.  And the court entered an order when he was

16  still pro se indicating that he would accept service

17  through the email address.  So he does use it, he has

18  access to it, and the debtor has not produced any

19  email communications.

20             Moreover, Exhibits 20 through 23 taken

21  into evidence by the court are email communications

22  between the debtor and the trustee.  So we know that

23  there are email communications out there that he has

24  not produced as of standing here --

25             THE COURT:  So you want his computer

1  so you can conduct a forensic examination of it or

2  what?  I'm not clear.

3              MR. SOWKA:  He needs to make

4  disclosures regarding his email.  If he wants to make

5  the computer available, we're happy to image it and

6  provide it back.  If they want to provide an image of

7  it for examination, we think that's appropriate.  But

8  we know as of right now he's not in compliance with

9  the contempt order because there are no productions

10  of any electronic communications.

11              THE COURT:  Which were appropriately

12  requested before.

13              And you are, sir?

14              MR. SPIVAK:  Your Honor, my name is

15  Aaron Spivak.  I'm an attorney representing Ziggy

16  Sizik (sic).  He was subpoenaed to be here last

17  Friday -- or on Monday.  He received a subpoena on

18  Friday --

19              THE COURT:  Is that person available

20  to testify today?

21              MR. SPIVAK:  Not today, Your Honor.

22  He's not available.  He'll be available next week if

23  you have the right -- a date for him.  He's out of

24  town right now.

25              THE COURT:  And who subpoenaed this

1  person?

2                    MR. BORGES:  I did.

3                    THE COURT:  All right.  I'm sorry,

4  sir.  I didn't mean to cut you off.

5                    MR. SPIVAK:  No.  That's fine.  I just

6  wanted to note that I was here and for what purpose.

7                    THE COURT:  All right.  Go ahead,

8  Mr. Trustee.

9                    MR. PALOIAN:  Yes.  Your Honor, before

10  we switch away from electronic communications, Mr.

11  Kowalski's email address he gave the court is an

12  iCloud email address, which means he has an Apple

13  phone, which he also uses to communicate.  So it's

14  not just the Acer computer that's been listed, but he

15  has a cell phone that he uses to communicate.  That

16  will have relevant communications also.

17                    So when electronic communications

18  finally get produced, we need them from every

19  available device.  We now know of two devices.

20                    THE COURT:  Mr. Borges.

21                    MR. BORGES:  Yes.

22                    THE COURT:  What do you suggest about

23  this -- what is your suggestion about complying with

24  disclosing electronic information?

25                    MR. BORGES:  We have absolutely no

14

1   problem whatsoever.

2               THE COURT:  Well, what's going to be

3   done --

4               MR. BORGES:  The suggestion is --

5               THE COURT:  What's --

6               MR. BORGES:  -- allow him to get to

7   his computer, download it to a flash drive or

8   whatever.  There are certain documents -- I don't

9   want to just give them an image of his computer with

10  everything on it.  Certainly everything relevant to

11  the subpoena will be placed on a large gigabyte flash

12  drive and provided to them.  We've already discussed

13  that.  But he has get to his computer in order to

14  comply with this, Judge.  He can't do it from a cell

15  being handcuffed and shackled.  We are just trying to

16  get to the solution of the problem, Judge.

17              THE COURT:  Weren't the boxes produced

18  while he was in custody?

19              MR. REIN:  Yes.

20              MR. SOWKA:  Yes, Your Honor.

21              MR. REIN:  By Jan Kowalski, who I

22  presume has the ability to get to the computer,

23  because they office together.

24              THE COURT:  What about the phone,

25  Mr. Borges?

15

1           MR. BORGES:  The phone, we can do that

2    also.

3           THE COURT:  Where is the computer and

4    where is the phone?

5           MR. BORGES:  At his office.  His

6    phone --

7           THE COURT:  And the phone?

8           MR. BORGES:  His phone he -- it was

9    taken from him when he was in here.  He give it to

10   his sister, Ms. Kowalski.  But I don't know that she

11   has -- they're not partners.  They have two separate

12   practices.  To assume that she has the ability to

13   go in and knows his passwords and codes and

14   everything --

15           THE COURT:  Last week she wanted to

16   file an appearance.

17           MR. BORGES:  Well, she's taken the

18   course, Judge.  She's not -- she wasn't able to

19   finish the course in order to file the appearance

20   electronically.  And she is doing that.  But she --

21   you know, he's got -- people have computers and

22   passwords.  To assume because he's -- she's his

23   sister she has knowledge of everything that he --

24   Judge, is just impractical.

25           MR. SOWKA:  Your Honor --

 1            THE COURT:  So we have no witnesses

 2    today, and we cannot go to final argument on the

 3    motion to convert?

 4            MR. BORGES:  Judge --

 5            THE COURT:  Because you have witnesses

 6    on that, is that --

 7            MR. BORGES:  I have witnesses.  We

 8    cannot go forward with that, Judge.  I think the only

 9    thing to do is release him, allow us to produce

10    everything, and let's get to the bottom of this.  Him

11    being locked up is not helping.  All it's doing is

12    running up the costs here.

13            And, Judge, you know, I'm willing to

14    take a holiday that I don't have -- because I have

15    other matters.  I mean, Monday is a day that I have

16    free to meet with my client.  You know, I mean,

17    I'm -- it's better --

18            THE COURT:  When do you all suggest we

19    complete the hearing on the motion to convert?

20            MR. PALOIAN:  Your Honor, can I --

21            THE COURT:  Go ahead.  I'm sorry, sir.

22            MR. PALOIAN:  Before answering that

23    direct question, Your Honor, two points.  Mr. Borges

24    suggests that there's -- that there's not a close

25    relationship between Mr. Kowalski and Jan Kowalski.

17

1   That's simply not true.  They office in the same

2   space.  Jan Kowalski has notarized documents for

3   transfers of properties when Mr. Kowalski has been

4   involved.

5             Not only that, but Mr. Borges received

6   his retainer in this case from Ms. Kowalski's trust

7   fund account.  And we've been trying to figure out

8   the source of those funds, but we are now met with

9   the assertion of attorney-client privilege as to the

10  source of those funds.  There is a very close

11  relationship between the two.  Mr. Kowalski could

12  easily --

13            THE COURT:  And your suggestion is

14  that she can turn over those -- the computer --

15            MR. PALOIAN:  Easily, especially with

16  his cooperation.  All he has to do is give her the

17  password and she can do it, just the same way the

18  other four-ish boxes of documents were produced, this

19  could be done that easily.  It's either a choice of

20  cooperating or dragging this --

21            THE COURT:  Mr. Borges, once the

22  trustee has the phone and computer, I will look at

23  your request to release.  I am not saying I will

24  release him, but I'm not going to even consider it

25  before.  Nothing has happened.  The electric

18

1   information access issue was brought up last time.

2   There's been no effort to comply with it.

3               I'll pass the matter.  You can talk to

4   your client and/or Ms. Kowalski and we'll figure it

5   out.  But I'm not going to -- I'm not going to do

6   anything until I see that.

7               The matter is passed for 15 minutes.

8               MR. PALOIAN:  Thank you, Judge.

9               MR. SOWKA:  Thank you, Your Honor.

10              (Matter passed.)

11              THE CLERK:  Court is reconvened.

12   Please be seated and come to order.

13              THE COURT:  Where are we on this

14   issue?

