In the United States Bankruptcy Court
for the Northern District of Illinois
Eastern Division

In Re:
Robert M. Kowalski,
    debtor.

Case No 18-09130

chapter 7

Hon Jacqueline P. Cox

Emergency Motion to Purge and/or Otherwise Stay order of contempt dated 3-20-2019 and continued by Order of April 3, 2019.

Now comes Robert M. Kowalski (debtor) in support of his motion states as follows:

1. There are impermissable unconstitutional levels of prejudice stemming from several sources have arisen and underlie these contempt findings.

IMPROPER EX PARTE COMMUNICATION

2. At a divorce court hearing in June 2018, Cook County domestic Relations Circuit Court Judge William Stewart Boyd indicated on the record that he was familiar with Judge Cox. He stated that he would provide several documents to the Federal Bankruptcy Judge so that debtor could be "sanctioned".

RACIST?

3. At a bankruptcy proceeding during October 2018, while arguing to hold debtor in contempt, Mr Rein for FDIC-R and Trustee Mr Paloian argued on the record that debtor was a RACIST!?

4.) <u>Adnan Khosoghi Effect</u>: During another Rule 2004 bankruptcy examination in October 2018, at offices of Horwood, Marcus, + Berk disruptions occurred. The tag team of counsel for FDIC-R mr Rein and conflicted trustee mr Paloian conspired to intimidate and harass hapless debtor. In particular, Mr Rein deliberately, continually and otherwise frustrated debtor's effort to fully answer each question propounded. At last exasperated Trustee Paloian intercepted, menaced and hindered debtors attempt to pour a glass of water. The transcript from that mornings testimony and Freudian slip while testifying at a subsequent bankruptcy hearing confirm conflicted Trustee's intention was to provoke a stand off confrontation with debtor.

<u>Executive Committe Strikes</u>

5.) An executive committee ex parte order, based upon extra judicial information, was entered on October 30, 2018 relative to debtor by Chief Judge Castillo. This order cryptically begins: "It has come to our attention Robert Kowalski is loud and disruptive". The order does not reflect what the members of the ~~commi~~ executive committe consisted of, nor what evidence was considered, or even from what source. Debtor requested information of the chief Judge. After receiving an evasive response debtor brought a motion to vacate such order. Without supplying any rationale whatsoever Judge Castillo on behalf of the mysterious star chamber "Executive Committe", simply denied my motion without explanation.

(5) cont.

Clearly, the genesis of the "Executive Committee" order came from government agents of the FDIC-R, Mr Rein and the conflicted Trustee Mr Paloian. This "executive committee" order compelled debtor to suffer a U.S. Marshall escort whenever at a U.S. Courthouse in Northern Illinois. More ominously the order, which has been woven into the bankruptcy (lower court) docket, predisposes the bankruptcy judge to rule against me. Otherwise she might also incur the wrath of this nameless faceless group of senior most powerful judges in the district. The ex parte order stemming from a secret proceeding is violative of the 1st, 4th, 5th, 6th, 7th, 8th and 14th Amendments to the Constitution. The executive committee did not respect the "automatic stay" nor request permission of the bankruptcy court prior to instituting its phantom, closed door, private judicial proceeding. This rogue order contaminates every single matter debtor has pending before a Federal Court in Northern Illinois. At a stroke it has rendered venue of this case inappropriate in Illinois. In apparent fear of her supervising judges the bankruptcy judge has abdicated her role as neutral finder of fact. Rather than face the backlash similar mystery justice. The executive order alerts the bankruptcy judge how she better rule or risk consequences.

(6) Prior Contempt "Punishment"

In accord with the mandated directive from the Executive committee, Judge Cox entered prior civil contempt orders, reflecting explicitedly that: Each debtor had been incarcerated for civil contempt on two prior occasions to "Punish". The first order was entered in November 2018 and thereafter on February 21, 2019. On both occasions bankruptcy court improperly allowed the FDIC proceed with a Rule 2004 examination. However in light of adversary petitions having been filed these examinations could only be conducted under Federal Rules of Evidence rather than bankruptcy rules. The excessive months long fishing expedition provided by never ending incessant extensive length of 2004 exam undermines debtor's ability to gain a fresh start. Forcing an attorney debtor to relinquish client confidences in exchange for his freedom exposes clients. This makes it most likely that such clients will seek other counsel. The information disgorged by attorney debtor exponentially exceeded that required by original subpoena.

