# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>ROBERT M. KOWALSKI,<br><br>                    Debtor. | Case No. 18-9130<br>Chapter 7<br>Honorable Jacqueline P. Cox |

**FDIC, AS RECEIVER FOR WASHINGTON FEDERAL BANK FOR SAVINGS' REPLY TO CLAIMANT SWANSON MARTIN & BELL LLP'S RESPONSE TO FDIC-R'S AMENDED OBJECTION TO CLAIM NO. 29**

FDIC as Receiver for Washington Federal Bank for Savings ("FDIC-R"), pursuant to 11 U.S.C. § 502 and Federal Rule of Bankruptcy Procedure ("FRBP") 3007, respectfully submits this reply (the "Reply") to Swanson Martin & Bell LLP's ("Claimant" or "Swanson") Response ("Response") to FDIC-R's Objection to Claim No. 29 (the "Claim"). In support thereof, FDIC-R states as follows:

### I. Attorneys As Claimants Under § 101(14A)(A)

1.      Claimant's[1] Response affirms that no binding precedent exists holding attorneys are included as claimants under § 101(14A)(A).

2.      FDIC-R reasserts that § 101(14A)(A) is, under the statute's plain language, an exhaustive list excluding attorneys.

3.      In any event, if attorneys can be claimants, Swanson fails to satisfy any of the three *Trentadue* factors for attorneys' fees to constitute domestic support obligations.

---

[1] FDIC-R is simultaneously prosecuting objections to Swanson's Claim No. 29 and Geraldine Holt's (another Padilla divorce attorney) Claim No. 30. Ms. Holt filed no response to FDIC-R's amended claim objection [Dkt. No. 744], which was due May 7, 2020, so FDIC-R replies only to Swanson's Response. That being said, both claims emanate from the Divorce Judgment, and any FDIC-R argument grounded in the Divorce Judgment is equally applicable against both claims.

1

## II. The Claim is Not A Domestic Support Obligation

4. As previously stated in the Objection and Response, the Seventh Circuit[2] utilizes a three-part test to determine if a state court intended for attorney's fees to be support.

5. The three *Trentadue* factors which must be analyzed "to determine the intent of a state court" are:

   a. The language and substance of a judgment in the context of the surrounding circumstances;

   b. The parties' financial circumstances at the time of the judgment; and

   c. The function served by an obligation at the time of the judgment.[3]

6. Also, "[t]he critical and principal inquiry is whether the intent of the divorce court and the parties was to provide support[.]" *In re DeKroon*, 593 B.R. 778, 782 (Bankr. N.D. Ill. 2018).

*a. Language and Substance in Context of Surrounding Circumstances*.

7. The Response largely ignores the language and the substance of the Divorce Judgment,[4] and focuses on the surrounding circumstances. For clarity, FDIC-R shall address each aspect individually.

   *i. The Divorce Court's Language*.

8. The Divorce Court's language is inconsistent and contradictory.

9. Although the Claim is now incorporated into the Divorce Judgment (attached as Exhibit A), the Claim stems from fee awards in three Divorce Court orders dated January 24, 2019

---

[2] *See Trentadue v. Gay (In re Trentadue)*, 837 F.3d 743 (7th Cir. 2016).

[3] *Id.* at 749.

[4] Capitalized terms not defined herein shall have the same meaning as attributed in FDIC-R's Objection [Dkt. No. 743] and FDIC-R's Amended Objection [Dkt. No. 835].

(the "Orders" attached as Exhibit B). All three Orders labelled the fee awards as "sanctions non-dischargeable in bankruptcy." *See* Ex. B.

10. Later in the Divorce Judgment, these fee awards, while still being labelled sanctions[5], were also "domestic support obligations" under both § 523(a)(5) and (15), although debts under § 523(a)(15) and "domestic support obligations" are mutually exclusive. *See* Ex. A at ¶ 6(g)-(i).

