## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

*F I L E D*

*UNITED STATES BANKRUPTCY COURT*
*NORTHERN DISTRICT OF ILLINOIS*

*OCT 13 2020*

*JEFFREY P. ALLSTEADT, CLERK*
*INTAKE 1*

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Robert M. Kowalski, | ) | Case No. 18-09130 |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |

## DEBTOR'S MOTION TO COMPEL TRUSTEE GUS PALOIAN TO OBJECT TO GHOST LOAN CLAIMS OF FDIC-R

NOW COMES Robert M. Kowalski, Esq., Debtor, pro se, and for his Motion To Request that Trustee examine proof of claims and object to the allowance of ***Ghost Loan Accounts*** based claim of FDIC-R pursuant to 11 U.S.C. sec 704 (5) states as follows:

### *INTRODUCTION*

Conflicted Trustee Paloian has enjoyed a non-disinterested relationship with FDIC-R. In a two-month period Mr. Paloian shared 1500 minutes discussing this cause with counsel for FDIC-R. They jointly presented many motions united. Billing records and courtroom practices reflect an unearned animus toward debtor. Discussing in length that debtor stood in pari delicto with the failed institution, rather than maintaining his objectivity. Mr. Paloian has neglected his duty to investigate the ***ghost loan account*** nature of the FDIC-R proof of claims. Mr. Paloian had ample notice of the massive fraud nature of FDIC-R claims and steadfastly failed to investigate.

### *FACTUAL BACKGROUND*

1. On December 15, 2017, the Office of the Comptroller of the Currency (OCC) closed Washington Federal and the Federal Deposit Insurance Corporation, as receiver, (FDIC-R) to succeeded to all of Washington Federal's interests.

2.   As the United Supreme Court stated: the FDIC-R as receiver ***"steps into the shoes"*** of the failed S&L *O'Melveny & Myers v FDIC-R 512 US 79 (1994)*.  Admittedly now, these shoes are packed full to the rim with ***ghost loan accounts,*** fictitious loan balances, false entries, deception, false representations, altered documents, inflated principal amounts and dishonesty.

3.   The massive fraud was extensively detailed by the office of the Inspection General of OCC in his audit report of November 6, 2018. At page 8 the report noted amongst other things that prior to the implosion, this was a squeaky-clean picture-perfect top number 1 rated bank stretching over several prior years. Confirmed by no less than four FDIC audits (see exhibit A). FDIC-R knew of the epic proportions of the ***ghost loan accounts***.

4.   Yet Strangely out of control, FDIC-R has recklessly maliciously continued to prosecute collection efforts on loans they term ***ghost loan accounts***. Going so far as to tout itself as debtor's largest creditor. Entirely in bad faith knowing that its claims represent mere ***ghost loan accounts***.

5.   On August 27, 2020, the Special May 2019 Grand Jury amongst other things, charged that the employees, officers, and directors of Washington Federal Bank for Savings had undertaken the following (***ghost loan account)*** activities (see exhibit A):

a.) Accounted and caused to be accounted for embezzled funds by including them in the balance of the purported loan accounts maintained for the purpose of disguising the nature and extent of the embezzlement (***ghost loan accounts***).

b.) Periodically rebalanced and caused to be rebalanced the amounts of the embezzled funds attributed to the purported loans and to the (***ghost loan accounts)*** in order to conceal the nature and extent of the embezzlement.

2

c.) Accounted for interest payments advanced to the purported loans and certain non-performing loans by adding those payment amounts to the principal balance of the (***ghost loan accounts***).

d.) On or about February 27, 2015 Alicia Mandujano reduced the principal amount of debtor's (***ghost loan accounts***) by approximately $2.3 million dollars through accounting entries labeled as "principal only receipts" which inflated the principal amount of thirteen other loans related to debtor by the same amount.

e.) On or about October 1, 2014 Alicia made a corresponding entry of a $100,000 loan distribution to one of debtor's (***ghost loan accounts***).

f.) On or about March 19, 2015, defendant Alicia Mandujano, at the direction of Individual A, generated four checks from one of Washington Federal's operating accounts totaling approximately $54,513 and payable to the Cook County Clerk for payment of real estate taxes on properties beneficially owned by debtor, and made corresponding accounting entries showing principal distributions on two (***ghost loan accounts***) related to debtor.

g.) Provided ***false loan*** lists to the Federal Home Loan Bank for the purpose of pledging collateral for financing from the (FHLB), which loan lists, included ***false borrower identities and payment histories***.

h.) Provided and caused to be provided false trial loan balances to the OCC, which trial loan balances contained false information about Washington Federal's loans, including the identity of the borrower, ***fictitious loan balances***, and payment histories, and omitted purported loans associated with debtor and others.

i.) Altered and caused to be ***altered internal loan documents***, including appraisals, prior to the review of those documents by examiners from the OCC.

j.) Entered into the books and records of Washington Federal as income the purported interest payments made on the ***purported loans*** through the advancing of payments, which caused the bank's income to be inflated in the bank's books and records, concealing Washington Federal's true financial condition.

