**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

F I L E D
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

OCT 13 2020

JEFFREY P. ALLSTEADT, CLERK
INTAKE 1

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Robert M. Kowalski, | ) | Case No. 18-09130 |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |

## DEBTOR'S MOTION TO STAY CIVIL BANKRUPTCY PROCEEDINGS

NOW COMES Robert M. Kowalski, Esq., Debtor, pro se, and for his Motion to Stay Civil Bankruptcy Proceedings, states as follows:

### FACTUAL BACKGROUND

On December 15, 2017, the Office of the Comptroller of the Currency (OCC) undertook prompt correction action and closed Washington Federal Bank. The Federal Deposit Insurance Corporation, as receiver, (FDIC-R) succeeded to all of Washington Federal's interests. As the United Supreme Court stated: the FDIC-R as receiver *"steps into the shoes"* of the failed S&L *O'Melveny & Myers v FDIC-R 512 US 79 (1994)*. Admittedly now, these shoes are soiled and full to the rim with *ghost loan accounts,* fictitious loan balances, false entries, deception, false representations, altered documents, inflated principal amounts and dishonesty. The massive fraud was extensively detailed by the office of the Inspection General of OCC in his audit report of November 6, 2018. At page 8, the report noted amongst other things that prior to the implosion, this was a squeaky-clean, picture-perfect top number 1 rated bank stretching over several prior years. Confirmed by no less than four FDIC audits (see exhibit A, OCC report).

FDIC upon learning of the epic magnitude of the *ghost loan accounts*, unsafe, and unsound banking practices immediately closed Washington Federal. Yet Strangely, FDIC-R has recklessly maliciously continued to prosecute collection efforts on the same

loans they know are fraudulent and themselves have termed ***ghost loan accounts***. In this proceeding under oath, under penalty of perjury, two officials of FDIC-R have respectively filed, official form 410, glaringly false creditor proof of claims. In an amount exceeding 27 million dollars. Entirely in bad faith, contemptuous of this court, knowing that its underlying claims represent mere ***ghost loan accounts***. These false bankruptcy court filings are a perpetuation of the same "weakness in supervision" that the inspector general of the OCC cited in his report (exhibit A at page 8).

John Gembara, the beleaguered bank president was found dead in a bank customer's Park Ridge Illinois home on December 3, 2017. A well-crafted hang man's noose wrapped around his neck. (see exhibit B). The City of Park Ridge police report narratives concluded that he took his own life. However, debtor's Illinois Freedom of information request (FOIA) to Park Ridge police was denied in part because of an exception 7(b) exception, ongoing investigation. The method the responding officers related without more, while seated in a chair, is contrary to human survival instinct. At page 14 of their report the Park Ridge police cryptically reported that Special Agent Stephenson of the FDIC had made contact with local law enforcement. (see exhibit C) The denial of my freedom of information act request cited, exception eight, pertaining to documents of a financial institution (see exhibit C). Making contact is a code phrase that means the FDIC-R special agent was on site recovering something? Having a veil of secrecy placed on the record. With a corresponding lack of transparency, the record is silent as to the specific activities of the special agent and his rationale for squarely inserting himself into a purely local death investigation. The ghost of John Gembara cries out for justice.

On August 27, 2020, the Special May 2019 Grand Jury amongst other things, charged(see exhibit D) that the employees, officers, and directors of Washington Federal Bank for Savings had undertaken the following (***ghost loan account***) activities:

a.) Accounted and caused to be accounted for embezzled funds by including them in the balance of the purported loan accounts maintained for the purpose of disguising the nature and extent of the embezzlement (***ghost loan accounts***).

b.) Periodically rebalanced and caused to be rebalanced the amounts of the embezzled funds attributed to the purported loans and to the (***ghost loan accounts)*** in order to conceal the nature and extent of the embezzlement.

c.) Accounted for interest payments advanced to the purported loans and certain non-performing loans by adding those payment amounts to the principal balance of the (***ghost loan accounts)***.

d.) On or about February 27, 2015 Alicia Mandujano reduced the principal amount of debtor's (***ghost loan accounts)*** by approximately $2.3 million dollars through accounting entries labeled as "principal only receipts" which inflated the principal amount of thirteen other loans related to debtor by the same amount.

e.) On or about October 1, 2014 Alicia made a corresponding entry of a $100,000 loan distribution to one of debtor's (***ghost loan accounts)***.