15              MR. BORGES:  Okay.  Your Honor, I

16   conferred with my client during the break, and his

17   sister.  The telephone is -- should be downstairs.  I

18   think she's had it delivered, which --

19              THE COURT:  I'm sorry?

20              MR. BORGES:  The telephone -- the

21   telephone, that information on it will be delivered

22   in the next few minutes.  We had somebody bring it

23   over.  We can have the computer, the entire computer

24   taken to Mr. Rein's office within an hour.  We're

25   trying to do everything we can to comply with this.

19

1   We'd ask that the computer to be opened unless he's

2   present.  But we will physically deliver the computer

3   to his office, hard drive and everything, and

4   telephone and everything they want.  I don't know

5   what more we can do, Judge.

6                    THE COURT:  Mr. Rein.

7                    MR. REIN:  The computer and the phone

8   itself are not what we want.  We need the contents.

9   So, just delivering it without having the passwords

10  and being able to image the information and find the

11  information, it's like they didn't give me the

12  devices in the first place.

13                    THE COURT:  Mr. Borges?

14                    MR. BORGES:  Judge, we're asking to --

15  Mr. Rein can take possession --

16                    THE COURT:  And how do they access the

17  information?

18                    MR. BORGES:  Bring Mr. Kowalski to his

19  office.  But to allow him total access to everything

20  on his computer is outrageous.  He can have --

21  nothing can be changed.  He can have the computer.

22  He can have --

23                    THE COURT:  Well, why don't we do it

24  right now in court.

25                    MR. BORGES:  Well --

20

1          THE COURT:  The debtor is right here.

2  Go get it and bring it right here.

3          MR. BORGES:  We can do that.

4          THE COURT:  The debtor has an

5  objection of privilege or whatever.  We could deal

6  with it and I could rule on it.

7          MR. BORGES:  We can do that today,

8  Judge.

9          MR. PALOIAN:  Judge --

10          THE COURT:  Where is the computer?

11          MR. BORGES:  The computer is at his

12  office.

13          MR. PALOIAN:  Judge, I appreciate --

14          THE COURT:  Sorry for me calling you,

15  Mr. Trustee, Mr. Paloian.

16          MR. PALOIAN:  That's fine.  That's

17  fine, Your Honor.

18          I appreciate the willingness to get

19  this done right now.  From a technical standpoint,

20  how does Mr. Borges and Mr. Kowalski propose to

21  download that information right now and give it to

22  us?  Are we going to sit and all stare at a phone and

23  look at one email after another?  That's just simply

24  impractical.

25          All they need to do is to provide the

1  information.  And now we have moved off of Jan

2  Kowalski as someone who could assist, and we've gone

3  down a path now where we need Mr. Kowalski present,

4  not in incarceration, to enter a password.  So you

5  see where this is going.  It seems to be engineered

6  to get Mr. Kowalski out of incarceration, which is

7  fine with me as long as he just complies with the

8  court's order and produces the information.  A

9  device, a computer, is worth no more than this

10  stanchion because we can't get the information out

11  that we can all examine.

12              THE COURT:  Mr --

13              MR. PALOIAN:  And one more thing, Your

14  Honor.  As far as all the information that's on

15  there, Mr. Kowalski is in a bankruptcy.  Everything

16  that he owns is part of this estate.  So there

17  shouldn't be anything that's left behind because he

18  doesn't want to disclose it.  We should be able to

19  see absolutely everything.

20              And the right way to do this is to

21  have Mr. Borges get all this information downloaded

22  and produce it, produce copies of it.  And if they

23  think that there is anything that's privileged, well,

24  there's decades of case law on preparing a privilege

25  log with all of the required identifiers, so that if

22

1  any of the parties think that the assertion of

2  privilege is an overreach, then we have something to

3  go before the court.  But to simply just exclude it

4  because Mr. Kowalski wants to exclude it, we know

5  that that doesn't work in this case.

6              THE COURT:  Mr. Borges, what do you

7  suggest?

8              MR. BORGES:  I suggest that everything

9  Mr. Kowalski has be turned over to the trustee.

10              THE COURT:  With the password.

11              MR. BORGES:  Passwords that may

12  involve information that's private?  Is there no

13  privacy?  Is there no right to privacy in this world

14  anymore?  I mean, I thought that one had a right to

15  privacy.  He has some matters that are private.

16  People have computers and phones that they have

17  private matters on them.  I would think there's still

18  a right to privacy in this country.  Just to give

19  somebody access to everything in your life, every

20  little note you make to a young lady, every little

21  something -- note you make to your girlfriend --

22              THE COURT:  Who should review it for

23  that if the debtor isn't going to present a privilege

24  log?

25              MR. BORGES:  What is it they want?

23

1   They want the passwords to his phone?  They want the

2 passwords to his computer?

3                 THE COURT:  Yes.

4                 MR. SOWKA:  And email.

5                 MR. BORGES:  And email.

6                 MR. SOWKA:  And any iCloud account.

7                 MR. BORGES:  And be able to view it

8 without him being present?  We'll do that, but we'd

9 like to be present when they -- when they invade his

10 privacy, not to be able to just go fishing.

11                 THE COURT:  Well, with the

12 confrontation with the trustee at the 2004 exam, that

13 would have to be in court.  I am not going to ask

14 someone to do anything privately with Mr. Kowalski

15 again.  I'm not going to put somebody's physical

16 safety in jeopardy.

17                 MR. BORGES:  Mr. Kowalski never hit

18 anyone --

19                 THE COURT:  He came within an inch of

20 Mr. Paloian's face.

21                 MR. BORGES:  Your Honor, I used to be

22 a drill sergeant.  I did that all the time.

23                 THE COURT:  Well, when you're a drill

24 sergeant, they've waived their right to that sort of

25 privacy, space --

1          MR. BORGES:  Fifty years ago I was in

2    Vietnam where --

3          THE COURT:  I'm sure, but that's --

4    this is not a combat mission.  Well, it shouldn't be.

5          MR. REIN:  So this --

6          THE COURT:  When are they going to get

7    the computers, the computers, the phone, the

8    password -- the passwords?

9          MR. BORGES:  Within an hour.

10          THE COURT:  Maybe I should take a

11    break for an hour.

12          MR. BORGES:  We can provide it.  You

13    want it sent --

14          THE COURT:  I want it here.  I'm not

15    going to -- I cannot trust any kind of private

16    transaction, not with people getting --

17          MR. BORGES:  The Marshal said he wants

18    these boxes out.

19          THE COURT:  -- threatened and almost

20    beat up.

21          MR. BORGES:  The Marshal said he wants

22    the boxes out of here a few minutes ago.

23          THE COURT:  And Mr. Rein is going to

24    take care of that; is that right?

25          MR. REIN:  That's right.  My office is

1    in the process of sending somebody over to get the

2    boxes.

3                THE COURT:  When are we going to see

4    these computers and passwords?

5                MR. BORGES:  One hour, Judge.

6                THE COURT:  Should I take a break for

7    an hour?  What time is it?

8                MR. PALOIAN:  Yes.

9                THE COURT:  It's noon.

10               MR. SOWKA:  It's noon.

11               THE COURT:  Today is Tuesday.  See you

12   all at 1:30.

13               MR. SOWKA:  Thank you.

14               MR. REIN:  Thank you, Your Honor.

15               (Recess until 1:30.)