The unfairness is further when FDIC-R was able to reschedule 2004 its 2004 examinations at will and without prior notice, whereas debtor was compelled to suffer increased incarceration at the hands of FDIC-R's hordes of attorneys who were only too pleased to allow debtor languish in his cell. The civil contemnor must be able to hold the keys to his own cell. The purge should never had rested within the pleasure of the FDIC-R nor the not disinterested Trustee. Clearly the court could have allowed a less drastic draconian means of compelling an attorney debtor contemnor. For instance bail or home-monitoring should have been considered. Any notion of a fresh start withers completely when attorney debtor is under confinement. Additionally, there is damage incurred by clients suddenly bereft of their attorney.

(7)

## Conflicted Trustee Not Disinterested:

Mr Paloian can not fulfill his role as trustee when he is exclusively working to benefit FDIC-R. It is simply outrageous that would fail to investigate and has otherwise abandoned any and all claim against the FDIC-R. The FDIC-R is collecting upon a massive fraud and falsification scheme based from a failed bank. If it wasn't for these fraud based claims the estate has a considerable surplus value. The trustee would not have to dig deep to locate the fraud in FDIC-R's claims. FDIC-R has included amounts for properties sold many years ago. The trustee reflects bias and prejudice when he accepted the FDIC-R bribe in the amount of a nearly $100,000 priority loan. FDIC is normally in the deposit insurance not the loan making business.

The Trustee has fiduciary duties to the estate that consist of more than simply working to benefit one fraud based client-creditor. Nevertheless, benefitting its large existing (FDIC) client is the only motivation our trustee Mr Paloian possesses. It is illustrative that the not disinterested Trustee did not follow bankruptcy rule 9029-4B when pursuing attorney disciplinary proceedings against beleaguered debtor. Neither did he ask the bankruptcy judge to lift the "Automatic Stay" prior to contacting A.R.D.C. relative to debtor. In his haste to please his buddies at FDIC-R Trustee Paloian entirely glossed over the requirement of confidentiality pursuant to -4(A).

(8.) <u>Hostage Taking</u>

On April 3, 2019 Counsel for FDIC-R, Mr Rein expressed his belief that Jan Kowalski held certain funds during cross-examinations admitting debtor did not possess any funds. The order of March 11, 2019 reflects that Jan Kowalski had "direct" control over such funds. It is hardly lawful to hold a debtor <u>hostage</u> in order to compel another. This simply is more punishment of debtor.

(9) <u>OFFICE RANSACKING VANDALS</u>

On February 20, 2019 Trustee Paloian directed his minions to break and enter the law office of Jan Kowalski McDonald, Attorney. These agents were seen: changing locks, inspecting files, boxing up files with legal materials, removing files, removing equipment, and other property from the attorney's law office. This ransacking was done without any order of court whatsoever. For good measure, trustee's team was observed enjoying alcoholic beverages from JMS stock. And while viewing sports on office T.V.

(10) <u>Home Invasion</u>

Trustee invaded debtor's home at 1707 S. Newberry, Chicago, in late January 2019. Trustee changed locks before and without bankruptcy court permission. Upon complaint of debtor, court granted "retroactive" permission to Trustee. All debtor's personal property and files were taken into "inventory". However no inventory has been forthcoming and it is likely debtors personal effects have been misappropriated. These harsh measures dim any prospect of debtor obtaining a fresh start.

### Debtor does Not Own Gun!!

(11.)

During a February 21, 2019 bankruptcy court proceeding; Mr Paloian blurted out on the record that debtor, while disturbing his office invasion at Jan Kowalski's law office, had brandished a gun. Mr Paloian waved about and attempted to tender to the court a flash drive containing a video of the purported occurrence. At that time the court did not take the video into evidence nor did Judge Cox otherwise view the material?? Debtor objected to this suggestion of a weapon! Rather debtor and his divorce attorney, Mr Frank Avila witnessed trustee's agents tearing apart Jan Kowalski's office. At a later court date Mr Avila testified before the bankruptcy court confirming that debtor did not possess any weapon then or at any other time. Notwithstanding, Judge Cox leaped to a conclusion, during the April 3, 2019 bankruptcy court record that debtor had a gun that night. Judge Cox continued debtor's incarceration.