11. Section 523 lists nineteen exceptions to discharge, and only two, subsections (a)(5) and (a)(15), apply to divorce proceedings. The Divorce Court applied both § 523(a)(5) and (a)(15) to different portions of the Claim, and all indications are these applications were intentional.

12. In its Response, Claimant states the Divorce Court's § 523(a)(15) determinations are somehow a "red herring" (Response at ¶ 26) from the Divorce Court's true intent to provide support. But, by the same logic, the Divorce Court's post hoc determination that the sanctions are also domestic support obligations would also be a red herring, providing a distraction from the Divorce Court's intent to sanction the Debtor.

13. In total, the Divorce Court simultaneously labelled the fee awards: sanctions; domestic support obligations; and debts from divorce proceedings that are not domestic support obligations.

14. The Divorce Court's language is irredeemably ambiguous and provides no insight into its intent.

15. Fortunately, "a federal court is not bound by labels a state court attached to an obligation." *Trentadue,* 837 F.3d at 748.

---

[5] *See* Ex. A at ¶6(h) "related to the award of attorneys' fees and costs to [Padilla] for the defense of the false and misleading pleadings and associated **sanctions**." *See also Id.* at ¶6(i) "for **sanctions** for his tendering of an inaccurate and misleading financial affidavit." (emphasis added).

5305187/1/13664.008

*ii. The Substance of the Divorce Judgment.*

16. The Divorce Judgment separates the Claim into three parts. The First part identifies that $13,912.50 of the Claim arises under 750 ILCS § 5/508(b). (*See* Ex. A at ¶ 6(g)).

17. The substance of § 508(b) focuses entirely on a noncomplying party's misconduct, and orders payment of fees of the prevailing where "failure to comply with the order of the court was without compelling cause or justification[.]" 750 ILCS § 5/508(b).

18. This statute, unlike 750 ILCS § 5/503(j), discussed *infra*, does not contemplate the other party's finances, or provide protection or support for the other party, only punishment for the noncomplying party.

19. The Response did not address how a § 508(b) award could be construed as support or protection.

20. The second part identifies $2,625.00 is owed under Illinois Supreme Court Rule 137.

21. Any award under Rule 137 is labelled a sanction. *See* Illinois Supreme Court Rule 137(d).

22. Claimant did not address how Rule 137 sanctions could be construed as support or protection.

23. For the third and final part, $50,256.46 was ordered as "sanctions for his tendering of an inaccurate and misleading financial affidavit." (*See* Ex. A at ¶ 6(i)).

24. The Divorce Court, both before and during labelling it a domestic support obligation, substantively declared this portion a punishment.

4

25. Claimant does not address why the Divorce Court's repeated assertion that the third portion is a punishment should be superseded by the new "domestic support obligation" label, glossing entirely over this language and focusing only on the Divorce Court's revisions.

26. The substance of the fee awards is unequivocally to punish the Debtor.

*iii. The Surrounding Circumstances*.

27. Claimant focuses its first *Trentadue* factor analysis on the Claim's surrounding circumstances, declaring them "more compelling than the circumstances in *Trentadue*." (Response at ¶ 24.)

28. In *Trentadue*, the divorce court ordered the debtor to pay a large portion of his ex-wife's attorney fee to "ensure [the divorce court's] handiwork in determining that the couple's [six] children had adequate financial support was not disturbed by Trentadue's scorched-earth approach to the litigation." *Trentadue,* 837 F.3d at 749.

29. In the instant case, the Debtor and Padilla have three emancipated children and one 15-year-old child. (Ex. A at ¶ D, p. 1-2.)

30. Pursuant to the Divorce Judgment, the Debtor will pay Padilla, in addition to statutory child support and 75% of all educational fees, over $66,000 in reimbursements, and a $6.5 million dissipation claim. (*Id.* at ¶ 2(c)-(r); ¶ 3(i).)