k.) Caused ***false entries*** in the books, reports, and statements of Washington Federal.

l.) ***Fraudulently*** created false notes, loan modification, agreements, and other loan documents to make it appear that the ***purported loans*** were properly documented.

m.) Made ***false entries*** and documents in Washington Federal's records to support insider loans.

n.) Advanced and caused to be advanced interest payments on the ***purported loans*** to debtor to make it appear that purported loans were performing, then added the amount advanced to the balance of the purported loans.

o.) During its marathon session 2004 interrogations, Mr. Rein counsel for FDIC-R slipped and disclosed the identity to debtor of just one such ***ghost loan account*** ledger. The accounting ledger provided confirmation that the bank had received funds required per its payoff letter, from a Chicago Title real estate closing escrow. Consequently, the loan should have been paid off. Regardless, the fraudulent bank merely fraudulently resuscitated the loan as part of its ***ghost loan account portfolio***. The ledger reflected receipt from the sale of builder debtor's new home property constructed at (2943 West Jarvis, Chicago). Incredibly this payment only served to momentarily reduce the mortgage loan.

The paid off loan remains an open loan which is part of the proof of claim submitted by FDIC-R. The ***ghost loan account*** balance of which had subsequently inflated exponentially to an amount exceeding $950,000.

***p.)***The proof of claim submitted by the FDIC-R contains additional amounts from still more ***ghost loan accounts.***

## Conclusion

Fiduciary duties of the trustee include duties of loyalty and care. The magnitude of the FDIC-R ***ghost loan account***-based proof of claim requires attention so that assets of the estate are not squandered.

WHEREFORE, debtor Robert M. Kowalski, Esq., respectfully requests that this court:

A.     Require the Trustee Mr Paloian to investigate the ***ghost loan account***-based proof of claims

B.     for such other and further relief as this Court deems fair and equitable.


Dated: October 13, 2020                    Respectfully submitted,

                                           By: _____
                                               Robert M. Kowalski, Esq.
                                               1009 61st Street
                                               Chicago, Illinois 60608
                                               (630)235-5709

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 19 CR 226 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | ~~MAGISTRATE JUDGE HARJANI~~ |
| ROBERT M. KOWALSKI, | ) | Violations: Title 18, United States |
| JAN R. KOWALSKI, | ) | Code, Sections 152(1) and (8), |
| ROSALLIE C. CORVITE, | ) | 157(1), (2), and (3), 371, and 1005, |
| JANE V. IRIONDO, fka JANE V. TRAN, | ) | and Title 26, United States Code, |
| ALICIA MANDUJANO, and | ) | Sections 7203 and 7206(1) |
| CATHY M. TORRES | ) | |
| | ) | Second Superseding Indictment |

## COUNT ONE

The SPECIAL MAY 2019 GRAND JURY charges:

**FILED**

AUG 2 7 2020

**THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT**

1.      At times material to this Count:

a.      Washington Federal Bank for Savings (Washington Federal) was a savings association that was founded in 1913 and located in Chicago, Illinois. In or around December 2017, the Office of the Comptroller of the Currency (OCC) determined that Washington Federal was insolvent and that it had at least approximately $66 million in nonperforming loans. On or about December 15, 2017, the OCC closed Washington Federal and the Federal Deposit Insurance Corporation (FDIC), as a receiver, succeeded to all of Washington Federal's interests. The FDIC provided approximately $90 million to make account holders whole to the extent allowed by law.

b.      The deposits of Washington Federal were insured by the FDIC. Consequently, Washington Federal was subject to supervision by federal and state regulators and to the laws and regulations enacted to ensure the safety and soundness of the banking system. These laws and regulations required that Washington Federal create and maintain comprehensive documentation of a borrower's ability to repay a loan, the value of the collateral in

*Exhibit A*

f.      Individual A was President, Chief Executive Officer, and Chairman of the

Board of Directors of Washington Federal.

g.      Defendant ROBERT M. KOWALSKI was an attorney licensed in the State

of Illinois, with offices at 1918 West Cermak Road, Chicago, Illinois, who engaged in the

investment in and construction, management, acquisition and sale of real property individually and

through entities with which he was associated, including Indomitable LLC, Piorun Properties LLC,

Burros Blancos LLC, Mountain Duck Properties LLC, and Fulton Market Lofts LLC.

h.      Defendant ROSALLIE C. CORVITE was employed by Washington

Federal in positions which included Chief Financial Officer and Treasurer.

i.      Defendant JANE V. IRIONDO, fka JANE V. TRAN, was employed by

Washington Federal in positions which included Corporate Secretary.

j.      Defendant CATHY M. TORRES was employed by Washington Federal in

positions which included loan officer.

k.      Defendant ALICIA MANDUJANO was employed by Washington Federal

in positions which included loan servicer.

l.      Individual B was employed by Washington Federal in positions which

included Vice President.

m.      Individual C was a member of Washington Federal's Board of Directors.