f.) On or about March 19, 2015, defendant Alicia Mandujano, at the direction of Individual A, generated four checks from one of Washington Federal's operating accounts totaling approximately $54,513 and payable to the Cook County Clerk for payment of real estate taxes on properties beneficially owned by debtor, and made corresponding accounting entries showing principal distributions on two (***ghost loan accounts)*** related to debtor.

g.) Provided *false loan* lists to the Federal Home Loan Bank for the purpose of pledging collateral for financing from the (FHLB), which loan lists, included *false borrower identities and payment histories*.

h.) Provided and caused to be provided false trial loan balances to the OCC, which trial loan balances contained false information about Washington Federal's loans, including the identity of the borrower, *fictitious loan balances*, and payment histories, and omitted purported loans associated with debtor and others.

i.) Altered and caused to be *altered internal loan documents*, including appraisals, prior to the review of those documents by examiners from the OCC.

j.) Entered into the books and records of Washington Federal as income the purported interest payments made on the *purported loans* through the advancing of payments, which caused the bank's income to be inflated in the bank's books and records, concealing Washington Federal's true financial condition.

k.) Caused *false entries* in the books, reports, and statements of Washington Federal.

l.) *Fraudulently* created false notes, loan modification, agreements, and other loan documents to make it appear that the *purported loans* were properly documented.

m.) Made *false entries* and documents in Washington Federal's records to support insider loans.

n.) Advanced and caused to be advanced interest payments on the *purported loans* to debtor to make it appear that purported loans were performing, then added the amount advanced to the balance of the purported loans.

4

o.) During its marathon session 2004 interrogations, Mr. Rein counsel for FDIC-R slipped and disclosed the identity to debtor of just one such ***ghost loan account*** ledger. The accounting ledger provided confirmation that the bank had received funds required per its payoff letter, from a Chicago Title real estate closing escrow. Consequently, the loan should have been paid off. Regardless, the fraudulent bank merely fraudulently resuscitated the loan as part of its ***ghost loan account portfolio***. The ledger reflected receipt from the sale of builder debtor's new home property constructed at (2943 West Jarvis, Chicago). Incredibly this payment only served to momentarily reduce the mortgage loan. The paid off loan remains an open loan which is part of the proof of claim submitted by FDIC-R. The ***ghost loan account*** balance of which had subsequently inflated exponentially to an amount exceeding $950,000.

***p.)*** The proof of claim submitted by the FDIC-R contains amounts from still more ***ghost loan accounts.***

## *FDIC-R FRAUD STAY*

1.    Debtor seeks to stay the above-captioned bankruptcy proceeding pending resolution of the parallel criminal prosecution in 19CR226. Continuing with the bankruptcy proceeding subjects him to conflicting choices – namely to invoke his Fifth Amendment privilege against self-incrimination and the possible negative inferences arising therefrom, or to defend the bankruptcy proceeding and risk information herein being used in the pending criminal proceedings. Applying the relevant standards to the facts herein weighs in favor of discontinuing the bankruptcy proceeding during the pendency of the criminal prosecution.

2.    The bankruptcy court has constitutional authority to enter final orders, as "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. Section 105(a); *see also Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 162 (7th Cir. 1994). The bankruptcy court's power includes the power to grant a motion to stay a bankruptcy proceeding. *See Levey v. Systems Div., Inc. (In re Teknek, LLC)*, 563 F.3d 639, 648 (7th Cir. 1009). Accordingly, this Court has both the jurisdiction and constitutional authority to stay these proceedings. *See Layng v. Garcia (In re Garcia)*, 569 B.R. 480 (Bankr. N.D. Ill. 2017).

3.    Two pending proceedings – one criminal for bankruptcy fraud under 18 USC Sec. 152 and one for bankruptcy under chapter 11 (since converted to chapter 7).