16               THE CLERK:  Taking up the hearing of

17   Robert Kowalski.

18               MR. BORGES:  Good afternoon again,

19   Judge.

20               THE COURT:  Let's proceed.

21               MS. PORTER:  Karen Porter on behalf of

22   Martha Padilla.

23               MR. REIN:  Rick Rein on behalf of the

24   FDIC as receiver.

25               MR. BORGES:  Ernesto Borges on behalf

1   of the debtor.

2           MR. SOWKA:  Good afternoon, Your

3   Honor.  James Sowka on behalf of Chapter 11 trustee

4   Gus Paloian.

5           MR. PALOIAN:  Your Honor, Gus Paloian,

6   case trustee.

7           THE COURT:  And Mr. Kowalski is here.

8   Let's proceed.

9           MR. BORGES:  Your Honor --

10          THE COURT:  Any progress?

11          MR. BORGES:  Yes.  Ms. Kowalski just

12   called me about 20, 25 minutes ago to say did you

13   want the printer also.  And she -- I told her to

14   bring the printer also in case we want to print

15   things.  She should be here any minute with the

16   computer and the telephone and the printer and

17   everything.

18          MR. REIN:  I think we need to know if

19   that's all of the electronics that the debtor --

20          THE COURT:  You want to ask the

21   debtor?

22          MR. REIN:  Yes, I do.

23          THE COURT:  Put the debtor under

24   oath.

25          (Witness sworn.)

ROBERT KOWALSKI, WITNESS, SWORN

DIRECT EXAMINATION

BY MR. REIN:

1     Q    Mr. Kowalski, your office where the boxes were maintained was at what address?

    A    1918 West Cermak in Chicago Illinois, 60608.

    Q    Do you have desktops in that office?

    A    I have one.

    Q    Is that desktop being turned over?

    A    It's my understanding yes.

    Q    The desktop?

    A    Yes.

    Q    Do you have a laptop?

    A    I do not.

    Q    Do you have an iPad?

    A    No.

    Q    Do you use your son's iPad?

    A    I have not seen him for quite a while.

    Q    So you've not used an iPad within the last year?

    A    I don't have an iPad.

    Q    I didn't ask that.  I said you've not used an iPad within the last year?

    A    I guess the answer would be no, I have not

28

1   because I do not own one.

2       Q    Does your girlfriend have an iPad that you

3   use?

4       A    I have not used an iPad.

5       Q    Does your girlfriend have a computer that

6   you use?

7       A    She does not.

8       Q    Where are you currently residing?

9       A    At the MCC.

10      Q    When you're -- prior to the MCC, where did

11  you reside?

12      A    I reside at 1707 South Newberry, Chicago,

13  Illinois, 60608.

14      Q    Did you have a computer at your home?

15      A    Yes, there is one there.

16      Q    Is that computer being turned over?

17      A    No, it is not.

18      Q    Why not?

19      A    I have not conducted any business on that

20  computer, and it's there for the children.

21      Q    You don't send emails?

22      A    It's not my computer either.

23      Q    Do you send emails from that computer?

24      A    No.

25      Q    You don't use the computer at all?

1      A     I do not.

2      Q     You've never turned it on?

3      A     I have turned it on, yes.

4      Q     Okay.  For what purpose?

5      A     To play video games.

6      Q     Do any searching on the Internet?

7      A     Perhaps a little bit.

8      Q     Do you access Internet accounts?

9      A     No.

10     Q     Do you have a phone that you're turning

11 over?

12     A     It's my understanding, yes.

13     Q     How many email addresses do you have?

14     A     I have one.

15     Q     How many email addresses have you had over

16 the last five years?

17     A     Two.

18     Q     What's -- what are the two email addresses?

19     A     I had one.  I think Robert.223@att.net.

20 And I have the present email address, which I think

21 is Robert.224@icloud.com.

22     Q     And the att.net, what is the password?

23     A     I don't recall.

24     Q     Any way of determining the password for

25 that account?

30

```
1        A    No.

2        Q    Do you keep passwords that you maintain

3   on -- in some type of storage?

4        A    No.  I might explain a little further.

5   That particular email, I have no access to and it was

6   discontinued.  And I can't -- I have no access to it.

7   And, hence, that's why I was forced to

8   Robert.224@icloud.com when I purchased my iPhone.

9        Q    When did you purchase your iPhone?

10        A    Earlier this year.

11        Q    When?

12        A    I don't exactly recall the date.  I haven't

13   had this account for very long.

14        Q    So in 2018?

15        A    Absolutely, yes.

16        Q    Before or after you filed the bankruptcy?

17        A    I don't recall.  It may have been about --

18   coincidentally about the same time.

19        Q    And did you have a phone prior to your

20   iPhone?

21        A    Well, yes, I had a different iPhone.

22        Q    You had a different iPhone, so therefore

23   you needed an Apple account, right?

24        A    Perhaps, yes.

25        Q    What was that Apple account?
```

1    A    I don't know what it is.  I think it's the
2  same account that I have now.
3    Q    So how long have you had this account that
4  you have now?
5    A    The one with the iCloud?
6    Q    Yes.
7    A    I haven't had it for too long.  It was
8  sometime -- I initiated it during this year.
9    Q    What's your password?
10   A    I don't know it.  I have it written down in
11 my office, but I don't know my Apple password by
12 heart.
13   Q    So you have no way of telling us the
14 password?
15   A    I wrote it down at my office, so I do have
16 a recollection of it there.
17   Q    Is somebody bringing that written down
18 piece of paper with the password?
19   A    I don't know.  It's my understanding we're
20 bringing the computers here.  I don't know if that
21 will have the password or not.
22   Q    So you're bringing a computer that we
23 cannot access in this courthouse?
24   A    We're bringing computers that can be
25 accessed here in the courthouse.

1     Q     How are we going to access it without the
2  password?
3     A     Well, I hope that my sister will bring
4  that.
5     Q     Oh, did you ask her to bring it?
6     A     Of course.
7     Q     What else did you ask her to bring?
8     A     Well, besides the phone and the computer,
9  that was all.
10    Q     Do you have a password to your -- to the
11  iCloud?
12    A     I think that's the Apple password.
13    Q     Do you back up the information on your
14  computer?
15    A     No.
16    Q     Do you back up the information on your
17  phone?
18    A     No.
19    Q     So you don't maintain any storage facility
20  for your phone or your computer?
21    A     It's all done with Apple.
22    Q     What about prior to your Apple account?
23  Did you back up information on your computer?
24    A     No.  Regretfully, no.
25    Q     Did you back up any information on your

```
 1   prior phone?

 2       A    No.

 3       Q    Are you still living on Newberry?

 4       A    If I were to be released today, yes, that's

 5   where I would go.

 6       Q    I see.

 7            Does your girlfriend have an iPad?

 8       A    I don't know.  I don't really know what an

 9   iPad is.

10       Q    You don't know what one is?

11       A    I don't know what an iPad is, no.

12            MR. REIN:  I have nothing further.

13            THE COURT:  Any other questions of

14   Mr. Kowalski?

15            MR. SOWKA:  No, Your Honor.

16            THE COURT:  Ms. Porter, anything?

17            MS. PORTER:  No, Your Honor.

18            THE COURT:  All right.  Where is the

19   information?

20            MR. BORGES:  She should --

21            THE COURT:  Where are the devices and

22   the passwords?

23            MR. BORGES:  She might be trying to

24   call me, Judge.  I bought a new iPhone last night.

25            MR. REIN:  Would you give us your
```

34

1  password?