(12.) ### Silence

The contempt incarceration has been implemented to silence and control debtor. Depriving debtor of access to court effectively prevents Appellate jurisdiction. Upon jailing, debtor has several related bankruptcy appeals pending. Debtor has not been allowed while incarcerated to pursue and perfect his appeal rights. Nor has he been allowed to participate in these appealed matters heretofore pending.

(13.) **No Representation of Debtor = (equals) No Due process**

On the very same date that Judge Cox ordered my incarceration, she allowed my private attorney to withdraw. This well respected attorney had been subjected to relentless threats and intimidation from the trustee Paloian. This has rendered me a pro-se litigant without any tools. The U.S. Marshall does not allow court access, nor are any bankruptcy materials or case law available. The office of the Federal Public Defender ought to have been appointed to represent debtor under these exceptional circumstances. One had been appointed for Kenny "G" Gharib in Case No 8:11-bk-24750-TA in the central District of California.

The rules provide that: unless order for contempt provides otherwise, should confinement be ordered the place of confinement will be either the MCC or Winnebago county jail Rockford. I have been detained in Kankakee county. The U.S. Marshall has not complied with administrative orders for case management of the bankruptcy court. In particular, "all petitions and other documents must be filed in electronic format via the system". Access to system has been illegally divested from me. Further the U.S. Marshall service has detained me in a manner constitutionally prohibited. One hardly has the keys to his own cell while unable to communicate effectively. Due process becomes a mockery where there becomes no opportunity to respond!

(14) "Cover up"

On November 6, 2018 the Inspector General of the Department of the Treasury issued his findings relative to the failed bank: Washington Federal Bank for Savings. He cited MASSIVE FRAUD and FALSIFICATION by the bank president and its employees. The bank president died shortly after the FDIC shuttered the bank. These suspicious circumstances of this death, hanging suicide while seated in a chair, without note are peculiar. Further this manner of death strongly suggests that this suicide was in the nature of an "assisted" death. The extent of the loss at the bank was reported at 84.7 million dollars. Also the report blamed the FDIC for failing to notice certain red flags over a several year period. Apparently this small sized bank was used as a FDIC training ground.

This huge loss represented nearly half the stated assets of the bank. The bank didn't merely collapse, it imploded! Formerly the bank had not reported even a single loan loss for at least eight years preceding the failure. It is clear now in retrospect, that such perfection was built upon a massive thin lie. However, the unprecedented scale supports that it was impossible for someone at FDIC not to have been involved as part of the scheme, a coconspirator. Despite my repeated requests, pleas, and subpoenas to bring transparency, the FDIC-R has been unwilling to shed any detail for their 27.5 million dollar claim. Incredibly, even a cursory prima fascia review of FDIC-R claim contains amongst other things that long ago paid off loans from closed sold homes are included. The FDIC-R can not continue to operate a fraudulent loan scheme when

(14 cont.)

it has knowledge the massively FRAUDULENT bank falsified records. The special vehemence in pursuing a hapless debtor would suggest FDIC knows it is engaging in a coverup.

Rather than acknowledging its role in the failed bank and curing inadequacies cited by the Inspector General. The FDIC-R has conducted a witch hunt upon a hapless debtor to "cover up". Rather than admit its lax policies allowed a member bank to victimize the public, FDIC-R is desperately seeking a scapegoat. Toward these ends FDIC implemented charges against debtor by initiating, signing a criminal complaint. Having several adversary matters pending renders further 2004 examinations targeting debtor's family pure misguided harassment. Amazingly, FDIC-R has even taken control of debtor's vehicle after his arrest and conducted a warrantless search seizing property. Meanwhile the real criminal masterminds must still be safely ensconced at FDIC-R. Keeping debtor on the sidelines incarcerated ensures that no one will be able to effectively complain of or expose their wrongdoing.

(15.) <u>Impossibility of Purge</u>

The court has no authority to punish debtor. Two circumstances exist that transform order incarcerating for contempt into punitive. One is where it is impossible for this debtor to purge. Second is where there is no reasonable possibility that debtor could ever pay nor any substantial liklihood purge could be forthcoming. The orders entered acknowledge that such funds are beyond direct control of debtor. Then there is considerable evidence of trustees agents breaking and entering into the law office of Jan Kowalski. The extensive search turned office upside down. Many articles have disappeared in the course of this incursion. The Chicago Police has been called upon to investigate. This incarceration becomes punitive when it "loses the ability to secure compliance".