31. The Claim constitutes less than 1% of Padilla's total award and, if made payable to Padilla, could not be construed as impinging the minor child's adequate financial support.

32. In *Trentadue*, the divorce court awarded $25,000 to the ex-wife after examining her entire attorney fee, reasoning this amount was roughly half of all her fees.

33. In the Divorce Case, the Claimant can only cite "implicit demonstrat[ions]" (Response at ¶ 30) and "reasonable inferences" (*Id.* at ¶ 31) that the Divorce Court considered Padilla's finances. Even these strained extrapolations are not related to the Claim.

34. The Divorce Judgment never discusses Padilla's finances or her total attorney fee, in the attorney fee award sections or elsewhere, and indeed orders her to pay her entire legal bill excepting the Debtor's sanctions. (Ex. A at ¶ 6(a).)

35. Accordingly, the surrounding circumstances provide no indication that the Claim provides support to Padilla.

***b. Parties' Financial Circumstances***.

36. Claimant's Response notwithstanding, FDIC-R re-asserts that nothing indicates the Divorce Court considered Padilla's financial situation when it awarded punitive damages to Swanson.

37. Claimant points to the division of school expenses, and Padilla paying her own attorney's fees and health insurance as instances where Padilla's finances were considered. (Response at ¶ 30.)

38. Again, these references are to a wholly different section of the Divorce Judgment than the fee awards and if anything, indicate that Padilla can provide support independent from the Debtor.

39. Accordingly, to the extent the parties' financial circumstances were considered, the final determination was Padilla could afford her own legal bill, as well as a significant portion of the children's school expenses.

40. Most importantly, Padilla waived any hearing for contribution under 750 ILCS § 5/503(j). (Ex. A at ¶ 6.)

6

41. Section 503(j) of the Illinois Marriage and Dissolution Act ("IMDA") "permit[s] a circuit court to order a party to contribute to the other party's reasonable attorney fees in light of the parties' respective financial situations. A party seeking an award of attorney fees must show that he or she is unable to those pay fees and the other party is able to do so." *In re Marriage of Evanoff,* 2016 IL App (1st) 150017, 56 N.E.3d 547, 561. (internal citations omitted).

42. Accordingly, by waiving any right to a hearing under § 503(j), Padilla elected not to make her financial circumstances a factor in splitting her attorney's fees with the Debtor.

43. Conversely, fees ordered under 750 ILCS § 5/508(b) do not take the parties' finances into account, and only contemplates whether one party's "failure to comply with the order or judgment was without compelling cause or justification." 750 ILCS § 5/508(b). The statute imposes a punishment for improper conduct.

44. Claimant also notes that the fee awards are lump sum obligations (Response at ¶ 31) but fails to explain how this relates to the issue of support, only stating that Padilla would have a lump sum obligation. Indeed, it appears Padilla has lump sum obligations, and Padilla chose for the Divorce Court not to examine her finances to potentially split her fees with the Debtor.

45. The Debtor has already committed to paying Padilla millions. Support and protection simply did not enter the Fee Award's equation. The parties' finances are not referenced in the fee awards and the Divorce Court did not hesitate to order Padilla to pay her entire legal bill, with the sole exception of these sanctions.

46. Here, the facts mirror *In re Lopez,* 405 B.R. 362 (Bankr. S. D. Fla. 1998) and *Estate of Mayer v. Hawe*, 303 B.R. 375 (E.D. Wis. 2003). In both *Lopez* and *Mayer*, the state court fee awards did not constitute domestic support obligations because, like the instant case, the awards were based on one party's misconduct and the state courts did not analyze the parties' finances.

47. Accordingly, the Divorce Court's lack of examination of the parties' financial circumstances presents a stark contrast from the *Trentadue* case and the second *Trentadue* factor is not satisfied.

***c. The Function of the Obligation***.

48. Swanson avers the Fee Award's function was to "restore [Padilla] and her children for the unnecessary fees that she incurred," (Response at ¶ 36) and "protect their interest by placing them in the same position if the misconduct had not occurred." (Response at ¶ 40.)