3

concealed the embezzlement of at least approximately $29 million of and in the custody of Washington Federal and distributed the money to and for the benefit of defendant ROBERT M. KOWALSKI, Individual A, and others.

4.      It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, and CATHY M. TORRES, along with Individual A and Individual B, embezzled money of and in the custody of Washington Federal by transferring money to defendant ROBERT M. KOWALSKI and others, including without the required documentation and often without any documentation, and concealed the embezzlement from the FDIC, the OCC, and others by falsifying bank records.

5.      It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, and ALICIA MANDUJANO, along with Individual A, Individual B, and others, made and caused false entries in the books, reports, and statements of Washington Federal to facilitate and accomplish the embezzlement of money of and in the custody of Washington Federal for the benefit of defendant ROBERT M. KOWALSKI, Individual A, and others.

6.      It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, and CATHY M. TORRES, along with Individual A, Individual B, and others, made and caused false entries in the books, reports, and statements of Washington Federal with intent to injure and defraud Washington Federal and to deceive the OCC and the FDIC by concealing the embezzlement of money of and in the custody of Washington Federal for the benefit of defendant ROBERT M. KOWALSKI, Individual A, and others.

10.   It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, and CATHY M. TORRES, along with Individual A, Individual B, and others, fraudulently accounted for and concealed money embezzled and distributed to defendant ROBERT M. KOWALSKI and others in the books, reports, and statements of Washington Federal as distributions from the purported loans from Washington Federal, without fully documenting the purported loans and without sufficient or any collateral.

11.   It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, and ALICIA MANDUJANO, along with Individual A, Individual B, and others, distributed embezzled money to defendant ROBERT M. KOWALSKI and others in excess and in addition to the principal amounts on notes and in excess and in addition to the value of the collateral securing the purported loans.

*Distributing Embezzled Funds in the Form of Checks and Wire Transactions*

12.   It was further part of the conspiracy that defendants ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, and ALICIA MANDUJANO, along with Individual A, Individual B, and others, distributed embezzled money to defendant ROBERT M. KOWALSKI and others, and for the benefit of ROBERT M. KOWALSKI and others, in the form of checks drawn on Washington Federal's operating and loan disbursement accounts, and wire transfers of funds from those accounts.

13.   It was further part of the conspiracy that defendant ROBERT M. KOWALSKI and others solicited and received embezzled money in the form of checks drawn on Washington

*Embezzled Funds for the Benefit of Individual A*

18.     It was further part of the conspiracy that defendant ROBERT M. KOWALSKI and others used at least approximately $1.8 million in embezzled money for the benefit of Individual A, including the purchase of a Sea Ray 420 Sundancer boat named "Expelliarmus," which Individual A owned jointly with defendant ROBERT M. KOWALSKI and another individual, and payments on credit card accounts and other loans in the name of Individual A or an entity associated with Individual A.

*Falsifying Internal Bank Records to Conceal Embezzlement*

19.     It was further part of the conspiracy that defendants JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, and CATHY M. TORRES, along with Individual A, Individual B, and others, fraudulently created false notes, loan modification agreements, and other loan documents to make it appear that the purported loans under which money embezzled from Washington Federal was distributed to defendant ROBERT M. KOWALSKI and others were properly documented.

20.     It was further part of the conspiracy that defendants JANE V. IRIONDO, fka JANE V. TRAN, and CATHY M. TORRES, along with Individual A and Individual B, fraudulently altered appraisals to inflate the valuation of property for the purpose of making it appear in Washington Federal's records that the property provided sufficient collateral for purported loans for the benefit of defendant ROBERT M. KOWALSKI and others.

21.     It was further part of the conspiracy that defendants JANE V. IRIONDO, fka JANE V. TRAN, and CATHY M. TORRES, along with Individual A, Individual B, and others, made

9

26.    It was further part of the conspiracy that defendants ROSALLIE C. CORVITE and ALICIA MANDUJANO, along with Individual A and others, accounted for interest payments advanced to the purported loans and certain nonperforming loans by adding those payment amounts to the principal balance of the ghost loan accounts.

27.    It was further part of the conspiracy that defendants ROSALLIE C. CORVITE and ALICIA MANDUJANO, along with Individual A and others, entered into the books and records of Washington Federal as income the interest payments made on the purported loans through the advancing of payments, which caused the bank's income to be inflated in the bank's books and records, concealing Washington Federal's true financial condition.

*Falsifying Records Provided to Consultants, the OCC, the FDIC, and the FHLB*

28.    It was further part of the conspiracy that defendant ROSALLIE C. CORVITE, along with Individual A and others, provided and caused to be provided to consultants false information regarding loans, including to Consultant A, whose reports were provided to the OCC during examinations, which loan information was false in that maturity dates of loans were altered to conceal that the purported loans to defendant ROBERT M. KOWALSKI and others were not performing.