4.    This Court has the inherent power to stay a civil case before it. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55, 57 S.Ct. 163, 81 L.Ed. 153 (1936). A "court may decide in its discretion to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions 'when the interests of justice seem[] to require such action [.]" *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) *quoting United States v. Kordel*, 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 25 L.Ed.2d 1 (1997). The ultimate question is whether the court should avoid placing the debtor/defendant in the position of having to choose between risking a loss in their civil cases by invoking their Fifth Amendment rights, or risking conviction in their criminal cases by waiving their Fifth Amendment rights and testifying/defending in the civil bankruptcy proceedings. *Cruz v. Cty. of DuPage*, No. 96 C 7170, 1997 WL 370194, at 1 (N.D. Ill. June 27, 1997); *see also Brock v. Tolkow*, 109 F.R.D. 116, 121 (E.D.N.Y. 1985)(when a litigant may have to choose between invoking a Fifth Amendment privilege in a civil case to avoid answering questions which could implicate him in a parallel criminal prosecution, such

a stay is appropriate for consideration). Continuing a civil proceeding in light of a

parallel criminal proceeding is neither unconstitutional nor improper. *Kordel*, 397 U.S.

at 12, 90 S.Ct. 763.

## Application of Cruz Stay Factors Warrants Stay of Bankruptcy Proceedings

5.     In order to determine if a stay is just and necessary and should be applied here,

the court must weigh various factors (1) whether the two actions involve the same

subject matter, (2) whether the two actions are brought by the government, (3) the

posture of the criminal proceeding, (4) the effect on the public interests at stake if a stay

were to be issued, (5) the interest of the plaintiffs in proceeding expeditiously with this

litigation and the potential prejudice to plaintiffs of a delay, and (6) the burden that any

particular aspect of the proceedings may impose on defendants. *Cruz* at 2.

6.     As to the first factor, whether the civil and criminal matter involve the same

subject, if there is significant topical overlap, the civil case might undermine the

defendant/debtor's Fifth Amendment privilege against self-incrimination by expanding

rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure

16(b), by exposing the basis of the defense to the prosecution in advance of criminal

trial, or by prejudicing the criminal case through other means. *Alcala*, 625 F.Supp.2d at

400. Where the subject matter overlaps to a significant degree, a defendant/debtor

would face a catch-22 choice between asserting her Fifth Amendment privilege and

effectively defending against the bankruptcy proceedings. *Trs. of Plumbers and*

*Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp. 1134, 1139

(S.D.N.Y. 1995).

7.     The court should compare the terms of the indictment with the facts in the

bankruptcy proceeding. A stay is warranted where the wrongful conduct alleged in the

bankruptcy proceeding is sufficiently similar to the allegations contained in the

indictment. *O'Connell v. Wells Fargo Bank (In re Julmice)*, 458 B.R. 657, 662-64

(Bankr. E.D.N.Y. 2011). Section 727 provides that a debtor shall be granted a discharge

unless the debtor has transferred, removed or concealed property of the debtor or of the

estate. 11 U.S.C. Sec. 727(a)(2). Similarly, debtor has been accused of 18 U.S.C. Sec. 152

provides that a person who knowingly and fraudulently conceals from a trustee under

title 11 any property belonging to the estate of a debtor shall be fined, imprisoned, or

both.

8.     The criminal indictment is the mirror image of the bankruptcy proceedings. The

wrongful acts in the bankruptcy are the exact same alleged criminal acts in the

indictment and include: debtor's six month discipline from practice of law, failure to

disclose a case number, and failure to disclose bankruptcy assets, mismanagement of

the estate, denial of discharge, and turnover of estate funds. The same wrongdoing in

the bankruptcy is the identical criminal acts alleged in the criminal proceedings. As a

result, the first factor remains in favor of staying the bankruptcy proceeding.

9.     As to the second factor, whether the criminal and civil proceedings are both

brought by the government, where the government is a party in both the bankruptcy and

criminal matters, a risk exists that it may take advantage of the broader rules of civil

discovery to circumvent limitations on discovery in criminal proceedings in order to

obtain information for the criminal prosecution. *Admiral Ins. Co. v. Federal Security,

Inc.*, Case No. 94C5649, 1996 WL 139243 at 1-2 (N.D. Ill. Mar. 26, 1996) (Magistrate's

Report and Recommendation). The focus is not on the agency advancing the matter,

but on the litigation itself, which is the federal government. As the federal government

is intricately involved in both the bankruptcy and the criminal indictment, the risk is

compelling. *See 140 Grant Avenue Assocs., LLC v. Garsia (In re Garsia)*, Case No. 09-22233 DHS, Adv. No. 09-02667, 2011 WL 1045295, at 3 (Bankr. D.N.J. Mar. 17, 2011). A stay is warranted when both cases are brought by the government. *Admiral*, 1996 WL 139243 at 1.