2                    (Laughter.)

3                    MR. BORGES:  If I can turn it on.

4                    THE COURT:  Well, considering your

5  age, I understand.

6                    (Laughter.)

7                    MR. BORGES:  See, it's the battery.

8  She's probably trying to call me, but I just bought

9  this --

10                    THE COURT:  Not your age, our age.

11                    MR. BORGES:  My age.

12                    THE COURT:  Why don't you step out in

13  the corridor and try to call her.

14                    MR. PALOIAN:  Maybe we could pass this

15  for about five minutes, Your Honor.

16                    THE COURT:  Yes, we'll pass it for

17  about five minutes.

18                    MR. SOWKA:  Thank you.

19                    (Brief recess.)

20                    MR. BORGES:  Good afternoon again,

21  Judge.

22                    THE COURT:  Good afternoon.

23                    I'm waiting.  I'll just wait.

24                    (Brief pause.)

25                    THE COURT:  Where are we?

```
 1              MR. BORGES:  Well, my back hurts from

 2   lifting the --

 3              THE COURT:  I'm sorry about that.

 4              MR. BORGES:  -- printer and the

 5   monitor and all that at the age of 71.  We have the

 6   computer, Judge, the hard drive, everything.  We have

 7   the printer and we have a monitor.

 8              THE COURT:  Mr. Rein.

 9              MR. BORGES:  We have the telephone.

10              MR. REIN:  So we asked them to power

11   it up to see if it works.

12              THE COURT:  All right.  So I'm sorry,

13   Mr. Rein, are you -- I'm sorry, I'm listening.

14              MR. BORGES:  Sure.  So, eventually

15   what we need is only the hard drive.  We don't need

16   the monitor.  We don't need the keyboard.  But here

17   is what I do need, because this case is not just

18   about what emails he sent within the last six months

19   or so on or near the bankruptcy.

20              THE COURT:  Have a seat, Mr. Kowalski.

21   Have a seat.

22              MR. REIN:  On or near the bankruptcy.

23   It has to do with transactions that predated it, and

24   that's what the 2004 is investigating.  So we need

25   his password for the robert.223@att.net account.
```

1          THE COURT:  Do you have that,

2    Mr. Kowalski?

3          MR. KOWALSKI:  Your Honor, I do not

4    have that.  That account was -- I don't know, I just

5    -- I lost the account.  And I wasn't -- I think it

6    was tied to a -- like television service, and I

7    discontinued the television service.

8          THE COURT:  Comcast maybe?

9          MR. KOWALSKI:  It was att.uverse

10   something.

11         MR. REIN:  It can be recovered.

12         THE COURT:  Att.uverse, one of those.

13   I don't know.

14         MR. REIN:  So it can be recovered and

15   the information can be obtained through AT&T and

16   other -- but we need the password.  Absent the

17   password, we can't get to the emails.  He needs to

18   produce emails concerning the subject time period and

19   transactions, not just hand over a monitor with an

20   email account.

21         THE COURT:  Is there any other way he

22   doesn't have the password to get that?  Can you

23   subpoena that from the --

24         MR. REIN:  No, I am -- no.  They won't

25   answer because they're going to -- no, the

37

1    Telecommunications Act bars us from subpoenaing that

2    information.

3                    MR. BORGES:  Judge, may I speak?

4                    THE COURT:  Go right ahead.

5                    MR. BORGES:  I know I lose my

6    passwords at least once a month and I have to call

7    and go through a few gyrations to get a new password

8    and reset it as recently as yesterday.  I will work

9    with Mr. Kowalski.  We'll get the passwords.  We've

10   turned everything over.  I just -- you know, people

11   lose passwords.  They forget them.  They change

12   carriers and so forth.  It's something that happens

13   to everybody that has an iPhone or a computer.  I am

14   here to try to facilitate the --

15                    THE COURT:  Mr. Rein, go ahead.

16                    MR. REIN:  It's the communications

17   that need to be turned -- yes, we need the password,

18   but we need the communications, and he needs to be

19   able to -- he needs to turn over the communications

20   in whatever manner, shape or form.  That's what the

21   subpoena in the 2004 exam was looking for.

22                    THE COURT:  All right.  What else do

23   you need?

24                    MR. REIN:  Okay.  So I also need his

25   password to the iCloud account, Robert --

1              THE COURT:  The one that's on the

2    docket?

3              MR. REIN:  Robert.224, yes, Your

4    Honor.

5              THE COURT:  Okay.

6              MR. REIN:  We need the password --

7              THE COURT:  What is that, Mr.

8    Kowalski?  You don't have to -- write it down on a

9    piece of paper, please, and give it to them.

10             MR. KOWALSKI:  Your Honor, as I can

11   recall, it's --

12             THE COURT:  Write it down and give it

13   to Mr. Rein.

14             MR. KOWALSKI:  Thank you.

15             MR. REIN:  We need the computer

16   password so we can access the monitor.

17             THE COURT:  Where is that?

18             MR. KOWALSKI:  I have that.

19             THE COURT:  Put that on a piece of

20   paper.

21             What else do you need, Mr. Rein?

22             MR. REIN:  We need the iPhone

23   password.

24             THE COURT:  What is that,

25   Mr. Kowalski?

1                   MR. KOWALSKI:  Is it the -- just to

2    open the phone --

3                   THE COURT:  Yes.

4                   MR. REIN:  Just write it down.

5                   THE COURT:  Write that down.

6                   What else do you need, Mr. Rein?

7                   MR. REIN:  I need the home computer

8    password.

9                   THE COURT:  What is that,

10   Mr. Kowalski?

11                  MR. KOWALSKI:  It's twins420.

12                  THE COURT:  What else do you need?

13                  MR. REIN:  I need his iCloud password.

14                  THE COURT:  What is that,

15   Mr. Kowalski?

16                  MR. KOWALSKI:  I'm not quite sure if

17   it's the Apple one or I have -- I have some

18   recollection.  I am not quite -- I'm sure the AT&T

19   store could help me with that because it's a current

20   account.

21                  MR. REIN:  He has a Facebook account,

22   as I understand.  I need his login and password.

23   Because that's also a way of communicating --

24                  THE COURT:  I'm sorry, Facebook?

25                  MR. REIN:  Facebook.

1          THE COURT:  Mr. Kowalski, do you know

2    how to access your Facebook account?  Do you have a

3    Facebook account?

4          MR. KOWALSKI:  You know, I'm not quite

5    sure.  I think I muddled in it, like, several years

6    ago, but I don't --

7          THE COURT:  You muddled into it?

8          MR. KOWALSKI:  I was lonely.

9          THE COURT:  I understand because I

10   muddled into it too.  I thought I was answering a

11   friend's email.  Next thing I know, I was -- they

12   tried to get me to sign up for Facebook.  I think I

13   declined.  I didn't know I was going there.  So when

14   you say you muddled into Facebook, I clearly

15   understand that one.

16          Do you know, have you ever been on

17   Facebook?  Have you ever posted anything to Facebook?

18          MR. KOWALSKI:  No, I don't know how,

19   Your Honor.

20          MR. REIN:  I understand he

21   communicates with his children via Facebook or tries.