(16) <u>Fifth Amendment</u>

The bankruptcy court may not continue to coerce debtor. The very same matter that is the subject of the bankruptcy contempt order forms a criminal complaint. The fifth (5th) Amendment provides amongst other things: "nor shall a person be compelled in any criminal case to be a witness against himself". The keys that would unlock my civil contempt jail cell would be the very same that lock my "criminal" jail cell.

Wherefore, the debtor respectfully requests that the court enter an order authorizing:

(1) Transfer of this case to a non-prejudiced Judge
(2) Marshall to release Robert M. Kowalski from incarceration immediately.

Respectfully Submitted,

Robert M. Kowalski

**United States Bankruptcy Court**
**Northern District of Illinois**

Jeffrey P. Allsteadt, Clerk of Court



Date: 04/18/2019

ROBERT M KOWALSKI
1701 S NEWBERRY AVE
CHICAGO IL 60608

**Letter to Filer:**

Case Number, *if applicable*: 18-09130
Case Name, *if applicable*: ROBERT M KOWALSKI

### RETURN CHECK /MONEY ORDER/CASHIER'S CHECK

☐ Unsigned

☐ Debtor(s) or Company check unacceptable

☐ No fee is required

☐ OTHER: Please refer to last page – ADDITIONAL INFORMATION section.

### NEW BANKRUPTCY CASE

We were unable to process your case because the following documents are missing and required at case opening:

☐ Voluntary Petition (Official Form 101 or 201)

☐ No form of payment (one of the following is required)
- Full Filing Fee
- Application/Order for Individuals to Pay the Filing Fee in Installments (Official Form 103A)
- Application/Order to Have the Chapter 7 Filing Fee Waived (Official Form 103B)

☐ OTHER: Please refer to last page – ADDITIONAL INFORMATION section.

### CORRECTION(S) REQUIRED

☐ Alias Summons:

☐ Amended Adversary Complaint:

☐ Adversary Proceeding Coversheet:

☐ Amended Petition to Correct:

Letter to Filer – Page 2

☐ Motion to Redact and Proposed Order[1]

☐ **OTHER: Please refer to ADDITIONAL INFORMATION section below.**

**DEFICIENCY** – Please make all necessary corrections to the document(s) listed below:

☐ Amended Schedule/List of Creditors is deficient for payment. Please submit payment.
☐ Motion is deficient for payment. Please submit payment.
☑ Notice of Motion – please complete and submit.
☑ Proposed Order – please complete and submit.
☐ **OTHER: Please refer to ADDITIONAL INFORMATION section below.**

**INFORMATION**

☐ **CREDIT BUREAU** – The bankruptcy court does NOT perform any activities with the credit bureaus. You must contact the individual credit bureaus for their procedure for removing your bankruptcy filing from their credit report.

☐ No record of the case name or number exists in our court; therefore we cannot process your request and we're returning the enclosed documents to you.

☐ Case name/number is missing. Please provide the case name/number.

☐ There are several debtors listed. Please provide the correct case number.

**ADDITIONAL INFORMATION:**

---

[1] A motion to redact personal information prohibited under Fed.R. Bankr. P. 9037(A) should be filed without notice of motion and without serving other parties. The motion must be accompanied by a redacted version of the filed document and a proposed order requiring the clerk to substitute the redacted document for the un-redacted document. A proposed order can be found on the courts website http://www.ilnb.uscourts.gov under Forms/Local Bankruptcy Forms titled Order to Redact. We are attaching a sample of the order.

**IF APPLICABLE**
Include the name of the debtor/joint debtor, the case number, the signature of the debtor/joint debtor on all required documents.

Include the signature of the attorney representing the debtor/joint debtor.

**FORM OF PAYMENT REQUIREMENT** – Cashier's check or money order payable to **Clerk, U. S. Bankruptcy Court**.

**Mail the required document(s) or payment listed above, including this Letter to my attention at:**
United States Bankruptcy Court, Eastern Division, 219 S. Dearborn, Chicago, IL 60604

Deputy Clerk   DAPHNE WILLIAMS

Contact Number   (312) 435-5682

Updated: 11/22/2017