49. But, Padilla incurred no fees. Claimant inaccurately states that "[Padilla] remains secondarily liable for such fees and costs in the event Debtor fails to pay them to Swanson." (Response at ¶ 18.)

50. The Divorce Judgment says nothing of the sort, instead it repeatedly states the Debtor is "**solely** responsible for direct payments[.]" (Ex. A at ¶6(g)-(i).) (emphasis added.)

51. Padilla, on the other hand, "shall be reimbursed by [Debtor] for any and all collections efforts associated with the attorney's fees and costs contained with the court order of January 24, 2019." (*Id* at ¶ 6(j).)

52. This Divorce Judgment does not give Swanson the ability to collect the Claim from Padilla. Claimant can charge Padilla for its time spent collecting from the Debtor, which Padilla in turn can collect from the Debtor.

53. Claimant's fee award restores nothing. Neither Padilla nor the children were harmed by Debtor's misconduct. The fee award does not affect their position before or after the misconduct, because the misconduct had no effect on Padilla.

8

54. Claimant also states, "the attorney fee awards directly related to child support and the financial circumstances of Debtor[.]" (Response at ¶ 35.)

55. Padilla emerges from her divorce proceedings with, *inter alia*, $2,051.50 in monthly child support, 75% of the college fees paid, over $66,000 in reimbursements, and $6.5 million for dissipation.

56. The Claim is not directly related to child support, rather it is directly related to Debtor's discovery abuse and noncompliance with court orders and are wholly untethered from support. The Claim's function is a punishment for discovery abuse.

### III. Conclusion

57. In *Trentadue*, the debtor argued the attorney fees he was ordered to pay was a punishment and not support. The Seventh Circuit ruled that it was support, effectively holding that punishments are not domestic support obligations.

58. Here, the Claim is plainly a punishment, and despite Swanson's contentions, there is no basis to characterize any portion of the Claim as support.

59. The Divorce Court's language is inapposite, and the substance and surrounding circumstances all indicate punishing the Debtor. The financial circumstances paint a picture of an economically stable ex-wife, and the Claim's function is not to protect the spouse, but to compensate the Claimant for its work.

WHEREFORE, FDIC-R respectfully requests this Court to enter an order recharacterizing Claim No. 30 of Swanson Martin & Bell LLP as a general unsecured claim in the amount of $66,793.96; and such other relief as the Court deems just and proper.

Dated: May 20, 2020

Respectfully submitted,

**FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR WASHINGTON FEDERAL BANK FOR SAVINGS**

By: /s/ Eric S. Rein
Eric S. Rein
John W. Guzzardo
Nathan E. Delman
**HORWOOD MARCUS & BERK CHARTERED**
500 W. Madison Street, Suite 3700
Chicago, Illinois 60661
(312) 606-3200 (phone)
(312) 606-3232 (facsimile)
rrein@hmblaw.com
jguzzardo@hmblaw.com
ndelman@hmblaw.com

*Counsel for Federal Deposit Insurance Corporation, as Receiver for Washington Federal Bank for Savings*

## CERTIFICATE OF SERVICE

The undersigned attorney of record certifies that he caused a true and correct copy of the foregoing, **NOTICE OF HEARING** and **FDIC, AS RECEIVER FOR WASHINGTON FEDERAL BANK FOR SAVINGS' OBJECTION TO CLAIM NO. 30 OF GERALDINE W. HOLT, SEEKING RECHARACTERIZATION OF THE CLAIM TO GENERAL UNSECURED STATUS**, to be filed electronically with the United States District Court for the Northern District of Illinois on May 20, 2020.  Notice and a copy of this filing will be served upon all counsel of record by operation of the Court's CM/ECF electronic filing system.

By:/s/ Eric S. Rein

5305187/1/13664.008