29.    It was further part of the conspiracy that defendant JANE V. IRIONDO, fka JANE V. TRAN, along with Individual A, Individual B, and others, provided false loan lists to the FHLB for the purpose of pledging collateral for financing from the FHLB, which loan lists included false borrower identities and payment histories.

30.    It was further part of the conspiracy that defendants ROSALLIE C. CORVITE and ALICIA MANDUJANO, along with Individual A and others, provided and caused to be provided

11

<u>Overt Acts</u>

34.    In furtherance of the conspiracy, and to accomplish the objectives of the conspiracy, defendants ROBERT M. KOWALSKI, ROSALLIE C. CORVITE, JANE V. IRIONDO, fka JANE V. TRAN, ALICIA MANDUJANO, and CATHY M. TORRES committed one or more overt acts in the Northern District of Illinois, including the following:

a.       On or about October 18, 2011, defendants JANE V. IRIONDO, fka JANE V. TRAN, and CATHY M. TORRES altered and caused to be altered appraisals for two properties owned by Individual C, which served as collateral for two mortgages at Washington Federal. Specifically, on that date, defendant JANE V. IRIONDO, fka JANE V. TRAN, sent an email to defendant CATHY M. TORRES with the two altered appraisals attached, with a note that stated, "Hi Cathy. Here are the [Individual C] appraisals.   Please let me know if any of these look awkward and I will fix it. – Jane."   The false items on the altered appraisals include inflated appraisal values and inflated values for the listed comparable sales.

b.       On or about May 30, 2013, defendant ROSALLIE CORVITE sent and caused to be sent to Consultant A an email which falsely represented the maturity dates of a number of loans related to defendant ROBERT M. KOWALSKI.

c.       On or about June 18, 2013, during an examination by the OCC, defendant JANE V. IRIONDO, fka JANE V. TRAN, sent an email to defendant CATHY M. TORRES and Individual B which stated, in part, "Please see attached.   I cannot fix the 'Supplemental Addendum' pages.   Those will need to be done with scissors and copier.   The interior photos are fixed."   Attached to the email was an appraisal for a property on S. Vincennes Avenue, which was beneficially owned by defendant ROBERT M. KOWALSKI, in which a number of items on

13

approximately $2.3 million dollars through accounting entries labeled as "principal only receipts," which inflated the principal amount of thirteen other loans related to defendant ROBERT M. KOWALSKI by the same amount.

    i.    On or about March 19, 2015, defendant ALICIA MANDUJANO, at the direction of Individual A, generated four checks from one of Washington Federal's operating accounts totaling approximately $54,513 and payable to the Cook County Clerk for payment of real estate taxes on properties beneficially owned by defendant ROBERT M. KOWALSKI, and made corresponding accounting entries showing principal distributions on two ghost loan accounts related to defendant ROBERT M. KOWALSKI.

    j.    On or about December 22, 2016, defendant JANE V. IRIONDO, fka JANE V. TRAN, sent and caused to be sent via email to the FHLB a list of loans that Washington Federal intended to pledge as collateral to the FHLB which contained false representations, including the identity of borrowers and the last date payments were made on the loans.

    k.    On or about October 30, 2017, defendant ROSALLIE CORVITE filed and caused to be filed a Call Report with the FDIC which falsely stated on Schedule RC-N that there were approximately $218,000 worth of loans that were 30-89 days delinquent and no loans that were 90 days or more delinquent, when in fact the bank had millions of dollars in loans that were more than 90 days delinquent.

## COUNT TWO

The SPECIAL MAY 2019 GRAND JURY further charges:

1.      Paragraphs 1.a. through 1.d., 1.i., and 1.j. of Count One are incorporated here.

2.      On or about June 18, 2013, at Chicago, in the Northern District of Illinois, Eastern Division,

JANE V. IRIONDO, fka JANE V. TRAN,
and CATHY M. TORRES,

defendants herein, knowingly made and caused to be made false entries in the books, reports, and statements of Washington Federal, with intent to injure and defraud Washington Federal and to deceive the OCC, any agent or examiner appointed to examine the affairs of such bank, and the FDIC, namely, defendants JANE V. IRIONDO, fka JANE V. TRAN, and CATHY M. TORRES created and caused to be created an appraisal for a property on S. Vincennes Avenue, which falsified the date of the appraisal, the interior photographs of the property, the value of comparable properties, and the appraised value;

In violation of Title 18, United States Code, Section 1005.

## COUNT FOUR

The SPECIAL MAY 2019 GRAND JURY further charges:

1. Paragraphs 1.a. through 1.d. and 1.h. of Count One are incorporated here.

2. On or about October 30, 2017, at Chicago, in the Northern District of Illinois, Eastern Division,

### ROSALLIE C. CORVITE,

defendant herein, knowingly made and caused to be made false entries in the books, reports, and statements of Washington Federal, with intent to injure and defraud Washington Federal and to deceive the OCC, any agent or examiner appointed to examine the affairs of such bank, and the FDIC, namely, defendant ROSALLIE C. CORVITE created and caused to be created a Call Report which falsely stated on Schedule RC-N that there were approximately $218,000 worth of loans that were 30-89 days delinquent and no loans that were 90 days or more delinquent, when in fact the bank had millions of dollars in loans that were more than 90 days delinquent;

In violation of Title 18, United States Code, Section 1005.