10.    The U.S. Trustee here referred criminal proceedings to the U.S. Attorney. The FDIC-R is both the largest creditor and the signatory on the information (preceding the indictment). The FDIC-R is prosecuting the criminal information. The FDIC-R initiated the criminal complaint, the FDIC-R as receiver for the failed bank Washington Federal has filed a fraudulent $27.5 million dollar claim in these bankruptcy proceedings. FDIC-R has touted itself the "largest and most significant" creditor in the bankruptcy proceeding. The most recent superseding indictment #3 at page 5, line 1 increases the amount now claimed to $29 million dollars (See exhibit D).

11.    The Inspector General of the United States Treasury within his report found systemic deficiencies in FDIC procedures contributed to the loss. The total cost of the failure exceeded $84.5 million dollars.

12.    Rather than reconcile its practices, the FDIC-R has pursued Debtor with hostile investigatory methods to obfuscate its real design, true purpose. This consisted of marathon length eight days of Rule 2004 bankruptcy examinations like a criminal interrogation. These are still being carried out like a reign of terror presently upon defendants' family and law clients.

13.    The FDIC-R has seized and searched Defendant's vehicle without warrant, rationale, or court order and refused to tender or inventory the contents.

14.    The FDIC-R has repeatedly demanded incarceration in order to secure a tactical advantage in these bankruptcy proceedings. Defendant was a detainee at remote Kankakee County jail, without access to legal research, paper and electronic filing.

15.    "Dead men tell no tales". A shadow of the troubling manner of the "assisted suicide" like death of the failed bank president looms over these proceedings. The Sun-Times has reported in extensive troubling detail. A highly regulated, apparently squeaky-clean bank does not implode suddenly under normal circumstances. The bank's internal auditors, Bainsley & Keiner, ran a sophisticated protection ring. They have resisted subpoenas from the FDIC-R. In view of the $84.5 million dollar loss and long duration (9 years of the bank's president's scheme), someone at the FDIC had to learn of it, was part thereof, and is covering up. Notwithstanding this evident massive fraud, the FDIC-R has recklessly groped about zombielike simply continuing to collect upon the Ponzi-like *ghost loan account* dead banker's scheme. Incredibly loans paid off eons ago remain on the failed bank's portfolio.

16.    The FDIC-R seized debtor's car. FDIC-R and the Chapter 11 (now chapter 7) trustee are in *pari delecto* conferring on a daily basis, speaking over 1500 minutes over a sixty-day period (and billing the estate to do so). The FDIC-R insisted on the extended marathon eight sessions of the debtor's Rule 2004 examination. The FDIC-R precipitated an incident between the Chapter 11 trustee and debtor. The FDIC-R jailed debtor until the FDIC-R's counsel could get around to completing the Rule 2004 examination. The FDIC-R is harassing debtor's clients, girlfriend and in-laws in its never-ending Rule 2004 examinations. The FDIC-R is using the bankruptcy proceedings as a vehicle for the criminal investigation. The debtor/defendant is besieged by the combined overwhelming array of the federal government aligned

against him including the FDIC-R, US Trustee and US Attorney. Having the federal government involved three times weighs heavily in favor of a stay.

17.     The third factor is the posture of the criminal proceeding and asks the court to examine the stage of criminal prosecution that the civil defendants have faced. If the defendants facing the civil suit are actively having to defend themselves in a parallel criminal proceeding, then "the overall posture of the criminal proceedings [would suggest] that a stay of discovery is appropriate." *Cruz*, 1997 WL 370194 at 3. The defendant/debtor has been arraigned, bonded and is actively defending pretrial motions in the criminal proceedings. Presently, the U.S. Attorney has indicated that a fourth superseding indictment will be forthcoming. This third factor warrants in favor of a stay of these proceedings.

18.     The fourth factor to consider is the effect of granting a stay on the public interest. In criminal matters, the public has an interest, in a speedy trial and "ensuring that the criminal process can proceed untainted by civil litigation." *Chagolla v. City of Chicago*, 529 F.Supp.2d 941, 947 (N.D. Ill. 2008). Additionally, the particular circumstances of this case also imply, amongst other things a deprivation of defendant's right to a speedy trial secured by the sixth amendment. The public has an interest in ensuring just, speedy and inexpensive resolution of all litigation, both civil and criminal. *Chagolla,* at 946-47. The public also has an interest in ensuring that constitutional protections are not weakened. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (*quoting Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002). While the protections afforded debtor do not outweigh the need to protect creditors and the bankruptcy system, here those interests are protected by both the U.S. Trustee and the

Chapter 11 (now chapter 7) trustee's involvement. The Debtor's bankruptcy petition is in its infancy being only filed in March 2018 and the conversion to chapter 7 in November 2018. The public interest factor weighs in favor of staying the bankruptcy proceedings.