22   So, he has a Facebook account.

23          THE COURT:  What about that, Mr.

24   Kowalski?  Your children seem to think -- your

25   children may think you're on Facebook.

1          MR. KOWALSKI:  So I haven't been on

2   Facebook for a very long time.  I don't recall.

3          MR. REIN:  But you have an account and

4   you can give us the information, right?

5          MR. BORGES:  To the best of our

6   ability, Judge.  I wouldn't know how to get on

7   Facebook to save my life, other than it's an icon.

8          MR. REIN:  Again, it's not for you to

9   get on Facebook.

10          MR. BORGES:  I understand.  But, you

11   know, we're talking about this new technology.

12          MR. REIN:  Facebook is not new.  He

13   has a LinkedIn account.  I need your password and

14   access.

15          MR. BORGES:  Linked --

16          Do you know what LinkedIn is?

17          MR. KOWALSKI:  Vaguely.  Yes, I know

18   what it is.  I don't recall --

19          MR. REIN:  And once the forensic exam

20   starts, I don't know what other information is going

21   to be required, other accounts that are detected.

22          THE COURT:  Well, we'll deal with

23   that --

24          MR. REIN:  I just don't --

25          THE COURT:  We'll cross that bridge

42

1  when and if we come to it.

2              MR. REIN:  I understand.

3              THE COURT:  Now, how soon can we get

4  all this information, Mr. Borges?

5              MR. BORGES:  We can get -- some of

6  this we can get right now.  He can write this down.

7  We certainly have the computer.  And if we can turn

8  the computer on --

9              MR. KOWALSKI:  Yes.

10             MR. BORGES:  Turn the computer on --

11             MR. REIN:  It's not turning the

12  computer on.  I need a password.

13             MR. BORGES:  -- getting into the

14  computer.

15             MR. REIN:  And then I need to get into

16  the accounts.

17             MR. BORGES:  Do you think you can do

18  that?

19             MR. KOWALSKI:  I'll provide whatever I

20  recall here, yes.

21             MR. REIN:  We're not here for recall.

22             THE COURT:  Do you have an office

23  assistant or someone in your business that maintains

24  this technology for you?  Someone who --

25             MR. KOWALSKI:  No, I do everything as

1    best I can.

2                    MR. BORGES:  So we can write all of

3    that down now, Judge.  We can turn the computer on

4    and access everything, give them the phone --

5                    THE COURT:  Mr. Paloian.

6                    MR. BORGES:  I don't know what else we

7    can do, Judge.

8                    MR. PALOIAN:  Maybe we should pass it

9    for a few more minutes.

10                   THE COURT:  I'll pass it for 10 or 15

11   more minutes.

12                   MR. PALOIAN:  And see if we can

13   actually get access.

14                   THE COURT:  We'll pass it for 15 more

15   minutes.

16                   (Brief recess.)

17                   THE COURT:  Where are we, Mr. Rein?

18                   MR. BORGES:  Your Honor, we have

19   powered the computer up.  Mr. Rein has taken a look

20   at it.  We have given him access to it, access to the

21   phone, and the code to get into his telephone.  We

22   still have a list of passwords to Mr. Kowalski's

23   computer, opening the phone, what he thinks to be his

24   iCloud account, Apple account.  It's a little

25   confusing.

44

1          Facebook, unknown, but I imagine if he

2    has an app on his phone, he can just tap it and get

3    into it.  LinkedIn, he's given his -- Natalie's --

4    his children's home phone -- home computer access

5    code or pass code.  That's about everything that he

6    can tender.  He's complied with everything.

7               THE COURT:  Okay.  Mr. Rein,

8    Mr. Sowka.

9               MR. REIN:  Well, I don't know if I've

10   got -- he's not sure if he's giving me the passwords.

11              MR. BORGES:  No, he's sure about the

12   computer.  He's sure about the phone.

13              THE COURT:  Have you been able to

14   access --

15              MR. REIN:  -- so I don't want to --

16              THE COURT:  -- his equipment or

17   anybody else's?

18              MR. REIN:  I don't want to -- because

19   I don't want to disturb the evidence.  So that's why

20   you need a forensic group to image the computer and

21   the phone for texts and for emails because --

22              THE COURT:  So do you have any

23   suggestions or requests?  I'm not clear.

24              MR. REIN:  Well, we need to take the

25   box back with us.  We don't need the monitor and the

1   keyboard.

2                    THE COURT:  I see.

3                    MR. REIN:  We need to take the phone

4   with us.  And I don't know if I have all the

5   passwords.

6                    THE COURT:  That's the printer over

7   there?

8                    MR. REIN:  I don't need the printer

9   either.

10                   THE COURT:  So you say you need

11  certain things.  Do you have them?

12                   MR. REIN:  I don't have anything yet

13  in terms of the passwords that -- I ran through

14  whether it's --

15                   MR. BORGES:  I can tender those to you

16  right now.

17                   MR. REIN:  So, the computer -- is this

18  with a number or just the name?

19                   MR. BORGES:  That's it.

20                   MR. REIN:  The iCloud he doesn't know?

21                   MR. BORGES:  Well, he thinks -- it's a

22  little confusing between iCloud and Apple ID.  I deal

23  with that every day.  He has put a code down here,

24  Judge, that he thinks is the code.  We can contact

25  Apple, AppleCare, insure that's the correct -- we're

1   not trying to be obstructionist or anything like

2   that.  We're just -- we're trying to get to it,

3   Judge.  And I know from my personal experience you

4   have to call AppleCare and get it.  But we will do

5   that.  I am here to facilitate things, Judge.

6               Facebook, he has an app on his phone.

7   That's the only way I get in Facebook is hitting the

8   app.  We can do that.  LinkedIn, same thing.  The

9   home computer is for the -- it's the kids' computer.

10  If Mr. Rein wants to take the kids' computer --

11              MR. REIN:  He hasn't been with the

12  kids in how many years?

13              MS. PORTER:  Four.

14              MR. BORGES:  What does that have to do

15  with their computer?

16              MR. REIN:  Which kids?  Natalie's

17  kids' computer.  Okay.  Not your kids' computer.

18              MR. BORGES:  The kids.

19              MR. REIN:  And then there's an AT&T

20  pass code.

21              MR. BORGES:  That, I think, was

22  something that was on -- written on the computer.

23              MR. REIN:  So what --

24              MR. BORGES:  It's a piece of paper --

25              MR. REIN:  So what is Snowball 2018

47

1   with a dollar sign?

2                   MR. KOWALSKI:  It must be a password.

3   I don't recall.

4                   MR. REIN:  Again, this is not a test

5   for me.  I need accurate, verifiable information,

6   including passwords, pass codes, in order to get into

7   your -- you have a note on here.  It says Drexel6502.

8   What does that mean?

9                   MR. KOWALSKI:  It's a pass code for

10  something.  It could be a People's Gas pass code or

11  ComEd.  There's so many pass codes for everything.  I

12  don't know.

13                  MR. REIN:  Well, I asked you, where

14  did you store your pass codes, passwords?

15                  MR. KOWALSKI:  It's just --

16                  MR. REIN:  Do you have a book?

17                  MR. KOWALSKI:  It must be in some of

18  the files we tendered.  The People's Gas account, it

19  might go on the bill.  I mean, you store the

20  information in --

21                  THE COURT:  Mr. Rein, do you have

22  enough to get started, and then if you need --

23                  MR. REIN:  Yes --

24                  THE COURT:  -- other information --

25                  MR. REIN:  -- we have enough to --

48

 1                    THE COURT:  -- you can make more

 2    narrow, focused, informed requests?