## COUNT SIX

The SPECIAL MAY 2019 GRAND JURY further charges:

1.    At times material to this Count:

    a.    Paragraphs 1.a. and 1.g. of Count One are incorporated here.

    b.    Defendant JAN R. KOWALSKI, who was defendant ROBERT M. KOWALSKI'S sister, was an attorney licensed in the State of Illinois, had an attorney trust account at Bank A, and had offices at 1918 West Cermak Road, Chicago, Illinois.

    c.    In or around November 2013, pursuant to a written agreement, defendant ROBERT M. KOWALSKI transferred his interest in 833-57 West Fulton Market Street, Chicago, Illinois to Company A and relinquished any claims against Company A relating to that property and, in exchange, Company A paid $1 million to, and forgave certain debts of, defendant ROBERT M. KOWALSKI.

    d.    In or around 2014, defendant ROBERT M. KOWALSKI created Mountain Duck Properties LLC with a nominee owner, used a portion of the $1 million received from Company A to purchase properties and then placed title to certain of those properties in land trusts in which the beneficial owner was Mountain Duck Properties LLC (the Mountain Duck Properties).

    e.    Defendant ROBERT M. KOWALSKI had a cause of action in the lawsuit *Robert M. Kowalski v. Mountain Duck Properties LLC,* in the Circuit Court of Cook County, Illinois, 17 CH 13314 (the Mountain Duck Properties Lawsuit), in which defendant ROBERT M. KOWALSKI, represented by defendant JAN R. KOWALSKI, alleged that he, and not the nominee owner, was the sole owner of Mountain Duck Properties LLC, the five related land trusts in which Mountain Duck Properties LLC was a beneficiary, and the Mountain Duck Properties.

21

The Divorce Case

j.      Defendant ROBERT M. KOWALSKI was a party to a divorce case in the

Circuit Court of Cook County, Illinois, 14 D 6997 (the Divorce Case), in which defendant

ROBERT M. KOWALSKI was represented by defendant JAN R. KOWALSKI.

k.      Under the Internal Revenue Code, alimony payments made under a divorce

or separation decree or agreement were taken as a deduction from gross income in arriving at the

payor's adjusted gross income in the year they were paid, and were taxable income for the party

receiving the alimony payments.

l.      Defendant ROBERT M. KOWALSKI was not ordered to make alimony

payments to his spouse, nor did he agree to make alimony payments to his spouse, as part of the

Divorce Case.

The Bankruptcy

m.      On or about March 29, 2018, defendant ROBERT M. KOWALSKI filed a

petition under Title 11 of the United States Code initiating a Chapter 11 bankruptcy case, *In re

Robert M. Kowalski*, 18-09130, in the United States Bankruptcy Court for the Northern District of

Illinois (the Kowalski Bankruptcy Case).

n.      The FDIC, as a receiver and the successor in interest to Washington Federal,

was the largest creditor in the Kowalski Bankruptcy case. Defendant ROBERT M. KOWALSKI's

spouse was also a creditor in the Kowalski Bankruptcy Case.

o.      The filing of a bankruptcy petition automatically stayed collection activity

by creditors against the debtor.

p.      The filing of a bankruptcy petition by a debtor created a bankruptcy estate

that included all legal or equitable interests of the debtor in property as of the commencement of

23

u.   Seven days prior to the Meeting of Creditors, a debtor was required to provide to the United States Trustee a copy of the federal income tax return filed with the Internal Revenue Service for the most recent year prior to the commencement of the case. At the Initial Debtor Interview, the United States Trustee at times required that a debtor provide additional documentation, including copies of federal income tax returns filed with the Internal Revenue Service for additional prior years.

v.   On or about April 11, 2018, defendant ROBERT M. KOWALSKI appeared at his Initial Debtor Interview and was instructed by the United States Trustee to provide copies of defendant ROBERT M. KOWALSKI's individual and corporate federal income tax returns filed with the Internal Revenue Service for the tax years 2015, 2016, and 2017.

w.   As of April 11, 2018, defendant ROBERT M. KOWALSKI had not filed with the Internal Revenue Service individual income tax returns or all required business income tax returns for tax years 2013 through 2017.

x.   On or about August 7, 2018, the Bankruptcy Court issued an order removing defendant ROBERT M. KOWALSKI as the debtor-in-possession and appointing a trustee to administer the Kowalski Bankruptcy Case (the Trustee).

y.   On or about November 26, 2018, defendant JAN R. KOWALSKI filed an appearance on behalf of defendant ROBERT M. KOWALSKI in the Kowalski Bankruptcy Case.