19.     The fifth factor is the interest of the U.S. Trustee and Chapter 11 (now 7) trustee in proceeding expeditiously and the potential prejudice suffered from a delay. This bankruptcy proceeding is recently filed and there is no close of discovery. The bankruptcy court recently extended the deadlines for filing claims and dischargeability. There is no elusive information. There is no degradation of physical evidence. The eight-session marathon Rule 2004 examination of debtor, five 341 meetings of debtor, Rule 2004 examinations of girlfriend, family members, in-laws, and clients, have already occurred. Extensive days of hearings have already been conducted with witnesses having already testified on conversion and turnover. The assertion of privilege has been made at the earliest opportunity, with third of four superseding indictments having not yet been handed down. There is no prejudice suffered to the government by a stay of these proceedings. This fifth factor weighs in favor of issuance of a stay.

20.     The sixth factor is the burden that any particular aspect of the bankruptcy proceeding may impose on the defendant is a stay is denied. A stay would alleviate the burden of having the debtor participate in the bankruptcy concurrently with the criminal case. The debtor must explain why he cannot participate in this case while also selectively invoking his Fifth Amendment right against self-incrimination to specific questions during discovery, as necessary. *CMB Export, LLC v. Atteberry*, Case No. 4:13 CV-04051 SLDJEH, 2014 WL 4099721 at 4 (C.D. Ill. Aug 20, 2014). This factor is easily

satisfied in these proceedings. The bankruptcy court jailed Debtor for an extended period of time while FDIC-R completed its marathon Rule 2004 examination. This Rule 2004 information was then used by the FDIC-R in its criminal complaint against Debtor. The bankruptcy court then jailed Debtor for an even longer period of time for failure to turnover funds which the court found to be in a third party's direct control. These turnover funds are the exact same assets alleged to have been fraudulently concealed from the bankruptcy. In view of the bankruptcy jailing "punishment" being meted out presently, upon defendants, implicates defendant's rights against "double jeopardy" and "self-incrimination" under the fifth amendment. In order to gain Debtor's freedom from the contempt, Debtor would have had to waive his Fifth Amendment protections which were invoked upon Debtor's arrest. The federal government has not been deterred by Debtor's invocation of his Fifth Amendment protections, continuing its unrelenting discovery unabated. The federal government is attempting to circumvent Debtor's Fifth Amendment protections and criminal discovery protections, by using the bankruptcy case to continue discovery which is then shared with the U.S. Attorney's office for a superseding indictment. Debtor is burdened by the continuation of these bankruptcy proceedings which are being used by the federal government to circumvent federal criminal discovery and thwart constitutional guarantees. The bankruptcy proceedings are being used as an end-around by the federal government to buttress the criminal prosecution in direct contravention to Debtor's constitutional guarantees.

21.    Debtor/defendant faces criminal indictment which is being actively pursued by the U.S. Attorney with pre-trial motions and discovery progressing. The federal government is prosecuting both the bankruptcy and criminal proceedings. Where the

government pursues contemporaneous criminal and civil proceedings on the same topic, the danger exists, and the court must take seriously the government's role which favors a stay. United States v. All Meat & Poultry Prods., Case No. 02 C 5145, 2003 WL 22284318 at 2 (N.D. Ill. Oct. 3, 2003). The bankruptcy court is being used to obtain evidence for the criminal proceeding against debtor. Debtor faces a real and present defined risk of prosecution with the federal government using the bankruptcy court to subvert his constitutional guarantees.

22.　Application of the *Cruz* factors weighs heavily in favor of issuing a stay of these bankruptcy proceedings pending resolution of the pending criminal proceedings against Debtor. The equities clearly balance in favor of staying the bankruptcy proceedings pending resolution of the criminal proceedings. The fact that debtor has been indicted in the criminal proceeding is the key. The bankruptcy proceedings are integral and directly related to these criminal charges. There is significant if not nearly total overlap of parties and issues.