 3                    MR. REIN:  Yes.  Yes.  We have enough

 4    to get started in trying to locate --

 5                    THE COURT:  You will engage a forensic

 6    expert to help you?

 7                    MR. REIN:  Yes.

 8                    THE COURT:  And then your expert can

 9    help you design a request for better --

10                    MR. REIN:  Yes.

11                    THE COURT:  -- additional information?

12                    MR. REIN:  Yes.

13                    THE COURT:  Young man --

14                    MR. BARRETT:  Good afternoon, Your

15    Honor.  Matt Barrett also for the FDIC as receiver.

16    We can get a technician here probably tomorrow.  If

17    we take the equipment with us today, have it imaged,

18    do whatever we can do with the actual equipment, and

19    in the meantime, have the image done and potentially

20    return the equipment after it's been imaged tomorrow

21    or Monday at the latest.

22                    THE COURT:  What do you suggest, Mr.

23    Paloian?

24                    MR. PALOIAN:  I think it's imperative

25    to get an image.

49

1            THE COURT:  At least get started.

2            MR. PALOIAN:  Yeah, to get an image as

3    soon as possible.  And then once there is an image,

4    to figure out if you can actually access that data.

5            THE COURT:  Yes.  Yes.

6            MR. SOWKA:  Judge, if I may make one

7    other suggestion?

8            THE COURT:  I'm sorry, Mr. Sowka, go

9    ahead.

10           MR. SOWKA:  It appears that

11   Mr. Kowalski does not remember the passwords to

12   certain accounts.  I think it would be helpful if the

13   court entered an order permitting the FDIC, as

14   necessary, to use their forensic expert to reset

15   passwords to gain access to the account.  The

16   difficulty is going to be if they have the phone,

17   Mr. Kowalski is not going to be able to reset

18   passwords, because a lot of times they're

19   authenticated through email or text message.  To

20   reset them to the extent --

21           THE COURT:  Well, if we find out that

22   he has done that, that's not going to -- that would

23   be a big problem.

24           MR. BORGES:  I agree, Judge.

25           THE COURT:  Prepare that order,

50

1  Mr. Sowka.  I will sign it.

2                    Anything further, Mr. Sinha, anything?

3                    MR SINHA:  No, Your Honor.  Nothing

4  further from me.

5                    THE COURT:  Any objection to releasing

6  Mr. Kowalski conditioned upon his continued

7  cooperation and attendance at these matters?  With

8  the understanding if I get any lack of cooperation,

9  you're going back in.

10                    MR. REIN:  Here is my concern.  When

11  is he showing up for a 2004 exam?

12                    THE COURT:  Well, that's going to be

13  laid out.

14                    MR. REIN:  Okay.

15                    THE COURT:  It's going to probably be

16  in the courthouse somewhere between 1:00 and 5:00

17  certain afternoons.  I cannot -- well, we'll -- we

18  will see.

19                    And if there is any other

20  disturbances, it's not going to go well,

21  Mr. Kowalski.

22                    MR. REIN:  Here's my suggestion.

23  Looking at the schedule in this case, there is

24  motions up on the 15th.  There is a status on a

25  couple of --

51

1          THE COURT:  What motion is up on the

2  15th?  I don't --

3          MR. REIN:  I believe --

4          MS. PORTER:  Martha Padilla's motion

5  for relief from the automatic stay is set for status.

6          THE COURT:  Okay.

7          MS. PORTER:  Also, Mr. Kowalski filed

8  objections to the FDIC's claim that were not properly

9  served, and the court set them for status on the

10  15th.

11          THE COURT:  Anything further?

12          (No response.)

13          THE COURT:  Put together a schedule --

14  it's Mr. Rein's 2004?

15          MR. REIN:  Yes.

16          THE COURT:  What afternoons in the

17  courthouse do you want these to occur from 1:00 to

18  5:00?  My courtroom will probably be available.

19          MR. REIN:  So I need to coordinate

20  that with Mr. Paloian to find out his availability.

21          THE COURT:  I'm looking at the 27th,

22  the 29th and 30th for beginning.

23          MR. REIN:  So I'm out of town the 29th

24  and 30th.

25          THE COURT:  You are?

1          MR. REIN:  I am.

2          THE COURT:  What do you suggest?

3          MR. REIN:  The 27th works for me as

4   one date.

5          THE COURT:  I wonder if the 26th is

6   good?  Let me just glance.  It's kind of hard to

7   figure it out.

8          What about the 26th and 27th to begin

9   with?

10         MR. REIN:  Those would work for me.

11         THE COURT:  From 1:00 to 5:00.  I will

12  be responsible for getting a courtroom.  Probably

13  mine.  Let me just make sure I don't have anything

14  that Monday.  That Tuesday looks suspiciously --

15         MR. PALOIAN:  Your Honor --

16         THE COURT:  -- only one matter.

17         MR. PALOIAN:  -- the U.S. Trustee's

18  office had said that they would be able to provide a

19  room for depositions.

20         THE COURT:  Fantastic.

21         MR. NGUYEN:  We can do that, Your

22  Honor.

23         MR. PALOIAN:  In the building,

24  obviously.

25         THE COURT:  I genuinely appreciate

1   that.

2                    And so coordinate with them.  I guess

3   if they're going to provide the room, they'll

4   schedule it.  They'll tell you when it's available.

5                    MR. REIN:  Well, I think --

6                    THE COURT:  But put it in the order

7   the 26th and 27th.

8                    MR. NGUYEN:  The 26th and 27th work,

9   Your Honor.

10                    THE COURT:  All right.  From 1:00 to

11  5:00.

12                    MR. NGUYEN:  Can we do it in the

13  morning or...

14                    THE COURT:  Yeah, that's true.  You

15  don't have the problem --

16                    MR. REIN:  Yeah, I mean, this takes a

17  long time.  This is --

18                    THE COURT:  I expect that.

19                    MR. REIN:  Right.  So I'd like to

20  start in the morning.

21                    THE COURT:  At the U.S. Trustee in the

22  morning.

23                    You want to put that order together,

24  Mr. Sowka?  How long would that take?

25                    MR. SOWKA:  Mr. Sinha is drafting the

54

1  order with respect to the passwords right now, so we

2  should be able to submit that --

3            THE COURT:  Should I take a break so

4  that -- I want to serve Mr. Kowalski from my eyes

5  with this order.  I don't want to hear, I didn't see

6  it, I didn't know.

7            MR. SOWKA:  Your Honor, the other --

8            THE COURT:  It's going to be served on

9  the record.

10            MR. SOWKA:  The other issue we have to

11  address is the motion to convert.

12            THE COURT:  Yes.

13            MR. SOWKA:  The debtor has indicated

14  he still has additional witnesses.  I know one of the

15  witnesses is present in the courtroom today.  I don't

16  see any reason why --

17            THE COURT:  Who?  Who is that?

18            MR. SOWKA:  -- proceed.

19            Jan Kowalski, the debtor's sister.

20            MR. BORGES:  Judge, I would just as

21  soon set everything over.  There's a lot to go

22  through here.