2.   Beginning in or around March 2018, and continuing until in or around March 2019, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT M. KOWALSKI
and JAN R. KOWALSKI,

defendants herein, devised and intended to devise a scheme to defraud, and for the purpose of executing and concealing the scheme and attempting to do so, filed and caused to be filed a petition

25

the time the petition was filed:

    a.  At least approximately $364,600 in cash equivalents;

    b.  Mountain Duck Properties LLC and the five related land trusts; and

    c.  The Mountain Duck Properties Lawsuit.

  6.  It was further part of the scheme that, on or about April 25, 2018, defendant ROBERT M. KOWALSKI filed in the Kowalski Bankruptcy Case a Statement of Financial Affairs and a Schedule A/B in which defendant ROBERT M. KOWALSKI concealed from his creditors his interests, including at least approximately $364,600 in cash equivalents, Mountain Duck Properties LLC and the five related land trusts, and the Mountain Duck Properties Lawsuit, all by intentionally omitting his interests in those properties.

Post-Filing Fraud

*Property of the Bankruptcy Estate Acquired and Concealed During the Bankruptcy*

  7.  It was further part of the scheme that, beginning in or around March 2018, following the filing of his bankruptcy petition, defendant ROBERT M. KOWALSKI continued to operate his real estate management business through business entities and opened a Debtor-in-Possession Account at Bank B, but defendant ROBERT M. KOWALSKI concealed from his creditors and the Trustee the income he obtained by not depositing income into the Debtor-in-Possession Account and by filing Periodic Reports and Monthly Operating Reports in which he did not account for a material amount of his income.

  8.  It was further part of the scheme that, from in or around March 2018 through March 2019, defendant ROBERT M. KOWALSKI collected and possessed approximately $78,800 in rent checks payable to defendant ROBERT M. KOWALSKI or bearer, which he concealed from his creditors and the Trustee by depositing the checks in the accounts of Indomitable LLC and

27

*Use of the Attorney Trust Account to Conceal Property of the Bankruptcy Estate*

14.    It was further part of the scheme that, from in or around August through October 2018, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed from defendant ROBERT M. KOWALSKI's creditors and the Trustee approximately $352,100 in cashier's checks for which defendant ROBERT M. KOWALSKI was both the remitter and the payee, by depositing the cashier's checks into defendant JAN R. KOWALSKI's attorney trust account, instead of tendering the cashier's checks to the Trustee.

15.    It was further part of the scheme that, in or around September through October 2018, defendant ROBERT M. KOWALSKI collected and possessed approximately $3,400 in rent checks payable to defendant ROBERT M. KOWALSKI, which defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI then concealed from defendant ROBERT M. KOWALSKI's creditors and the Trustee by causing the checks to be deposited into defendant JAN R. KOWALSKI's attorney trust account, instead of tendering the checks to the Trustee.

*Providing False Income Tax Returns*

16.    It was further part of the scheme that, in or around May 2018, defendant ROBERT M. KOWALSKI prepared and filed individual and business federal income tax returns with the Internal Revenue Service and then, on or about June 12, 2018, provided to the United States Trustee certain individual and business federal income tax returns which were materially false, including as follows:

a.    defendant ROBERT M. KOWALSKI's 2015, 2016, and 2017 U.S. Individual Income Tax Returns (Forms 1040 with schedules and attachments) overstated deductions and understated adjusted gross income;

29

fund the purchase of the Oak Lawn Property.

19.    It was further part of the scheme that, on or about October 12, 2018, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed from defendant ROBERT M. KOWALSKI's creditors and the Trustee approximately $75,600, which defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI caused to be wired to a title company account to fund the purchase of the Oak Lawn Property.

20.    It was further part of the scheme that, on or about September 13, 2018, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed from defendant ROBERT M. KOWALSKI's creditors and the Trustee approximately $2,500 which defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI had concealed in defendant JAN R. KOWALSKI's attorney trust account by using the funds as earnest money in an attempt to purchase 9441 South Indiana Avenue, Chicago, Illinois, in the name of a fictitious trust of which defendant ROBERT M. KOWALSKI was the beneficiary.

21.    It was further part of the scheme that, in or around September through October 2018, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed from defendant ROBERT M. KOWALSKI's creditors and the Trustee funds that had been concealed in defendant JAN R. KOWALSKI's attorney trust account by purchasing approximately $350,300 in cashier's checks payable to or for the benefit of defendant ROBERT M. KOWALSKI.

22.    It was further part of the scheme that, in or around October through December 2018, defendants ROBERT M. KOWALSKI and JAN R. KOWALSKI concealed funds from defendant ROBERT M. KOWALSKI's creditors and the Trustee through defendant JAN R. KOWALSKI depositing into her attorney trust account approximately $325,900 of the cashier's checks that defendant JAN R. KOWALSKI had purchased as described in paragraph 21 above.