## **Due Process Violations**

23.　Duplicative contemporaneous proceedings deprive Debtor of his due process rights. There has been an impermissible combination of investigatory, prosecutorial and adjudicatory functions experienced. The bankruptcy proceeding is inextricably linked to the criminal prosecution.

24.　In order to collect upon the failed bank's fraudulent ***ghost loan account*** scheme, FDIC-R has extensively investigated Debtor. As may have been expected of sketchy massive phantom ***ghost loan account***-based claims, they lack much detail, and a prima facie inspection reveals evidence of wrongdoing. Debtor has endured through interminable marathon sessions of Rule 2004 bankruptcy rule examination

(fishing expeditions). These examinations lack certain protective measures for Debtor.
Amongst them is unavailability of counsel or ability even to object.

25.    FDIC-R has caused a criminal complaint to be filed. It was signed by Jacob
Evans, investigator of the FDIC. Meanwhile, FDIC-R has persistently prosecuted
Debtor through this bankruptcy action, seeking to thwart his fresh start. Frankly, but
for the FDIC-R and its fraud-based claim, a bankruptcy case would not have been filed.
Most notably, FDIC-R has improperly:

    a.  In open court made prejudicial accusations of racism

    b.  Suggested that Debtor was "loud and disruptive

    c.  Held improper impromptu discussions with the US Trustee's office

    d.  Selected a seriously conflicted trustee

    e.  Bribed trustee with a large loan; and

    f.  Repeatedly argued that Debtor should be punished by incarceration.

    *g.*  Filed proof of claims for loans accounts seeking payment that are now
        acknowledged to be ***ghost loan accounts.***

Under such intense adversity, fueled by the FDIC-R covering up their acknowledged
shortcomings by collecting upon ***ghost loan accounts*** uncovered by the failed bank
OCC Inspector General report of November 6, 2018; there was never any hope for
Debtor would ever be able to reorganize. These blunders are too elementary to be
explained away as rookie mistakes. If anything, young auditors are more prone to raise
questions.

26.    Adjudicatory; the bankruptcy court lacks the authority to punish.
Notwithstanding, the FDIC-R has punished Debtor with extended incarceration. Each
shifting-sand order of incarceration confirms that the FDIC-R's goal was punishment.

Debtor's double jeopardy rights preclude further adjudication relative to the same matter, upon the same fact pattern in a duplicative proceeding. The matter having been litigated is res judicata. The FDIC-R has chosen its remedy. Further, this adjudication has interfered with Defendant's right to bail. The conditions of the bond having made available to Debtor and ordered in the criminal proceeding. The lines of a civil and criminal proceeding have become incredibly blurred as a result of the FDIC-R's flawed deceptive debt collection practices relative to ***ghost loan accounts***.

27.     Due process equals notice and an opportunity to be heard! The following violations underscore why the bankruptcy proceeding must be halted, especially when the jailed Debtor is a pro se litigant.

      a.  No access to law. Being detained, Debtor lacked access to bankruptcy law books and has no access to statutory law or case citation.

      b.  No access to bankruptcy forms

      c.  No access to electronic bankruptcy filing system

      d.  No access to PACER

      e.  No access to Lexis/Nexis

      f.  No email to receive notice from other litigants

      g.  No internet access to information ideas needed for exhibits

      h.  No ability to subpoena witnesses or conduct discovery

      i.  No ability to contact court staff to spindle motions or scheduling

      j.  Federal courthouse not always open for federal detainees with emergency matters

      k.  No ability to learn of competent bankruptcy attorney in detainment.

l.  Judge Cox has refused to hear motions concerning recusal, concerning impermissible levels of prejudice, motions to dismiss, and rule to show cause has handicapped Debtor.

m.  Incarcerated Debtor was not allowed to bring legal work to court, to handle a writing implement in court.  Consequently, one cannot argue effectively.

n.  No office equipment inhibits preparation of written documents

o.  No computer for drafting

p.  A detainee cannot order the Marshal to take him to court.

q.  Disruptive work environment complete with daily fights, lockdowns, noise, lack of sunlight, anxiety, sleeplessness and cold.

r.  No religious services.

s.  Dismissive attitude to prisoner petitions.

t.  Lack of ability to provide notice

u.  Located in remote jail, brought to court in painful dog catcher van after a two-hour restrictive drive

v.  Excessive painful handcuffs and shackles

w.  Excessive strip searching

x.  No access to records to mount a defense

y.  Trustee has seized records from Debtor's home and attorney's office

z.  Attorneys must appear shackled, handcuffed, in prison attire orange and black/white stripes, undermines human dignity.