23            THE COURT:  Is she a long witness,

24  more than half an hour?

25            MR. REIN:  It's his witness.

55

 1           MR. BORGES:  She would be a very long

 2  witness, Judge.

 3           MR. SOWKA:  Judge, the trustee has

 4  concern that there they're delaying the resolution of

 5  the motion to convert here.  This is the third

 6  continued date already.  The debtor was supposed to

 7  have all of his witnesses appear at the first

 8  hearing.  That didn't happen.  All of his witnesses

 9  weren't at the second hearing.  And now we're at the

10  third hearing and we have the same --

11           THE COURT:  Well, I switched the third

12  hearing because of a problem tomorrow.

13           What do you suggest, Mr. Borges?

14           MR. BORGES:  Well, Judge, I don't know

15  what the haste is here.  You know, without being able

16  to --

17           THE COURT:  I definitely don't feel

18  any haste.

19           MR. BORGES:  Judge, it's a lot to --

20  there's a lot --

21           THE COURT:  I see --

22           MR. BORGES:  -- involved.

23           THE COURT:  -- a lot of delay.  I'm

24  not going to be nasty about it, but there is a lot

25  more -- I don't see any haste at all.

1            MR. BORGES:  Judge, you know, why

2   would we want to convert a case when -- you know,

3   Mr. Kowalski came to the court trying to resolve some

4   matters as to huge claims being placed on his

5   property?  Now he is about to be stripped of

6   everything that he owns without any due process.

7            We need to get to the bottom of this

8   to see what has happened here and what has really

9   transpired.  I feel like I'm in here and I'm the only

10  one that doesn't know really what's going on in terms

11  of is there some other agenda here.  I mean, what --

12  why can't we get to the bottom of reviewing

13  everything, looking at the computer?  I've never seen

14  this computer before.  Part of that might be part of

15  my argument as to why this should not be converted.

16            There are unusual circumstances here,

17  obviously.  To have six or seven attorneys on one

18  side and one on the other side, what's -- what's

19  happening?  Why can't we take time to see why this

20  man's property should be taken from him and

21  liquidated?  I'm saying --

22            THE COURT:  Ms. Porter.

23            MS. PORTER:  Your Honor, this case was

24  filed on March 29th of 2018 to stop my client's

25  divorce proceeding.  The trustee filed his motion to

1  convert in September.  On October 17th this court set

2  a hearing on the motion to convert for November 1st.

3  The court issued a pretrial order.  Witness lists and

4  exhibits were due on October 30th.

5                We have gotten to the bottom of this.

6  The trustee has established that there is cause to

7  convert this case.  The standard is whether it is in

8  the best interest of creditors.  As a creditor, it is

9  in my client's best interest that this case be

10 converted.  The debtor has talked about unusual

11 circumstances, but that's unusual circumstances that

12 establish that it's in the best interest of

13 creditors.  And as a creditor with a claim of more

14 than $1.7 million, this case should be converted to a

15 Chapter 7.

16                The debtor has filed a plan that has

17 no chance of being confirmed.  The trustee has

18 established that the debtor cannot be a good faith

19 plan proponent.

20                In addition, the debtor has filed a --

21 a plan that does not deal with my client's claim, an

22 IRS claim of almost $500,000.  The plan goes on to

23 deem every claim, every class unimpaired.  Well, you

24 can't confirm a plan if there's no impaired class.

25 So the plan that the debtor, with the assistance of

1  Janet, his sister, filed on its face is not

2  confirmable.

3          THE COURT:  And the domestic support

4  obligation is not in there at all?

5          MS. PORTER:  No.  It is a plan that

6  creates four classes and then deems that each of

7  those classes accepts the plan.  That is not

8  confirmable under the 1129.  That plan is not filed

9  in good faith.  To file a plan of that nature would

10  not be in good faith.  But the trustee has

11  established that Mr. Kowalski, based upon his conduct

12  in this case, cannot be a good faith plan proponent.

13          THE COURT:  All right.

14          Mr. Borges, anything further?

15          MR. BORGES:  Yes, Your Honor.  We

16  would certainly want to amend the plan that

17  Mr. Kowalski submitted.  There are -- there appears

18  to be a lot of fraud that occurred here.  And as to

19  who the culprits are, I don't know.  But I know

20  that -- you know, we talk about the best interest of

21  creditors, but it's in the best interest of the

22  creditors to not be involved in a fraud also.

23          MR. PALOIAN:  That makes no sense.

24  What does that mean?

25          MR. BORGES:  I don't know what has

1   happened here, Judge.  I mean, there's so much

2   information here to digest.  I would simply ask for a

3   short continuance to be --

4                   THE COURT:  Why don't we finish all

5   the witnesses next Thursday, on the 15th, since we

6   are coming back.

7                   MR. BORGES:  That's fine.

8                   THE COURT:  I think we are set to come

9   back at 10:00 it looks like.

10                  MR. REIN:  I think that's right.

11                  MR. PALOIAN:  Thank you, Judge.  There

12  has to be an outside --

13                  THE COURT:  Let's finish all the

14  witnesses.

15                  MR. BORGES:  That's fine.

16                  THE COURT:  Mr. Sinha, do you have an

17  order yet?

18                  MR SINHA:  Not yet, Your Honor.  Just

19  give me a couple more minutes to finish up.

20                  MR. REIN:  Let me go back to the --

21  because we're working on the order.  How many dates

22  do you want us to put in --

23                  THE COURT:  Work with the U.S.

24  Trustee --

25                  MR. REIN:  They are available.

 1          THE COURT:  You're available.  As many

 2   as it takes.

 3          MR. REIN:  Right.

 4          MS. PORTER:  Your Honor --

 5          MR. REIN:  But I would like definitive

 6   dates in there at least to start, and then come back

 7   for status so that the court --

 8          THE COURT:  Work with the U.S. Trustee

 9   for definitive dates.

10          MS. PORTER:  Your Honor, as to 15 --

11          THE COURT:  I said the 26th -- I said

12   the 26th and 28th.  And, of course, I am anticipating

13   that if there are any objections at the 2004, you can

14   call me to rule on them hopefully over the phone.

15          MR. PALOIAN:  Thank you, Judge.

16          MS. PORTER:  Your Honor --

17          MR. REIN:  Your Honor, I just -- we

18   just coordinated.  So it would be November 26, 27,

19   and December 3 and 4.

20          THE COURT:  All right.

21          MR. REIN:  They will be all day.

22          MR. BORGES:  December 3 and 4?

23          MR. REIN:  Yes, starting at 9:30 and

24   going until 5:00.  And the U.S. Marshal --

25          THE COURT:  I'm available just

1   about -- especially November, but December I should

2   be available.  If I'm not, I'll try to remember to

3   get a colleague to be available to rule.

4              MR. REIN:  And in view of the

5   executive committee order, a U.S. Marshal needs to be

6   in the room because he cannot be unaccompanied in

7   this courthouse.

8              THE COURT:  Oh, that's right.

9              MR. NGUYEN:  Your Honor, we can

10  arrange that.

11             THE COURT:  I forgot about that.

12  Judge Castillo's order.

13             UNIDENTIFIED SPEAKER:  Judge, we have

14  an order set in place --

15             THE COURT:  Yeah, I forgot about that.

16  I'm sorry.

17             MR. REIN:  He can't get into the

18  building without telling them he's coming.