31

## COUNT SEVEN

The SPECIAL MAY 2019 GRAND JURY further charges:

1.    The allegations of paragraphs 1 through 25 of Count Six are incorporated here.

2.    On or about April 25, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT M. KOWALSKI
and JAN R. KOWALSKI,

defendants herein, for the purpose of executing and concealing the above described scheme and attempting to do so, filed and caused to be filed a document, namely a Statement of Financial Affairs and a Schedule A/B, in a proceeding under Title 11, namely, a Chapter 11 bankruptcy case, *In re Robert M. Kowalski*, 18-09130;

In violation of Title 18, United States Code, Section 157(2).

## COUNT NINE

The SPECIAL MAY 2019 GRAND JURY further charges:

1.     The allegations of paragraphs 1 through 25 of Count Six are re-alleged here.

2.     On or about January 9, 2019, at Chicago, in the Northern District of Illinois, Eastern Division,

ROBERT M. KOWALSKI
and JAN R. KOWALSKI,

defendants herein, for the purpose of executing and concealing the above described scheme and attempting to do so, filed and caused to be filed a document, namely a Combined Response to Trustee's Motion For Accounting and Turnover of Estate Funds Against Jan Kowalski and Rule to Show Cause Against Jan Kowalski and Debtor, in a proceeding under Title 11, namely, a Chapter 11 bankruptcy case, *In re Robert M. Kowalski,* 18-09130;

In violation of Title 18, United States Code, Section 157(2).

### COUNT ELEVEN

The SPECIAL MAY 2019 GRAND JURY further charges:

1.     The allegations of paragraph 1.g. of Count One and paragraphs 1.m., 1.u. through 1.w., and 16 of Count Six are incorporated here.

2.     On or about June 12, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

### ROBERT M. KOWALSKI,

defendant herein, after the filing of a case under Title 11, namely, *In re Robert M. Kowalski*, 18-09130, knowingly and fraudulently falsified and made false entries in recorded information relating to the financial affairs of debtor ROBERT M. KOWALSKI, in that defendant caused to be created for the purpose of providing to the United States Trustee individual and business federal income tax returns which were materially false as follows:

a.     Defendant ROBERT M. KOWALSKI's 2015, 2016, and 2017 U.S. Individual Income Tax Returns (Forms 1040 with schedules and attachments) overstated deductions and understated adjusted gross income;

b.     Piorun Properties LLC's 2014 U.S. Corporate Income Tax Return (Form 1120S with schedules and attachments) understated income in that it did not report income that Piorun Properties LLC received in the form of funds embezzled from Washington Federal; and

c.     The Piorun Properties LLC's 2014 and 2015 U.S. Corporate Income Tax Returns (Forms 1120S with schedules and attachments) were not copies of the returns filed with the IRS;

In violation of Title 18, United States Code, Section 152(8).

37

## COUNT THIRTEEN

The SPECIAL MAY 2019 GRAND JURY further charges:

1.    The allegations of paragraphs 1.g. and 34.f. of Count One and paragraphs 1.g. and 1.h. of Count Six are incorporated here.

2.    On or about May 21, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

### ROBERT M. KOWALSKI,

defendant herein, willfully made and subscribed a U.S. Corporate Income Tax Return for an S Corporation on behalf of Piorun Properties LLC (Form 1120S with schedules and attachments), for the calendar year 2014, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on line 6 that the corporation's total income was $0, when defendant knew that the corporation received gross income in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

## **COUNT FIFTEEN**

The SPECIAL MAY 2019 GRAND JURY further charges:

1.     The allegations of paragraph 1.g. of Count One and paragraphs 1.d. through 1.h. of Count Six are incorporated here.

2.     On or about May 21, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

### ROBERT M. KOWALSKI,

defendant herein, willfully made and subscribed a U.S. Corporate Income Tax Return for an S Corporation on behalf of Piorun Properties LLC (Form 1120S with schedules and attachments), for the calendar year 2015, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on attached Form 8825, Rental Real Estate Income and Expense of a Partnership or an S Corporation, line 18a, that the corporation's total gross rents were $73,547, when defendant knew that the corporation received gross rents in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

41

## COUNT SEVENTEEN

The SPECIAL MAY 2019 GRAND JURY further charges:

1.      The allegations of paragraph 1.g. of Count One and paragraphs 1.g. and 1.j. through 1.l. are incorporated here.

2.      On or about May 21, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

### ROBERT M. KOWALSKI,

defendant herein, willfully made and subscribed a U.S. Individual Income Tax Return (Form 1040 with schedules and attachments), for the calendar year 2016, which return was verified by written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that defendant falsely represented and stated on said return:

a.      On line 31a, that defendant had paid $252,000 in alimony, when defendant knew he had not paid alimony in that amount; and

b.      On line 37, that defendant's adjusted gross income was $ - 172,308, when defendant knew that his adjusted gross income was in excess of the amount reported on the return;

In violation of Title 26, United States Code, Section 7206(1).

43

## FORFEITURE ALLEGATION ONE

The SPECIAL MAY 2019 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Section 371, as alleged in Count One of this Second Superseding Indictment, each defendant shall forfeit to the United States of America any and all right, title, and interest each may have in any property, real and personal, which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C).