aa. Criminal charges prejudiced bankruptcy judge

bb. Overwhelming quantities of documentary evidence, government claim alone will consist of pile 1 ½ foot tall, allegedly. Still awaiting to see same.

cc. Inadequate time to mount a defense criminal trial will compel all attention.

dd. Contempt proceedings used improperly to end litigation and thereby compel silence defendant's public objection to FDIC-R's massive fraudulent falsification *ghost loan account*-based loan claim.

ee. U.S. Marshals encroach upon Debtor pushing and tackling.

ff. Fifth Amendment rights implicated, negative inference but no offer of immunity.

gg. A man's freedom is at stake. This is the United States of America. The Courthouse must be accessible and open.

hh. The ability to access the Appellate Court review has been eliminated. Due process requires more than simply allowing litigants TAG defendants who are shackled, handcuffed and have no ability to respond. Considering these shortcomings even a pro se attorney litigant is seriously compromised and handicapped. Further, equal protection should ensure that similarly situated litigants are treated similarly. Incarcerating civil litigants to end a case is beyond oppressive. Responding to motions with a stubby golf pencil without access to law is intolerable.

ii. The U.S. Marshal has mixed his detainees with state prisoners.

### Compelled Testimonial Aspect

28.    Fifth amendment privilege against self-incrimination is implicated under these circumstances. Debtor is incarcerated to punish. Fisher v. US, 425 U.S. 391 (1976)

stands for the proposition that fifth amendment shields production of documents if the act of producing them constitutes tacit testimony concerning: 1) the existence of papers demanded and 2) their possession and control by the witness. The crude coercion demanded by the bankruptcy court order would unconstitutionally form a link in the chain of evidence. Which an individual reasonably believes could be used against him in a criminal prosecution.

## Conclusion

29.    A court must be especially careful not to give undue consideration to a proceedings impact on the public. It is especially necessary to guard rights and concern for the public deterrence value of an enforcement proceeding. These must not be allowed to override individual defendants due process rights. The government's own official report confirms that defendant has been victimized by the massively fraudulent falsifying failed bank and its acknowledged ***ghost loan accounts***. The FDIC-R as receiver for the failed bank ought not benefit from the fraud it allowed, perhaps created, to creep into the banking industry through collection of ghost loan accounts. The FDIC-R is hardly prejudicated by any delay it may have caused by instituting additional litigation. A trustee is in place to maintain the status quo to guard interests of other creditors. The bankruptcy case can be stayed without negative consequences. Meanwhile the debtor can adequately prepare for a criminal trial that may well determine/end their legal careers. Irreparable injury to defendants is likely. Both are attorneys and would face career-ending professional discipline.

30.    A seemingly perfect poster child bank, Washington Federal, failed in December 2017. The FDIC-R failed to discharge its duty to promote confidence in the banking industry, following discovery of a massive fraud and ensuing $84.5 million dollar loss.

The failed bank's president perished under circumstances akin to an FDIC-assisted suicide ("dead men tell no tales"). Police reports indicate that special agents of the FDIC meddled in the local investigation. The internal auditors are reluctant to disclose their role as a (protection ring). Is it likely that the seasoned regulators at the FDIC-R did not see this one coming? This failed bank did not represent the first blush experience with fraud for the FDIC-R? After allowing the failed bank to victimize its customers with identity theft, the FDIC-R is now plowing along with a vengeance, collecting upon the same failed bank ghost loan account scheme.

31.    How and why would the FDIC-R continue to perpetuate the scheme of a bank that it had just closed for massive fraud, knowing of ghost loan accounts? The answer is chilling. The only man who could have provided all the answers has been silenced permanently. A special agent of the FDIC made contact in a death investigation for a particular reason. The United States bankruptcy court cannot become a conduit for fraudulent ghost loan account schemes and worse!

WHEREFORE, Debtor, Robert M. Kowalski, Esq., respectfully requests that this Court:

A.    Stay further proceedings in the bankruptcy court case no. 18-9130

B.    Order Trustee Paloian to object to fraudulent creditor claim of FDIC-R admittedly based upon "ghost loan accounts".