19             THE COURT:  Yes.  I don't mean to

20  countermand that one.  I don't want to be

21  misunderstood to have anything to do with that.

22             Mr. Sinha, I hate to push you.

23             MR. REIN:  He just handed it to me.

24  Let me just --

25             MR SINHA:  The order is being

1  circulated, Your Honor.

2          THE COURT:  Do you want to type it?

3          MR SINHA:  No, I don't want to type

4  it.  I wrote it down.  I'm just giving it to counsel

5  to make sure it's okay.

6          MR. REIN:  So I would suggest then,

7  Your Honor, that we come back for a status early

8  December on the 2004 exam.

9          THE COURT:  We can do that.  We can

10  set that on the 15th.

11          MR. REIN:  Okay.  That's fine too.

12          MS. PORTER:  Your Honor, I have a

13  concern about the hearing scheduled on the 15th.

14  There is a hearing on Mr. Kowalski's indirect civil

15  contempt before the state court at 2:00 o'clock.  And

16  his presence --

17          THE COURT:  Oh, in the divorce case.

18          MS. PORTER:  Yes.  And his presence is

19  needed at that hearing on the 15th.

20          MR. BORGES:  I didn't --

21          MS. PORTER:  And that hearing has been

22  delayed several times, so we are really anxious to

23  move forward.

24          THE COURT:  Mr. Borges?

25          MR. BORGES:  I have no knowledge of

1  that, Judge.  The 15th of November?

2              MS. PORTER:  November 15th, yes.  So I

3  understand that we are starting the hearing on the

4  motion to convert at 10:30.

5              THE COURT:  I think it's on the call

6  for 10:00 o'clock.

7              MS. PORTER:  At 10:00 o'clock on the

8  15th.

9              THE COURT:  I think that's what the

10  time --

11             MS. PORTER:  I would just like to

12  ensure Mr. Kowalski's availability to appear before

13  the state court at 2:00 o'clock that day.

14             THE COURT:  Mr. Borges?

15             MR. BORGES:  Judge, I don't know.  I

16  mean, we could -- Mr. Kowalski thought everything was

17  continued to 12/21.

18             MS. PORTER:  Your Honor, I have here

19  copies of the court order.  Initially Judge Boyd

20  continued all matters until December.  However, the

21  divorce court has entered an order that the petition

22  for indirect civil contempt would be heard by Judge

23  Lopez at 2:00 o'clock on November 15th.  I have

24  copies with me of the court orders that were entered

25  on November 1st.

64

1          THE COURT:  I see something to appear

2   November 15, 2018, room 3005 of the Daley Center,

3   petition for rule to show cause, in parenthesis,

4   interlocutory appeal.

5          MS. PORTER:  Yes.  Your Honor, in

6   addition --

7          THE COURT:  Child support and

8   submission of petition for Rule 137 sanctions.

9          MS. PORTER:  Yes.  Mr. Kowalski filed

10  an interlocutory appeal based upon Judge Lopez's

11  denial of a motion for substitution of judge.  That

12  interlocutory appeal does not stay any proceedings

13  because there was no stay obtained.  That's the

14  notation.  It's yet another appeal that has been

15  filed in the matrimonial proceedings.

16         THE COURT:  Well, let's be mindful of

17  that on the 15th and make sure he gets at least 20

18  minutes to walk four blocks north to 50 West

19  Washington.

20         MR. BORGES:  Okay.

21         MS. PORTER:  Thank you, Your Honor.

22         THE COURT:  I want to see this order

23  first because I'm going to personally serve it on

24  Mr. Kowalski.  Let me see.

25              (Document tendered.)

65

1          THE COURT:  All right.  This all we

2   wanted in the order?

3          MR. REIN:  On the contempt, yes.  You

4   said that we would --

5          THE COURT:  We will proceed with the

6   other matter on the 15th.

7          MR. REIN:  Do you want to put anything

8   in there --

9          THE COURT:  No.

10          MR. REIN:  -- about status?

11          THE COURT:  I don't think we need it.

12   We'll just make a notation in the docket, right --

13          THE CLERK:  Yes.

14          THE COURT:  -- about the motion to

15   convert, that we will resume on the 15th at 10:00

16   a.m.

17          And I have signed this order.  Can I

18   get a copy of it to personally hand to Mr. Kowalski

19   so there's no misunderstanding.  I'm not going to

20   vacate the order of contempt.  I'm going to release

21   him conditionally.

22          MR. BORGES:  That's fine, Judge.

23          THE COURT:  I want 100 percent

24   cooperation or you're going back in --

25          MR. BORGES:  I understand.

1          THE COURT:  -- until we finish.  Hold

2    on.  She's making a copy.

3              (Brief pause.)

4          THE COURT:  And if I hear that you

5    stand anywhere within six feet of Mr. Paloian, you're

6    going to go back in.  Stay away from him.

7          Mr. Kowalski, I'm talking to you.

8          MR. KOWALSKI:  Yes.

9          THE COURT:  You're an officer of the

10   court.  You know better.

11         What did you say, sir?

12         MR. REIN:  I said bless you.

13         MR. PALOIAN:  Someone sneezed, Your

14   Honor.

15         THE COURT:  Oh, I didn't hear it.

16         MR. PALOIAN:  But bless you anyways,

17   Judge.

18         THE COURT:  I need it.  I'm not sure I

19   deserve it, but I definitely need it.  I definitely

20   need it.

21         MR. BORGES:  Judge, is there an order

22   for his release or how does that work?

23         THE COURT:  Yes, we'll prepare one.

24         MR. BORGES:  Okay.

25         THE COURT:  I am sure the Marshals

1  want it before they even leave the courtroom.

2              UNIDENTIFIED SPEAKER:  Yes, ma'am.

3              THE COURT:  One is being prepared.

4              Mr. Kowalski has been handed a copy of

5  today's order?

6              I'll let you see what this says.

7              (Document tendered.)

8              THE COURT:  Any objection to this,

9  Mr. Paloian, Mr. Borges, Ms. Porter?

10              I expect full cooperation during this

11  release, Mr. Kowalski.  I am not purging you of

12  contempt because you haven't finished the 2004

13  exam.

14              MS. PORTER:  No objection, Your

15  Honor.

16              MR. REIN:  No objection.

17              MR. PALOIAN:  No objection, Your

18  Honor.

19              THE COURT:  I am going to sign the

20  order.  I want Mr. Kowalski to be given a copy of it.

21  And we will be adjourned.

22              Anything further?

23              (No response.)

24              THE COURT:  It is a conditional

25  release.  I expect full cooperation, sir.  You are

1  still in contempt.

2              MR. KOWALSKI:  Thank you, Your

3  Honor.

4              THE COURT:  Good luck.

5              MR. BORGES:  Thank you, Your Honor.

6              MR. PALOIAN:  Thank you, Judge.

7              THE COURT:  Good luck to all of you.

8              (Which were all the proceedings had in

9              the above-entitled cause, November 8,

10             2018, 10:30 a.m.)

11  I, AMY B. DOOLIN, CSR, RPR, DO HEREBY CERTIFY
    THAT THE FOREGOING IS A TRUE AND ACCURATE
12  TRANSCRIPT OF PROCEEDINGS HAD IN THE ABOVE-
    ENTITLED CAUSE.

13

14

15

16

17

18

19

20

21

22

23

24

25