2.      The property to be forfeited includes, but is not limited to, approximately $29 million.

3.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, pursuant to Title 21, United States Code, Section 853(p).

## FORFEITURE ALLEGATION THREE

The SPECIAL MAY 2019 GRAND JURY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Section

152(1), as alleged in Count Ten of this Second Superseding Indictment, each defendant shall forfeit

to the United States of America any and all right, title, and interest each may have in any property,

real and personal, which constitutes and is derived from proceeds traceable to the offense, as

provided in Title 18, United States Code, Section 981(a)(1)(C).

2.     The property to be forfeited includes, but is not limited to, approximately $567,200

and any interest in the Sea Ray 420 Sundancer boat named "Expelliarmus."

3.     If any of the property described above, as a result of any act or omission by a

defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or

deposited with, a third party; has been placed beyond the jurisdiction of the court; has been

substantially diminished in value; or has been commingled with other property which cannot be

divided without difficulty, the United States of America shall be entitled to forfeiture of substitute

property, pursuant to Title 21, United States Code, Section 853(p).


A TRUE BILL:


_____
FOREPERSON


_____
UNITED STATES ATTORNEY


47

**United States Bankruptcy Court**
**Northern District of Illinois**

Jeffrey P. Allsteadt, Clerk of Court



Date: 10/13/2020

Robert M. Kowalski
1009 61st Street
Chicago, IL 60608

**Letter to Filer:**

**Case Number,** *if applicable*: 18-09130

**Case Name,** *if applicable*:   Robert M. Kowalski

**RETURN CHECK /MONEY ORDER/CASHIER'S CHECK**

☐ Unsigned

☐ Debtor(s) or Company check unacceptable

☐ No fee is required

☐ **OTHER: Please refer to last page – ADDITIONAL INFORMATION section.**

**NEW BANKRUPTCY CASE**

We were unable to process your case because the following documents are missing and required at case opening:

☐ Voluntary Petition (Official Form 101 or 201)

☐ No form of payment (one of the following is required)
  - Full Filing Fee
  - Application/Order for Individuals to Pay the Filing Fee in Installments (Official Form 103A)
  - Application/Order to Have the Chapter 7 Filing Fee Waived (Official Form 103B)

☐ **OTHER: Please refer to last page – ADDITIONAL INFORMATION section.**

**CORRECTION(S) REQUIRED**

☐ Alias Summons:

☐ Amended Adversary Complaint:

☐ Adversary Proceeding Coversheet:

☐ Amended Petition to Correct:

Letter to Filer – Page 2

☐  Motion to Redact and Proposed Order[1]

☐  **OTHER: Please refer to ADDITIONAL INFORMATION section below.**

**DEFICIENCY** – Please make all necessary corrections to the document(s) listed below:

☐  Amended Schedule/List of Creditors is deficient for payment. Please submit payment.

☐  Motion is deficient for payment. Please submit payment.

☑  Notice of Motion – please complete and submit.

☑  Proposed Order – please complete and submit.

☐  **OTHER: Please refer to ADDITIONAL INFORMATION section below.**

**INFORMATION**

☐  **CREDIT BUREAU** – The bankruptcy court does NOT perform any activities with the credit bureaus. You must contact the individual credit bureaus for their procedure for removing your bankruptcy filing from their credit report.

☐  No record of the case name or number exists in our court; therefore we cannot process your request and we're returning the enclosed documents to you.

☐  Case name/number is missing. Please provide the case name/number.

☐  There are several debtors listed. Please provide the correct case number.

**ADDITIONAL INFORMATION:**

The two Motions that were brought in to the Bankruptcy Court by the Runner on 10/13/2020, are both missing the Notice of Motion and the Proposed Orders:

-Debtor's Motion to Compel Trustee Gus Paloian to Object to Ghost Loan Claims of FDIC-R
-Debtor's Motion to Stay Civil Bankruptcy Proceedings

Please complete and submit the Notices and the Proposed Orders as soon as possible.

Thank you.

---

[1] A motion to redact personal information prohibited under Fed.R. Bankr. P. 9037(A) should be filed without notice of motion and without serving other parties. The motion must be accompanied by a redacted version of the filed document and a proposed order requiring the clerk to substitute the redacted document for the un-redacted document. A proposed order can be found on the courts website http://www.ilnb.uscourts.gov under Forms/Local Bankruptcy Forms titled Order to Redact. We are attaching a sample of the order.

**IF APPLICABLE**

Include the name of the debtor/joint debtor, the case number, the signature of the debtor/joint debtor on all required documents.

Include the signature of the attorney representing the debtor/joint debtor.

**FORM OF PAYMENT REQUIREMENT** – Cashier's check or money order payable to **Clerk, U. S. Bankruptcy Court.**

**Mail the required document(s) or payment listed above, including this Letter to my attention at:**
**United States Bankruptcy Court, Eastern Division, 219 S. Dearborn, Chicago, IL 60604**

Deputy Clerk    Tara Collins

Contact Number    312-408-5000

Updated: 11/22/2017