C.    Order FDIC-R to reimburse the bankruptcy estate with all funds it has received from Trustee Paloian

D.    Dismiss Trustee Paloian cause of his conflict of interest with the FDIC

E.    Order Trustee Paloian to account for his failure to investigate fraudulent creditor claims.

F.    Order the US Trustee to provide a substitute Trustee

G.    Vacate all orders entered in this case.

H.    Alternately, Dismiss this proceeding

Dated: October 13, 2020                  Respectfully submitted,

                                         By: _____

                                              Robert M. Kowalski, Esq.
                                              1009 61st Street
                                              Chicago, Illinois 60608
                                              (630)235-5709

**United States Bankruptcy Court**
**Northern District of Illinois**

Jeffrey P. Allsteadt, Clerk of Court



Date: 10/13/2020

Robert M. Kowalski
1009 61st Street
Chicago, IL 60608

**Letter to Filer:**

Case Number, *if applicable*: 18-09130

Case Name, *if applicable*:   Robert M. Kowalski

### RETURN CHECK /MONEY ORDER/CASHIER'S CHECK

☐ Unsigned

☐ Debtor(s) or Company check unacceptable

☐ No fee is required

☐ **OTHER: Please refer to last page – ADDITIONAL INFORMATION section.**

### NEW BANKRUPTCY CASE

We were unable to process your case because the following documents are missing and required at case opening:

☐ Voluntary Petition (Official Form 101 or 201)

☐ No form of payment (one of the following is required)
- Full Filing Fee
- Application/Order for Individuals to Pay the Filing Fee in Installments (Official Form 103A)
- Application/Order to Have the Chapter 7 Filing Fee Waived (Official Form 103B)

☐ **OTHER: Please refer to last page – ADDITIONAL INFORMATION section.**

### CORRECTION(S) REQUIRED

☐ Alias Summons:

☐ Amended Adversary Complaint:

☐ Adversary Proceeding Coversheet:

☐ Amended Petition to Correct:

☐ Motion to Redact and Proposed Order[1]

☐ **OTHER: Please refer to ADDITIONAL INFORMATION section below.**

**DEFICIENCY – Please make all necessary corrections to the document(s) listed below:**

☐ Amended Schedule/List of Creditors is deficient for payment. Please submit payment.

☐ Motion is deficient for payment. Please submit payment.

☑ Notice of Motion – please complete and submit.

☑ Proposed Order – please complete and submit.

☐ **OTHER: Please refer to ADDITIONAL INFORMATION section below.**

**INFORMATION**

☐ **CREDIT BUREAU** – The bankruptcy court does NOT perform any activities with the credit bureaus. You must contact the individual credit bureaus for their procedure for removing your bankruptcy filing from their credit report.

☐ No record of the case name or number exists in our court; therefore we cannot process your request and we're returning the enclosed documents to you.

☐ Case name/number is missing. Please provide the case name/number.

☐ There are several debtors listed. Please provide the correct case number.

**ADDITIONAL INFORMATION:**

The two Motions that were brought in to the Bankruptcy Court by the Runner on 10/13/2020, are both missing the Notice of Motion and the Proposed Orders:

-Debtor's Motion to Compel Trustee Gus Paloian to Object to Ghost Loan Claims of FDIC-R
-Debtor's Motion to Stay Civil Bankruptcy Proceedings

Please complete and submit the Notices and the Proposed Orders as soon as possible.

Thank you.

---

[1] A motion to redact personal information prohibited under Fed.R. Bankr. P. 9037(A) should be filed without notice of motion and without serving other parties. The motion must be accompanied by a redacted version of the filed document and a proposed order requiring the clerk to substitute the redacted document for the un-redacted document. A proposed order can be found on the courts website http://www.ilnb.uscourts.gov under Forms/Local Bankruptcy Forms titled Order to Redact. We are attaching a sample of the order.

**IF APPLICABLE**

Include the name of the debtor/joint debtor, the case number, the signature of the debtor/joint debtor on all required documents.

Include the signature of the attorney representing the debtor/joint debtor.

**FORM OF PAYMENT REQUIREMENT** – Cashier's check or money order payable to **Clerk, U. S. Bankruptcy Court.**

**Mail the required document(s) or payment listed above, including this Letter to my attention at:**
**United States Bankruptcy Court, Eastern Division, 219 S. Dearborn, Chicago, IL 60604**

| Deputy Clerk | Tara Collins |
|---|---|
| Contact Number | 312-408-5000 |